# Exhibit B

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| ZOHO CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | Civil Action No. 1:22-cv-00037-LY |
| v. | § | |
| | § | JURY DEMANDED |
| LIBERTY PEAK VENTURES, LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |
| LIBERTY PEAK VENTURES, LLC, | § | |
| | § | |
| Counterclaimant, | § | |
| | § | |
| v. | § | |
| | § | |
| ZOHO CORPORATION, | § | |
| | § | |
| Counter-Defendant, | § | |
| | § | |
| and | § | |
| | § | |
| ZOHO CORPORATION PVT. LTD. | § | |
| | § | |
| Third-Party Defendant. | § | |
| | § | |

**FIRST AMENDED PRELIMINARY INVALIDITY CONTENTIONS OF
ZOHO CORPORATION AND ZOHO CORPORATION PVT. LTD.**

## I.      INTRODUCTION

Pursuant to the scheduling order of the court (Dkt. 19) and the agreement of the parties, Counter-Defendant Zoho Corporation and Third-Party Defendant Zoho Corporation Pvt. Ltd. (collectively "Zoho") hereby provide these preliminary invalidity contentions in response to Liberty Peak Ventures, LLC's Infringement Contentions served on Zoho on July 12, 2022. Liberty Peak has not sought to amend its Infringement Contentions at this time for good cause or otherwise.  In the event that Liberty Peak should amend its Infringement Contentions, these invalidity contentions may change and Zoho reserves the right to amend or supplement these them accordingly.  Zoho contends that each of the Asserted Claims by Liberty Peak is invalid under at least 35 U.S.C. §§ 102, 103, and/or 112.

These contentions address only the claims of U.S. Patent Nos. 9,373,122 (claims 1, 2, 3, 5, 6, 7, 15, 16, 17, and 20), 10,074,088 (claims 1, 5, 6, 15, 19, and 20), and 10,956,901 (claims 1, 4, 8, 9, 11, 14, 16, 17, 18, and 19) asserted by Liberty Peak in the Infringement Contentions (collectively, the "Asserted Claims").

These contentions are subject to the reservations stated herein and are subject to revision and amendment, including pursuant to Rule 26(e) of the Federal Rules of Civil Procedure and any orders of the Court, to the extent appropriate in light of further investigation and discovery regarding the defenses asserted by Zoho or any of other defendants accused by Liberty Peak of infringing any patents; the Court's claim construction related to the Asserted Claims; analyses and opinions of expert witnesses concerning claim construction, infringement, invalidity, and unenforceability issues; and/or positions that Liberty Peak may take concerning the same.  These invalidity contentions are preliminary and Zoho reserves the right to amend and/or supplement them from time to time in view of its further investigation, discovery in this action, claim construction, and/or other events or proceedings.  Zoho also reserves the right to rely on the prior

art cited herein and other prior art materials not identified herein or produced herewith for purposes of establishing the state of the art or providing background information, supporting invalidity defenses other than those based on 35 U.S.C. §§ 102 and 103, and other purposes for disclosure is not required at this point.

Other than a single conclusory statement, Liberty Peak has failed to present any contentions for infringement under the doctrine of equivalents; it has not provided detailed infringement contentions that identify each specific claim limitation allegedly infringed under the doctrine of equivalents and its alleged equivalent element in the accused instrumentalities, or the basis for purported insubstantial differences between each such limitation and its alleged equivalent. Because curing such deficiencies may lead to further grounds for invalidity, Zoho reserves the right to modify, amend, or supplement its contentions. Zoho anticipates that, to the extent Liberty Peak revises or clarifies its infringement contentions, or other additional information regarding Liberty Peak's infringement theories becomes available, that it will provide corresponding invalidity contentions which establish that, under Liberty Peak's interpretation of the claim scope as set forth in its infringement contentions, the asserted patents read on the prior art.

Further, Liberty Peak has not produced prior art known to it. As discovery in this action provides Zoho with additional information, Zoho may serve subpoenas on third parties believed to have knowledge, documentation, and/or corroborating evidence relating to invalidity and/or prior art. It is therefore likely that Zoho will discover additional prior art pertinent to the invalidity of the asserted claims and Zoho reserves the right to supplement these contentions within a reasonable time after becoming aware of additional prior art or information. Zoho further reserves the right to introduce and use such supplemental materials at trial.

In addition to these Invalidity Contentions and prior art identified herein, Zoho hereby relies on and incorporates by reference in their entirety and expressly reserve the right to rely upon invalidity expert reports, including all invalidity positions, invalidity charts and all prior art cited therein, as well as invalidity contentions presented by any present or former defendant in any of Liberty Peak's or its predecessors' lawsuits or by potential or actual licensees to the asserted patents, including any post-grant review involving the asserted patents or any patents that claim priority to, claim priority from, or are the basis for a claim of priority in the asserted patents (collectively, "related patents").

It is early in this action and Zoho's investigation of Liberty Peak's claims and defenses is ongoing.  Zoho makes these disclosures based on information currently available to it without the benefit of discovery.  As such, these Invalidity Contentions the accompanying production of documents are provisional and subject to further revision including as follows:  Zoho expressly reserves the right to amend these contentions and the accompanying document production should Liberty Peak provide any information that it failed to provide in its disclosures or should Liberty Peak amend its disclosures in any way.  Further, because discovery has not yet opened and because Zoho has not yet completed its search for and analysis of relevant prior art, Zoho reserves the right to revise, amend, and/or supplement the information provided herein, including by identifying, charting, and relying on additional references, should Zoho's further search and analysis yield additional information or references, consistent with the Federal Rules of Civil Procedure.  Zoho also reserves all rights to revise, amend, and/or supplement when Liberty Peak provides discovery.

The Court has not yet construed any claim, term, or phrase of the asserted patents in this case.  These Invalidity Contentions are based on the Zoho's present understanding of the

Asserted Claims and the apparent interpretations and constructions thereof by Liberty Peak in its Infringement Contentions.  Zoho reserves the right to modify or supplement these Invalidity Contentions in response to the Court's construction of any claim, term, or phrase of the Asserted Patents.

These Invalidity Contentions, including the attached claim charts, may reflect alternative positions dependent upon claim construction and scope.  These Invalidity Contentions are not an admission by Zoho that the accused products, including any current or past versions of these products, are covered by or infringe the Asserted Claims.  Furthermore, by including prior art that anticipates or renders obvious claims based on Liberty Peak's apparent claim construction, Zoho does not thereby adopt Liberty Peak's apparent claim construction.  These Invalidity Contentions do not represent an agreement with Liberty Peak's views as to the meaning, definiteness, written description support for, or enablement of any asserted claim.

Prior art not included in this disclosure may become relevant.  Zoho is currently unaware of the extent, if any, to which Liberty Peak may contend that certain limitations of the Asserted Claims are not disclosed in the prior art identified herein, and Zoho reserves the right to identify other relevant prior art with respect to such allegedly missing limitation(s).

Zoho further intends to rely on admissions concerning the scope of the prior art relevant to the asserted patents found in, *inter alia*: the patent prosecution history for the asserted patents and any related patents and/or patent applications; any deposition testimony of the named inventors on any of the asserted patents and any related patents and/or patent applications in this action or any other action; and the papers filed and any evidence submitted by Liberty Peak in connection with this action.

The references cited herein disclose the elements of the Asserted Claims explicitly or inherently, and they also demonstrate the state of the art in the relevant time frame.  The suggested obviousness combinations are provided in the alternative to Zoho's anticipation contentions and are not to be interpreted to suggest that any reference included in the combinations is not by itself anticipatory.  Further, the combinations listed herein are exemplary and not exhaustive.  There are many possible invalidating combinations of the references listed herein and it is not practical, at this early stage, to identify and list all potentially relevant combinations without the benefit of further factual investigation and prior to the claim construction proceedings.

In addition to the prior art identified below and in the accompanying invalidity claim charts, Zoho hereby incorporates by reference any additional prior art and invalidity contentions that have been or will be disclosed in any other action related to the asserted patents.  Zoho's incorporation by reference also includes any post-grant proceedings at the U.S. Patent and Trademark Office related to the asserted patents.

Zoho reserves the right to assert that the asserted claims are invalid under pre-AIA 35 U.S.C. § 102(f) in the event Zoho obtains evidence that the inventor named in any of the asserted patents did not himself invent the subject matter claimed in the respective patents, or that any of the asserted patents otherwise fails to name the correct inventor(s).  Should Zoho obtain such evidence, it will provide the name of any person from whom, and the circumstances under which, the alleged invention or any part of it was derived, or the name of any person who Zoho contends is inappropriately named or not named as an inventor.

Zoho also reserves the right to challenge any terms of any Asserted Claims under 35 U.S.C. § 112 beyond the grounds outlined herein, including by arguing that they are indefinite,

not supported by the written description, or not enabled.  Nothing stated herein shall be construed as a waiver of any argument available under 35 U.S.C. §§ 101, 102, 103, and/or 112.

## II.      THE PRIORITY DATE OF THE PATENTS-IN-SUIT

All of the patents-in-suit ultimately claim priority to U.S. Patent Application No. 12/512,873 ("'873 application"), filed July 30, 2009.  The '873 application claimed the benefit of U.S. Provisional Patent Application No. 61/138,711, filed December 18, 2008.  Liberty Peak claims that each of the patents-in-suit are entitled to the priority date of the provisional application.  However, the provisional application differs significantly from the specification of the '873 application.  For example, the provisional application describes a system that "relates generally to loyalty reward programs, and particularly to generating a personalized uniform resource locator on a client system to connect to a merchant and obtain loyalty rewards."  Provisional at ¶ 1.  It contains no references to encryption, and the only accounts described are loyalty accounts.  The figures in the '873 application and their descriptions are not found in the Provisional.

Furthermore, every asserted claim requires a browser toolbar able to decrypt encrypted data.  The specification of the provisional application does not mention or otherwise describe decrypting any data, much less decrypting by or at a browser toolbar or using an encryption key maintained by a browser toolbar.  Accordingly, the specification of the Provisional does not "reasonably convey … to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date" for any of the Challenged Claims.  *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed.Cir.2010) (en banc).  Thus the earliest priority date to which the asserted claims are entitled is July 30, 2009, the filing date of the '873 application.

## III.    PRIOR ART

In addition to the references cited on the face of the asserted patents and related patents, the admitted prior art references in the specifications of the asserted patents and related patents, the prosecution histories of the asserted patents and related patents, the references cited in any reexaminations, reissue proceedings or other post-grant proceedings in the U.S. Patent Office of the asserted patents and related patents, and the references cited in any invalidity contentions or expert reports submitted in any action or proceedings involving the asserted patents or related patents, Zoho below identifies the following prior art that anticipates each asserted claim or renders it obvious.

The Patents-in-Suit, as apparently interpreted by Liberty Peak, are directed to a browser toolbar that accesses financial account information, such as credit card information, and uses it to complete financial transactions by automatically filling out web forms with the account information.  Systems embodying these technologies were well-known in the art well before the claimed December 18, 2008 priority date of the Patents-in-Suit.

Attached hereto are representative charts setting forth where in the prior art each claim element of the asserted claims is found.

Nothing in these invalidity contentions should be construed as an admission that the asserted claims are infringed by any accused product or system, that any particular feature or aspect of any of the accused products practices any elements of the asserted claims, or that Liberty Peak's apparent claim constructions are supportable or proper.  These invalidity contentions address the apparent constructions and interpretations that Liberty Peak is relying on for its infringement contentions, and Zoho reserves its right to dispute any such interpretations. Therefore, to the extent the prior art discloses the same features and functionality that Liberty

Peak has identified in its infringement contentions, Zoho reserves the right to argue that the features or functionality do not practice any element of any of the asserted claims.

To the extent Zoho cites or quotes any exemplary portion of any prior art reference with respect to a particular claim limitation in any of the attached charts, Zoho reserves the right to rely on such portion of the prior art reference (and any similar disclosure in the reference) for all purposes with respect to such claim limitation (including, but not limited to, in connection with any other invalidity defense involving such prior art reference), any related claim limitation, and any substantially similar limitation(s) of any other claim(s).  Zoho reserves the right to identify additional portions of the same prior art disclosed herein to support its invalidity theories.

Zoho also reserves the right to rely on uncited portions of the prior art references and on other publications and testimony as aids in understanding and interpreting the cited portions, as providing context for the state of the art and knowledge of persons skilled in the art, as additional evidence that a claim is known or disclosed, and as evidence supporting obviousness.

Zoho's identification of any portion of a prior art reference with respect to any limitation of any claim of any asserted patent is not an admission that such limitation satisfies the requirements of 35 U.S.C. § 112.  Zoho reserves the right to challenge any limitation on grounds including but not limited to indefiniteness, lack of written description, and lack of enablement.

Zoho attaches the following charts setting forth where in the prior art each claim element of each asserted claim is found for purposes of 35 U.S.C. § 102.  To the extent any cited reference is deemed not to disclose any claim element for purposes of § 102, Zoho contends that the reference renders the claim obvious under 35 U.S.C. § 103, either by itself or in view of design incentives, market forces, the background knowledge of a person of ordinary skill in the art, and/or other relevant factors, or in light of the other charted references described below.

Zoho identifies the following patents, patent applications, and non-patent publications as anticipating and/or rendering obvious, either alone or in combination with one or more other prior art references, one or more of the Asserted Claims under pre-AIA 35 U.S.C. §§ 102(a), (b), (e) and/or (g) and/or 35 U.S.C. § 103:

| Country | Patent / Publication No. | Date | Inventor(s)/Author(s) | Chart(s) |
|---------|--------------------------|------|-----------------------|----------|
| US | 2002/0186255 A1 | Dec. 12, 2002 | Shafron | 1 (A-C) |
| US | 2004/0061720 A1 | Apr. 1, 2004 | Weber | 2 (A-C) |
| US | 2005/0172229 A1 | Aug. 4, 2005 | Reno | 3 (A-C) |
| US | 2005/0177731 A1 | Aug. 11, 2005 | Torres | 4 (A-C) |
| US | 2005/0187883 A1 | Aug. 25, 2005 | Bishop | 5 (A-C) |
| US | 2005/0216824 A1 | Sep. 29, 2005 | Ferguson | 6 (A-C) |
| US | 2006/0156026 A1 | Jul. 13, 2006 | Utin | 7 (A-C) |
| US | 2007/0074038 A1 | Mar. 29, 2007 | Arenburg | 8 (A-C) |
| US | 2007/0226783A1 | Sep. 27, 2007 | Mimlitsch | 9 (A-C) |
| US | 2008/0114739 A1 | May 15, 2008 | Hayes | 10 (A-C) |
| US | 7,136,490 B2 | Nov. 14, 2006 | Martinez | 11 (A-C) |

In addition, Zoho identifies the following prior art apparatuses/systems which are understood to be prior art under 35 U.S.C. §§ 102(a), (b), and/or (g) and 103.  Documents reflecting the prior use and sale of each of these apparatuses/systems are referenced in the charts accompanying these disclosures.  Zoho reserves the right to seek further information regarding these apparatuses/systems once discovery commences.  Zoho expects to prove the disclosed contentions regarding these apparatuses/systems with additional evidence, such as source code, testimony of percipient witnesses, and other contemporaneous documents regarding the development and commercialization of each obtained through discovery.

| System/Apparatus | Creator | Chart(s) |
|------------------|---------|----------|
| 1Password | AgileBits Inc. | 12 (A-C) |
| Clipperz Password Manager | Clipperz srl/Marco Barulli and Giulio Cesare Solaroli | 13 (A-C) |
| KeePass Password Safe | Dominik Reichl | 14 (A-C) |
| LastPass | LastPass Corporation | 15 (A-C) |
| ManageEngine Password Manager Pro | Zoho Corp. | 16 (A-C) |

| System/Apparatus | Creator | Chart(s) |
|---|---|---|
| RoboForm | Siber Systems, Inc. | 17 (A-C) |
| SplashID | SplashData, Inc. | 18 (A-C) |
| Sticky Password | Lamantine Software Company | 19 (A-C) |

To the extent it is required, the reason, suggestion, or motivation to modify or combine the references in the manner claimed can be found in the explicit and/or implicit teachings of the references and the prior art as a whole, the general knowledge of those skilled in the art, including knowledge of trends in the field, and knowledge that the art is of special interest or importance in the field, and from the fact that all of the references concern the same or similar technologies. Much of the art identified above and in the attached exhibits reflects common knowledge and the state of the art prior to the priority date of the asserted patents.  In many instances where a particular contention calls for, or requires, combining references, any one of a number of references can be combined. The inclusion of exemplary combinations herein does not exclude other combinations based on the claim charts attached hereto.

The references disclosed herein, alone or in combination, contain an explicit and/or implicit teaching, suggestion, motivation or inference to combine them due to the following: (1) the knowledge generally available to a person of ordinary skill in the art; (2) the prior art references as understood by a person of ordinary skill in the art; (3) the nature of the problem to be solved; (4) the fact that each prior art reference addresses similar problems; (5) the knowledge of those skilled in the art that the disclosed components had been or could be used to implement various features.  Zoho may also rely on expert testimony to establish that the asserted claims are invalid for obviousness.

To the extent a reference does not explicitly disclose automatic detection of information requested by a web service and the filling of form fields to respond to the same, methods for doing so were well known at the relevant time.  A POSITA would have looked to references

10

such as Shafron, Ferguson, or one of the many well-known systems for filling forms with information such as passwords or other saved information, such as RoboForm, LastPass, 1Password, or Password Manager Pro.

To the extent any reference does not explicitly disclose the claimed encryption methods, including public key encryption, a POSITA would have been motived to combine the teachings of references that disclose browser toolbars and other client systems which include the ability to fill out forms with saved account information, such as Shafron or Bishop, with systems that provide browser and browser toolbar-based encryption systems, such as Hayes, Ferguson, or Clipperz, or systems that disclose other methods for protecting online communication such as CryptoHeaven, or Stultz. *See* U.S. Patent Pub. 2009/0158035 ("Stultz") at Abstract, ¶¶ 11-12, 26, 29, 38, Fig. 2; *see also* CryptoHeaven system.

As it was well known long before the alleged invention date, a POSITA considering ways to protect information sent from a client to a server for later retrieval would have known that using public key encryption was one of a small number of options with known benefits.  In fact, Hayes incorporates by reference a standard reference on encryption that discusses these options in detail—Schneier, "Applied Cryptography Protocols, Algorithms, and Source Code in C," second edition, 1996, John Wiley & Sons.  Hayes at [0096].  Other examples of using asymmetric encryption in web communications were also very common at the time, such as the use of SSL or TLS, or the concept of "host-proof hosting" demonstrated in the Clipperz and CryptoHeaven systems.

Further a POSITA, when considering the teachings of toolbar systems, would have considered the teachings of Hayes and similar encryption methods since they are analogous prior art, both pertaining to the same field of endeavor of secure online transactions, and both

disclosing the use of browser plugins and toolbars.  *See, e.g.*, Shafron, Abstract; Hayes, Abstract, [0014].  A predictable and beneficial result of combining these systems is that the well-known encryption protocols disclosed within would teach a number of specific ways for a POSITA to implement encryption of an e-wallet and included account data.  As the specification of the '122 patent admits, e-wallets were well-known in the art.  '122 patent at 1:29-50.  Encrypting a wallet or other financial data in transit was similarly known.  *Id.* at 1:51-65.  This use of public key (asymmetric) encryption, as well as details of how public key encryption and hybrid (symmetric plus asymmetric) encryption work is disclosed by multiple references, such as Hayes, Applied Cryptography, Clipperz, or CryptoHeaven, Stultz, Bishop, and Hayes.  As Stultz teaches, "[a]s is known in the art, a private key or a public key is distributed with discretion and maintained on a recordable data storage media local to the client machine." Stultz at [0026]

Such a combination would have produced the obvious, beneficial, and predictable results of applying toolbar-based encryption approaches to browser toolbar systems.  For example, Shafron discloses a system which downloads an encrypted wallet and associated financial data but does not dictate the precise encryption approach to use.  By referencing that the "'wallet' refers to a file (that may be encoded or encrypted)," Shafron expressly provides a POSITA a motivation to combine the teachings of Shafron with other references providing disclosures of ways in which browser toolbar data may be encrypted, for example for transmission, since protecting the transmission of the type of information discussed in Shafron using a browser toolbar would have been as important as its storage (protected by the "security key" mechanism in Shafron).  *See, e.g*., Shafron at [0130] and [0143].  Using the browser-based encryption method described by Hayes is one of only a few options available to a POSITA selecting an encryption protocol:  public-key, symmetric, or a hybrid of the two.  As discussed above, Hayes

discloses a browser toolbar that generates public/private key pairs to encrypt data sent between a central repository, and the incorporated Applied Cryptography text discusses the advantages of public key cryptosystems.  A POSITA would naturally look to such references when implementing the wallet data encryption suggested by Shafron and other systems.

To the extent that a given system lacks disclosure of encryption of financial data in particular, a POSITA would have considered the teachings of systems such as Ferguson.  These are also analogous prior art pertaining to the field of secure online transactions using browser plugins and toolbars to secure financial data.  *See, e.g.*, Ferguson at [0011]-[0012], [0046]-[0048], [0054].  These references disclose means for keeping financial account information secure and encrypted.  *Id.* at [0063]-[0065].  A POSITA would naturally look to the disclosures of these systems to provide examples of how to securely store sensitive financial account information at a browser plug-in or toolbar for later use in an online transaction.  A POSITA would see the obvious advantages described by these references in the automatic encryption, retrieval, storage, and use of account information.  For example, Ferguson discloses that user data is protected by a browser plugin while locally stored, a beneficial improvement to the security details disclosed by other references described herein, and one that is particularly important for financial data.  Ferguson at [0055], [0063]-[ 0065].

Ferguson, in particular, further discloses additional detail on completing financial transactions that a POSITA would naturally look to when implementing the interaction between a plugin and the browser when providing secure form-filling functionality.  For example, Ferguson discloses options for how to handle invalid financial accounts, such as when a credit card is expired, which is particularly pertinent to financial-related browser toolbars.  Ferguson at [0085]-[0086].

Similarly, to the extent a reference does not explicitly disclose the particular kinds of financial account information required by some of the asserted claims, a POSITA would look to references such as Finn (U.S. Patent Pub. 2008/0201769 A1) for this disclosure. Finn is also analogous to the other prior art references disclosed herein, as it describes a system in which a customer stores credit card information in a central database using a browser. Finn at [0036]. A POSITA would have been motivated to combine the specific data fields for credit cards disclosed by Finn in implementing the encrypted wallet disclosed by other prior art described herein because the detailed data fields commonly used for credit card transactions would have been required to implement such a system. For example, Shafron states that "[t]he information may be, by way of non-limiting example, credit card type, number, expiration date, user's first and last name, billing address, phone number, user ID, user password, and various other information particular to the user." Shafron at [0132]; [0008]. Finn discloses more specific information about the kind of information associated with credit cards and needed to complete online transactions. A POSITA would naturally look to combine Finn with other references to achieve the obvious benefits of knowing additional specific items of account information useful for completion of online transactions.

To the extent that they do not explicitly disclose the use of a browser toolbar, a POSITA would have been motived to combine the teachings of references that disclose browser toolbars, such as Shafron, with systems that provide secure communication of information to web forms/web services via browser plugins, in-browser code, or other client-side software.

Further, to the extent that a reference does not disclose a method for securely storing the account information at the browser toolbar, a POSITA would have naturally looked to references such as Shafron, which discloses ephemerally storing account information in "temporary

memory." Shafron at [0144]. Liberty Peak apparently contends that such temporary storage is within the scope of the claims. To the extent that a POSITA looked to more securely store information in a browser or browser toolbar, references such as Ferguson disclosed storing such information in a browser plugin in encrypted format until used. Ferguson at 8:26-36, 9:39-46.

To the extent a reference does not disclose the removal of account information when the browser session is closed with the web service, after the information is provided to the web service, or on completion of the transaction, a POSITA would have looked to references like Shafron, which discloses removal of such information upon termination of a browser session, Shafron at [0144], or Hayes, which discloses deleting user information on completion of a transaction. *E.g.* Hayes at 21:2-5, 21:31-34.

In addition to the above-cited references, the following list of prior art references describes the both the general state of the art and knowledge of one skilled in the art at the time of the purported inventions and the filings of the asserted patents:

- The CryptoHeaven system by CryptoHeaven, Inc.

- U.S. Patent Pub. 2002/0186249 A1 to Lu

- U.S. Patent Pub. 2006/0053288 A1 to Stern

- U.S. Patent Pub. 2007/198432 A1 to Pitroda et al.

- U.S. Patent Pub. 2008/0183629 A1 to Kausik

- U.S. Patent Pub. 2008/0091617 to Hazel

- U.S. Patent Pub. 2008/0201769 A1 to Finn

- U.S. Patent Pub. 2009/0158035 to Stultz

- U.S. Patent Pub. 2009/292641 A1 to Weiss

- U.S. Patent Pub. 2010/0211506 A1 to Chang

- U.S. Patent No. 7,062,706 to Maxwell

- U.S. Patent No. 7,069,433 to Shala

- U.S. Patent No. 6,182,229  to Neilsen

- U.S. Patent No. 7,353,383 to Skingle

- U.S. Patent No. 8,146,141 to Grandcolas

- U.S. Patent No. 8,181,227 to Lau

- U.S. Patent No. 8,352,738 to Parno

- U.S. Patent No. 8,528,064 to Nichols

- U.S. Patent No. 8,700,901 to Lund

- U.S. Patent No. 8,713,661 to Vysogorets

- U.S. Patent No. 9,619,632 to Savage

- JP 2009-163577A to Kazuo

- WO 03/017031 A2 to Barrett et al.

- WO 2008/150801 A1 to Kubo et al.

- Karole, "A Comparative Usability Evaluation of Traditional Password Managers"

- Yee, "Passpet: Convenient Password Management and Phishing Protection"

These prior art references may disclose the elements of the asserted claims either explicitly, inherently, or obviously and may also be relied upon to show the state of the art in the relevant time frames.

## IV.    THE ASSERTED PATENTS ARE INVALID UNDER 35 U.S.C. § 112

The Asserted Claims as apparently construed by Liberty Peak are broader than the invention described in the written description of the asserted patents and, thus, lack written description support and are invalid for failing to comply with the requirements of 35 U.S.C. §

112.  In particular, the written description only discloses a particular method of performing the claimed encryption process—the use of a public key encryption protocol in which the browser toolbar generates a key pair and the user's personal data is encrypted using the public key of that pair.  Thus, any claim in which the key used to encrypt or decrypt the user's account information is not generated by a browser toolbar lacks written description.  Similarly, any claim that is interpreted to not require public key encryption lacks adequate written description.

Following is an identification of additional claim limitations in the asserted claims that Zoho contends are indefinite or lack written description under 35 U.S.C. § 112, and therefore the listed claims and all claims that depend therefrom are invalid.  The following identification of claims and claim elements are exemplary and Zoho reserves the right to supplement the identification of claims and claim elements that do not comply with the requirements of 35 U.S.C. § 112.  Specifically, Zoho reserves the right to identify additional and/or different claims and claim elements that do not comply with the requirements of 35 U.S.C. § 112 based on Liberty Peak's proposed claim constructions and/or any further construction of the asserted claims.

As apparently interpreted by Liberty Peak, the phrase "account information," which is required by in all asserted claims of the '122 Patent, all asserted claims of the '088 Patent, and all asserted claims of the '901 Patent is indefinite and/or lacks written description.

Each of the independent claims of the asserted patents requires "account information" which "is usable to conduct a transaction with [the/an] account holder."  The account information, which is downloaded from the card issuer, is always characterized in the specification as data reflecting a credit card or some form of financial account number.  *See* '122 Patent at 5:6-22; *see also id.* at 7:26-29.  The written description also distinguishes between

customer authentication information (a "user credential"), credentials used to access a particular financial account ("an account specific access credential"), and the account information itself ("the requested personal identifiable information"). *See, e.g.*, '122 Patent at 2:25-35; *id.* at 2:44-52; 5:6-22; *see also* id. at 7:13-29 (downloaded data is "associated with one or more accounts and cards"). Thus, the written description supports only that "account information" is information for a financial account, not the accused username and password information. To the extent the claims are construed more broadly, they lack written description.

As apparently interpreted by Liberty Peak, the phrases "providing, via the browser toolbar, the stored account information to the web service" ('122 Patent, claim 6), "providing the account information to the web service" ('122 Patent, claim 15), "providing, by the browser toolbar, the account information to [a/the] web service" ('088 Patent, claims 1 and 15, '901 Patent, claims 1 and 11), are indefinite and/or lack written description.

The phrases "content of the web service"('122 Patent, claim 2) and "web service content" ('122 Patent, claim 16) are indefinite and/or lack written description.

The phrase "inaccessible outside of the browser toolbar" ('122 Patent, claim 1) is indefinite and/or lacks written description.

The phrase "maintained by the browser toolbar" ('122 Patent, claim 1) is indefinite and/or lacks written description.

The phrase "securely storing account information at the browser toolbar" ('122 Patent, claim 1) is indefinite and/or lacks written description.

The phrase "generating, via the browser toolbar" ('122 Patent, claim 7) is indefinite and/or lacks written description.

The phrase "determining, at a browser toolbar" ('122 Patent, claim 15; '088 Patent, claim 15) is indefinite and/or lacks written description.

The phrase "decrypting, at the browser toolbar" ('122 Patent, claim 15) is indefinite and/or lacks written description.

The phrase "securely storing, by the browser toolbar, the account information at the browser toolbar" ('088 Patent, claim 1; '901 Patent, claims 1 & 11) is indefinite and/or lacks written description.

The phrase "generating, at a browser toolbar" ('088 Patent, claim 1; '901 Patent, claims 1 & 11) is indefinite and/or lacks written description.

## V.     DOCUMENT PRODUCTION

Zoho ~~is concurrently herewith producing~~has produced all prior art referenced in these invalidity contentions.

Dated: October 11, 2022                Respectfully submitted,


                              By:    /s/ *Phillip Haack*
                                     Ryan Marton (admitted *pro hac vice*)
                                     Phillip Haack (admitted *pro hac vice*)
                                     MARTON RIBERA SCHUMANN & CHANG LLP
                                     548 Market Street, Suite 36117
                                     San Francisco, CA 94104
                                     Telephone:  (415) 360-2515
                                     Email:      ryan@martonribera.com
                                                 phil@martonribera.com

Darryl Adams
Texas State Bar No. 00796101
dadams@sgbfirm.com
SLAYDEN GRUBERT BEARD PLLC
401 Congress Ave., Ste. 1650
Austin, Texas 78701
Telephone: (512) 402-3550
Facsimile: (512) 402-6865

*Attorneys for Plaintiff Zoho Corporation*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on October 11, 2022, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via email.


By:   <u>/s/ *Phillip Haack*</u>
          Phillip Haack