# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISON

| | | |
|---|---|---|
| ZOHO CORPORATION, | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | Case No. 1:22-cv-00037-LY |
| | § | |
| LIBERTY PEAK VENTURES, LLC, | § | JURY DEMANDED |
| | § | |
| *Defendants.* | § | |

| | |
|---|---|
| LIBERTY PEAK VENTURES, LLC, | § |
| | § |
| *Counterclaimant,* | § |
| | § |
| | § |
| v. | § |
| | § |
| ZOHO CORPORATION | § |
| | § |
| *Counter-Defendant,* | § |
| | § |
| and | § |
| | § |
| ZOHO CORPORATION PVT. LTD | § |
| | § |
| *Third-Party Defendant.* | § |

## DEFENDANT LIBERTY PEAK VENTURES, LLC'S
## OPENING CLAIM CONSTRUCTION BRIEF

## <u>TABLE OF CONTENTS</u>

**Page**

I.    **INTRODUCTION** ..................................................................1
     A.   **Priority Dates and A Person Having Ordinary Skill in the Art** ....1
II.   **LIBERTY PEAK'S PATENT TECHNOLOGY** .......................................2
III.  **APPLICABLE LAW AND CLAIM CONSTRUCTION PRINCIPLES** ..............................................................3
     A.   **A Claim Should Be Given the Full Range of Its Ordinary Meaning** .....................................................................3
     B.   **The Claims and Specification Are the Most Relevant Sources for the Meaning of a Term** ..........................5
     C.   **It Is Improper to Import Limitations from the Specification** ........6
IV.  **DISPUTED TERMS AND PHRASES** .............................................7
     A.   **The Claim Term "account information" ('122 Patent Claims 1, 3, 6, 15; '901 Patent Claims 1, 4, 8-9, 11, 14, 16, 18-19; and '088 Patent Claims 1, 5, 15, 20)** ...............................7
     B.   **The Claim Term "encryption key" ('122 Patent Claims 1, 7, 15)** ......................................................................11
     C.   **The Claim Term "cryptographic key" ('901 Patent Claims 1, 4, 11, 14; '088 Patent Claims 1, 15)** ...............................13
     D.   **The Claim Terms "securely storing the account information at the browser toolbar" ('122 Patent Claim 1) "securely storing, by the browser toolbar, the account information at the browser toolbar" ('901 Patent Claims 1, 11; '088 Patent Claim 1)** .............................................................15
          1.   **Zoho's Construction For the "securely storing . . ." Terms Imports an Improper Negative Limitation** .............16
          2.   **The "securely storing . . ." Terms Are Not Indefinite** ........17
     E.   **The Remaining Five Claims Terms Are Not Indefinite** ................18
V.   **CONCLUSION** ..................................................................19

Pursuant to the Court's Pre-Markman Scheduling Order dated April 12, 2022 (Dkt. 19), as modified by the parties on October 19, 2022; Defendant/Counterclaimant Liberty Peak Ventures, LLC ("LPV" or "Liberty Peak"), by and through its undersigned counsel, files its Opening Claim Construction Brief.  The constructions proposed herein address the claims of U.S. Patent Nos. 9,373,122 (the "'122 Patent") (Claims 1-3, 5-7, 15-17, and 20), 10,074,088 (the "'088 Patent") (Claims 1, 5, 6, 15, 19, and 20), and 10,956,901 (the "'901 Patent") (Claims 1, 4, 8, 9, 11, 14, and 16-19) (collectively the "Asserted Patents") as currently asserted by Liberty Peak against Zoho Corporation and Zoho Corporation Pvt. Ltd.'s (collectively, "Zoho").

## I.   INTRODUCTION

The claim construction issues in this case present a typical scenario in which Zoho attempts to improperly narrow the scope of the claims to advance its non-infringement theories. Where appropriate, Liberty Peak proposes that a term's ordinary meaning should apply and that no further construction is necessary. Furthermore, Liberty Peak's proposed constructions are consistent with the applicable legal framework for claim construction and, in general, are taken directly from the intrinsic evidence.

In contrast, Zoho proposed constructions violate several basic tenets of claim construction by: (1) improperly reading additional limitations from the specification into the claims; (2) proposing constructions that would exclude the preferred embodiment or are otherwise inconsistent with the intrinsic evidence; and (3) misapplying 35 U.S.C. § 112.  Zoho's efforts to narrow the claims through claim construction to avoid infringement should be rejected.

### A.   Priority Dates and A Person Having Ordinary Skill in the Art.

The '122 Patent claims priority to Provisional Application No. 61/138,711, filed on December 18, 2008. The '088 Patent claims priority as a continuation of the '122 Patent, and the '901 Patent

claims priority as a continuation of the '088 Patent. Thus, the Asserted Patents are each entitled to a priority date no later than December 18, 2008.

A Person Having Ordinary Skill in the Art ("POSITA") at the time of the inventions claimed in the Asserted Patents would be familiar with the state of the art of e-wallet (digital wallet) technology including cryptography, computer security, and the design of browser interfaces including the storing and securing of sensitive information using secure database storage of encrypted data and encryption keys to provide secure computer transactions in December 2008.

As continuations of the parent '122 Patent the Asserted Patents have largely identical specifications. For convenience, unless otherwise specified, this Brief will refer to the specification of the parent '122 Patent.

## II.   **LIBERTY PEAK'S PATENT TECHNOLOGY**

The Asserted Patents claim inventions originally developed by the American Express Company ("American Express") as part of its digital transaction security technology portfolio. American Express introduced its first online business in 1993 and soon thereafter American Express had launched several other e-business products providing a variety of financial and business administrative services. The move to electronic transactions had also led to a concurrent vulnerability of sensitive consumer information entered, maintained, and transmitted by electronic means to attack and theft by malicious actors. To combat this growing malfeasance, American Express developed the technology embodied by the Asserted Patents to protect sensitive customer information from attack and theft.  Specifically, the Asserted Patents are directed to solving problems particular to the transmission of sensitive customer account data to a computing device such that the data is not exposed to malicious entities external or internal to the computing device.

At the time that the application leading to the '122 Patent was filed, the proliferation of rogue programs such as viruses, trojan horses, and computer hackers, etc., placed computing

devices at risk. This risk extended to customer account data, which even stored temporarily was potentially vulnerable to malicious entities. As a result, customers, merchants, and card issuers were reluctant to utilize tools that resided on a customer computing device and interface with customer account data.

Solutions provided in embodiments of the '122 Patent provide methods for storing and securing sensitive information using secure remote and/or segregated storage of encrypted data where decryption of the data is provided at a local toolbar using an encryption key. Solutions provided in embodiments of the '088 Patent provide methods for storing and securing sensitive information using secure database storage of encrypted data where decryption of the data is provided at a local toolbar using an encryption key. Solutions provided in embodiments of the '901 Patent provide methods for storing and securing sensitive information using secure storage of encrypted data where decryption of the data by a toolbar uses an encryption key.

## III.   APPLICABLE LAW AND CLAIM CONSTRUCTION PRINCIPLES

Claim construction is a question of law that "begins and ends in all cases with the actual words of the claim." *Homeland Housewares, LLC v. Whirlpool Corp.*, 865 F.3d 1372, 1374-75 (Fed. Cir. 2017) (citations omitted). Therefore, "[i]t is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (citations omitted).

### A.   A Claim Should Be Given the Full Range of Its Ordinary Meaning.

Claim terms "are generally given their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312-13 (citations omitted). In many cases, "the claims themselves provide substantial guidance as to the meaning of particular claim terms." *Id.* at 1314. For example, "[b]ecause claim terms are normally used consistently throughout the patent, the

usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id.* at 1314–15. Conversely, "[d]ifferences among claims can also be a useful guide" to claim construction. *Id.* However, "unless compelled to do otherwise, a court will give a claim term the full range of its ordinary meaning as understood by an artisan of ordinary skill." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001); *Trustees of Columbia U. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016). The Federal Circuit has cautioned courts against positing constructions that "contribute nothing but meaningless verbiage to the definition of the claimed invention." *Harris Corp. v. IXYS Corp.*, 114 F.3d 1149, 1152 (Fed. Cir. 1997). Further, district courts are not required to provide alternate constructions where the claim language itself suffices and the parties have not justified the need for claim construction. *See O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). In *O2 Micro*, the Federal Circuit held that the district court erred by assigning a claim term its plain and ordinary meaning because that definition "failed to resolve the parties' dispute." *Id.* at 1361-62. The court recognized however, that "district courts are not (and should not be) required to construe *every* limitation present in a patent's asserted claims." *Id.* Courts, including courts in this District, have held that no construction is necessary where "the Court is simply rejecting Defendants' proposed construction (which substitutes twenty-nine words in an effort to better explain a claim term that is eleven words) rather than refusing to decide between two competing proposed constructions." *Pisony v. Commando Constr., Inc.*, No. W-17-CV-00055-ADA, 2019 WL 928406, at *5 (W.D. Tex. Jan. 23, 2019).

The "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the

specification or during prosecution." *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)). The standards for finding lexicography or disavowal are "exacting." *GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014), reh'g denied (June 17, 2014).  To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender. *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009).

Claims also must "be read in view of the specification, of which they are part." *Phillips*, 415 F.3d at 1315 (citations omitted). Although the specification is used to interpret a claim, it cannot be used to add extraneous limitations into a claim. *See Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1345 (Fed. Cir. 2008). "[O]ne of the cardinal sins of patent law [is] reading a limitation from the written description into the claims." *Phillips*, 415 F.3d at 1320 (citation omitted). "When a claim term has an accepted scientific meaning, that meaning is generally not subject to restriction to the specific examples in the specification." *Glaxo Wellcome, Inc. v. Andrx Pharms., Inc.*, 344 F.3d 1226, 1233 (Fed. Cir. 2003) (citations omitted). Indeed, "as a general rule[,] claims of a patent are not limited to the preferred embodiment … or to the examples listed within the patent specification." *Id.* (citation omitted).

### B.     The Claims and Specification Are the Most Relevant Sources for the Meaning of a Term.

Courts look first to the patent to determine the meaning of words in the claims. *Phillips*, 415 F.3d at 1315-17. "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Id.* at 1312 (internal citation omitted). A court may also "consider the patent's prosecution history, if it is in evidence." *Id.* "For example, a patentee may define a claim term ... in the prosecution history" or surrender claim scope

"through a clear and unmistakable disavowal in the prosecution history." *Data Engine Techs. LLC v. Google LLC*, 10 F.4th 1375, 1382 (Fed. Cir. 2021) (internal quotes omitted). "Yet because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* Any disavowal of claim scope during prosecution must be clear and unmistakable. *See 3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1325-26 (Fed. Cir. 2013).

Extrinsic evidence, such as an expert opinion, is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language,'" although it can help illuminate how a POSITA would have understood the intrinsic record, including the disputed claim terms, at the time of the patented invention. *Phillips*, 415 F.3d at 1317 (citations omitted).

### C.     It Is Improper to Import Limitations from the Specification.

While the court must review the patent specification, it reviews the specification only for the purpose of interpreting the claim's stated terms, not to incorporate particular features exhibited in the specification into the claim. *See Saunders Group, Inc. v. Comfortrac, Inc.*, 492 F.3d 1326, 1332-33 (Fed. Cir. 2007); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 905-06 (Fed. Cir. 2004). As explained by the Federal Circuit, the respective roles of the claim language and the specification during the claim construction process are defined by two canons which sometimes appear in tension: "(a) one may not read a limitation into a claim from the written description, but (b) one may look to the written description to define a term already in a claim limitation." *Renishaw PLC v. Marposs Societa' Per Azioni*, 158 F.3d 1243, 1248. Nevertheless, the Federal Circuit has repeatedly held that courts may not import limitations from embodiments disclosed in the specification to limit or otherwise vary the meaning of the claim language. *Liebel-Flarsheim*, 358 F.3d at 905-06; *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327-28 (Fed. Cir. 2002);

*Inverness Med. Switzerland GmbH v. Warner Lambert Co.*, 309 F.3d 1373, 1379 (Fed. Cir. 2002) ("It is improper to limit the claim based on a preferred embodiment of the invention.").

## IV.   **DISPUTED TERMS AND PHRASES**

There is a "heavy presumption" that the Asserted Patents' disputed claim terms carry "their ordinary and customary meaning." *Aventis Pharms. Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013) (citation omitted). Liberty Peak is not entitled to narrow claim constructions that "deviate from the plain and ordinary meaning unless the inventor acted as his own lexicographer or intentionally disclaimed or disavowed claim scope." *Id.* (citations omitted). Neither should Zoho be allowed to do so.  As explained below, nothing in the Asserted Patents' intrinsic record "overcome[s] the heavy presumption that the claims mean what they say." *See Liebel-Flarsheim*, 358 F.3d at 913 (citation and internal quotation marks omitted). For each disputed claim term, Liberty Peak's proposed constructions stay true to the claim language as understood by a person of ordinary skill in the art ("POSITA") at the time of the invention and align most naturally with the patents' intrinsic record as a whole. *See Phillips*, 415 F.3d at 1316.

Generally, the disputed terms are so basic that they need no further definition.  Indeed, in this case, further definition of the disputed terms would solely be an exercise in changing the terms' meaning and not providing a true definition. Thus, the Court should adopt Liberty Peak's proposed constructions in full.

### A.   The Claim Term "account information" ('122 Patent Claims 1, 3, 6, 15; '901 Patent Claims 1, 4, 8-9, 11, 14, 16, 18-19; and '088 Patent Claims 1, 5, 15, 20)

| LPV Construction | Zoho Construction |
|---|---|
| Plain and ordinary meaning – no need for construction. | "Information from an account (e.g. an account number) wherein the account is associated with an open account or closed account system" |

| LPV Construction | Zoho Construction |
|---|---|
| | "An open account system is one that enables transactions with different merchants. Credit cards such as Visa and American Express are examples of open accounts. Closed accounts, by contrast, may be restricted to use with a particular store/merchant, a particular chain of stores/merchants or a collection of affiliated stores/merchants." |

The term "account information" requires no construction because it has a readily understood meaning in common parlance and its usage in the claims and specification is absolutely consistent with that meaning. The Asserted Patents repeatedly use the term "account information" to refer to information associated with an account holder, which the Asserted Patents then discuss is used for various things, for example, "to conduct a transaction with the account holder". *See, e.g.,* Claim 1 of the '122 Patent at 10:16-20 ("detecting, at a browser toolbar of a computer system, a request from a web service to obtain account information of an account holder, wherein the account information is usable to conduct a transaction with the account holder;"). Examples of "account information" for particular embodiments include different types of data such as various kinds of account numbers and sensitive personally identifiable information (e.g., a social security number). '122 Patent at 4:1-6. Although the specification provides these examples, Zoho improperly suggests limiting the definition of "account information" to particular categories of information.

This usage is straight forward and readily understandable to a lay juror. "Not all terms in a patent need to be construed." *Humanscale Corp. v. CompX Intern. Inc.*, 3:09-cv-86, 2010 WL 3222411, at *3 (E.D. Va. Aug. 16, 2010) (finding that a claim term should be accorded its ordinary and customary meaning is not the same as tasking the jury with creating its own meaning). Rather, not further construing the term in this case represents compliance with the Federal Circuit's

mandate that a "trial judge [need not] repeat and restate every claim term in order to comply with the ruling that claim construction is for the court … [as][it] is not an obligatory exercise in redundancy." *Id.* (quoting *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997)); *see also Verizon Services Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1303-04 (Fed. Cir. 2007) (upholding district court's refusal to adopt defendant's narrow proposed construction and decision that ordinary meaning of term "destination" should apply); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206-07 (Fed. Cir. 2010) (upholding trial court's finding that term "addressed to a client" carried its ordinary meaning). Put simply, "district courts are not (and should not be) required to construe *every* limitation present in a patent's asserted claims." *O2 Micro*, 521 F.3d at 1362.

Nevertheless, Zoho proposes a long and convoluted construction of "account information" that implies, among other things, reference to a credit card account "wherein the account is associated with an open account or closed account system" and goes on to further limit what it means by "account system." No reason exists for such a construction except to seek to improperly import limitations from the specification and restrict the otherwise plainly understandable term "account information" to a series of exemplary categories of information.

Zoho's demand that the Court construe "account information" is illustrative of Zoho's approach to claim construction. The disputed term "account information" has an ordinary and customary meaning understood by a person of ordinary skill in the art as well as a layman. Zoho's construction of this term is wrong because it completely disregards the ordinary meaning of the term. There is nothing hindering a jury from understanding the plain meaning of this term.

Per the specification of the '122 Patent the term "account information" is much broader than Zoho's overly limiting construction. The claims and specification fully support LPV's

position. For example, the specification describes "account information" simply as being inclusive of "generic account data," provided to a customer. *See* '122 Patent at 5:14-16.  Specifically, in one embodiment the specification explains that a "…toolbar server application … will query customer card and "***account information***" datastore unit … ***for "generic account data"*** associated with the customer." *Id.* (emphasis added). However, if "generic account data" is included within a store of "account information," the term cannot be limited as suggested by Zoho. Moreover, though the specification describes that a record search is performed in a customer card and account information datastore unit for ***eligible cards***, this does not modify the general description of the term as being inclusive of generic account data—and does not limit the category of information encompassed by "account information" to strictly financial accounts "e.g., identifying a credit card number" as proposed by Zoho. *See, e.g.*, *id.* at 5:12-22.

Furthermore, the ordinary meaning of this term is inclusive of various types of information having uses not limited to merely identifying a financial account. *Id.* (describing that records searched in the customer card and "account information" datastore unit provide information for identifying eligibility of a card for use with a web service). Additionally, the specification's discussion of "querying a customer card and account information datastore unit … for ***generic account data*** associated with the customer" is expressly contrary to Zoho's convoluted and restrictive construction. *Id.*

Zoho's proposed construction dramatically alters the scope of the term "account information," imposing substantial limitations–e.g., being limited to identifying financial "…account number[s], credit card[s], or the like." However, from the perspective of a person

having ordinary skill in the art at the time the application was filed, the term "account information" has a plain and ordinary meaning.[1]

Therefore, Zoho's proposed construction limiting the term "***account information***" is incorrect. Based at least on the specifications of the Asserted Patents, and basic principles of claim construction, the Court should refrain from adopting Zoho's unnecessary restrictive construction. Instead, the Court should afford the term "account information" its plain, ordinary, and widely understood meaning.

### B. The Claim Term "encryption key" ('122 Patent Claims 1, 7, 15)

| LPV Construction | Zoho Construction |
|---|---|
| Plain and ordinary meaning – no need for construction. | "a private key that corresponds to a public key" |

Again, the term "encryption key" does not require construction. The term has an ordinary and customary meaning that is well understood by a person of ordinary skill in the art. Zoho's proposed construction is incorrect because (1) it limits "encryption key" to specific functions that the term must perform that squarely violate the doctrine of claim differentiation; (2) it requires the encryption key to ***correspond*** to a public key and thus renders other portions of the claims redundant[2]; and (3) completely disregards the plain meaning of the term while impermissibly reading in claim limitations from the specification.

---

[1] *See Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,* 381 F.3d 1111, 1116 (Fed. Cir. 2004) ("[a] court construing a patent claim seeks to accord a claim the meaning it would have to a person of ordinary skill in the art at the time of the invention"); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010) (district court did not err when rejecting defendants' construction and instructing the jury to give the claim term its "ordinary meaning"); *Silicon Graphics, Inc. v. ATI Techs., Inc.,* 607 F.3d 784, 798 (Fed. Cir. 2010) (affirming the district court's in not construing claim term and instead applying its ordinary meaning).

[2] For Claim 9 to have different scope than Claim 8 of the '122 patent, "encryption key" cannot be limited to the specific functionality recited in Claim 9. *See Merck & Co. v. Teva Pharms. USA, Inc.,* 395 F.3d 1364, 1372 (Fed. Cir. 2005) (a claim construction that gives meaning to all the terms

First, Claim 1 of the '122 Patent, from which Claim 7 depends recites "wherein the decrypting is performed using an encryption key" regarding the function of the claimed "encryption key." '122 Patent 10:24-29. This is a plain use of the term. However, Zoho's definition incorporates the limitation of Claim 7 which recites "an encryption key pair, wherein the encryption key pair *includes a public encryption key that corresponds to the encryption key*." The doctrine of claim differentiation requires that encryption key pair limitation of Claim 7 should not be read into the meaning of "*encryption key*" in Claim 1. *Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 972 (Fed. Cir. 1999) ("[L]imitations stated in dependent claims are not be read into the independent claim from which they depend."); *see also Pilot Energy Sols., L.L.C. v. OXY USA Inc.*, No. A-16-CA-00687-SS, 2017 WL 3726432, at *5 (W.D. Tex. Aug. 25, 2017) ("[T]he doctrine of claim differentiation requires that the limitations in a parent claim be construed to be different in scope from those in dependent claims.") (quoting *TecSec, Inc. v. Adobe Sys. Inc.*, 658 Fed. App'x. 570, 577 (Fed. Cir. 2016)).

Furthermore, Claim 8 of the '122 Patent recites "A system, comprising: … decrypting … encrypted [information] using an *encryption key* maintained by the browser toolbar…." '122 Patent at 10:54-67 (Claim 8) (emphasis added). However, Claim 9 that is dependent upon Claim 8 recites, "…*creating a public/private key pair, wherein the "encryption key" is a private key of the pair*…." *Id.* at 11:7-9 (Claim 9) (emphasis added). And Claim 14, that is dependent upon Claim 8, similarly recites "generating an encryption key pair that includes the encryption key". Thus, the Asserted Patents include *dependent* claims addressing the "encryption key" being a private key of

---

of the claim is preferred over one that does not do so); *Elekta Instrument S.A. v. O.U.R. Sci. Int'l, Inc.*, 214 F.3d 1302, 1307 (Fed. Cir. 2000) (construing claim to avoid rendering another claim limitation superfluous); *See also, Broadcom Corp. v. Int'l Trade Comm'n,* 542 F.3d 894, 906–07 (Fed. Cir. 2008).

a pair of public/private keys. *Id.*  The presumption applying claim differentiation is especially true here where "generating an encryption key pair that includes the encryption key" is the only limitation of Claim 14. *SunRace Roots Enter. Co. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed. Cir. 2003) (finding that the presumption is especially strong when "the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim."). Accordingly, all of Claim 14 and an element of Claim 9 would be rendered superfluous by Zoho's erroneous construction.  This clearly violates the doctrine of claim differentiation.

Furthermore, Zoho's apparent argument that the term "encryption key" should encompass *only a particular kind* of encryption runs afoul of the restriction against reading limitations from the specification into the claims. There is nothing in the patents that indicate that the "encryption key" must be a "'private key' corresponding to a 'public key'". Although the specification discusses the encryption key as a private key having a corresponding public key, it does so in optional embodiments. *See* '122 Patent 12:26-28 (Claim 19 limitations being read into "encryption key" of e.g., Claim 1). Since there is no lexicographical definition for the term "encryption key" in the specification that suggests that the patentee intended to use the term in a non-standard way, there is no reason for such a construction except to seek to improperly import limitations from the specification in the Asserted Patents. As such, this Court should not adopt Zoho's unnecessary and restrictive construction.

**C.**      **The Claim Term "cryptographic key" ('901 Patent Claims 1, 4, 11, 14; '088 Patent Claims 1, 15)**

| LPV Construction | Zoho Construction |
|---|---|
| Plain and ordinary meaning – no need for construction. | "a private key that corresponds to a public key" |

Similar to "encryption key", the term "cryptographic key" also does not require construction.  As used in the independent claims of the '901 and '088 Patents, the term simply requires that it is "usable to decrypt encrypted account information of an account holder." *See* '088 Patent at 10:31-33, 12:15-18; '109 Patent 10:29-31, 11:15-17.  In these two patents, the patentee plainly uses the term "cryptographic key" in a way that consistently demonstrates an intention that the term be recognized to have its ordinary and customary meaning as understood by a person of ordinary skill in the art. Despite this, Zoho seeks to impermissibly narrow "cryptographic key" to mean only "a private key that corresponds to a public key" just as it sought to impermissibly narrow the term "encryption key" in the '122 Patent. Zoho's proposed construction is also incorrect because it limits the term "cryptographic key" to specific functions that the term must perform—violating the doctrine of claim differentiation.

For example, Zoho's proposed construction for "cryptographic key" in Claim 15 of the '088 patent is duplicative of the first step of dependent Claim 16. Claim 15 recites "a cryptographic key generated by the browser toolbar…." '088 Patent at 12:15-19. Dependent Claim 16 recites "generating … a public key pair ***having a public key and a private key, wherein the "cryptographic key" is the private key***…." '088 Patent at 12:24-26. As such, the Patent already addresses the cryptographic key being a private key of a generated public key pair in Claim 16. Thus, an entire step of Claim 16 of Liberty Peak's '088 Patent would be rendered superfluous and redundant if Zoho's incorrect and narrowing construction were adopted. Similarly, the "cryptographic key" of Claim 1 cannot be limited to the specific functionality "generating a public key pair having a public key and a private key, wherein the private key is the cryptographic key" as recited in Claim 2. *See Elekta Instrument S.A.*, 214 F.3d at 1307 (Fed. Cir. 2000) (construing claim to avoid rendering another claim limitation superfluous).

Furthermore, by requiring the cryptographic key to *correspond* to a public key, Zoho's construction limiting the term to particular embodiments. *See* '122 Patent at 8:5-11. There is nothing within the Asserted Patents that indicate that the "cryptographic key" must be limited only to a "private key corresponding to a public key" as proposed by Zoho.  Moreover, Zoho's restrictive construction blatantly reads limitations from the specification into the claims. Furthermore, though the specification discusses the cryptographic key as a private key having a corresponding public key it only does so in optional embodiments of the invention. Accordingly, the Court should reject Zoho's unnecessary and restrictive construction of this term and adopt its plain and ordinary meaning.

> **D.**   **The Claim Terms "securely storing the account information at the browser toolbar" ('122 Patent Claim 1) "securely storing, by the browser toolbar, the account information at the browser toolbar" ('901 Patent Claims 1, 11; '088 Patent Claim 1)**

| "securely storing the account information at the browser toolbar" | |
|---|---|
| **LPV Construction** | **Zoho Construction** |
| Plain and ordinary meaning – no need for construction, or in the alternative: "storing the account information in a data storage implementation wherein the stored account information is securely accessible by the browser toolbar" | Indefinite, or in the alternative: "storing the account information in a data storage implementation wherein the stored account information is accessible only by the browser toolbar" |

| "securely storing, by the browser toolbar, the account information at the browser toolbar" | |
|---|---|
| **LPV Construction** | **Zoho Construction** |
| Plain and ordinary meaning – no need for construction, or in the alternative: "storing, by the browser toolbar, the account information in a data storage implementation wherein the stored account information is securely accessible by the browser toolbar" | Indefinite, or in the alternative: "storing, by the browser toolbar, the account information in a data storage implementation wherein the stored account information is accessible only by the browser toolbar" |

1.      **Zoho's Construction For the "securely storing . . ." Terms Imports an Improper Negative Limitation**

Liberty Peak briefs these terms together as the argument is the same for each. The terms "securely storing the account information at the browser toolbar" and "securely storing, by the browser toolbar, the account information at the browser toolbar" require no construction because beyond the already-agreed construction of "browser toolbar" the terms are readily understandable and consistent with their plain and ordinary meaning.

Prior to briefing, the parties met and conferred and agreed on a construction for the term "browser toolbar" as "a software program that adds functionality to a browser and includes a graphical user interface component within the browser." There is not a legitimate need construe the other well understood words within the "securely storing" phrases other than to impermissibly narrow the terms.

Furthermore, to the extent that the Court finds that the terms need construction, the parties generally agree that the terms refer to "storing . . . the account information in a data storage implementation wherein the stored account information is securely accessible by the browser toolbar". The disagreement is Zoho's insistence that the terms be further limited such that "stored account information is accessible ***only*** by the browser toolbar**".** This imported negative limitation is plainly improper. The Federal Circuit "has expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment. . .  This is especially true here, where [the] proposed construction includes a negative limitation." *Ethicon LLC.*, 847 Fed. App'x. 901, 907, 2021 WL 960766 (Fed. Cir. Mar. 15, 2021) (quoting *Liebel-Flarsheim*, 358 F.3d at 906).

Claim terms are "given their ordinary and customary meaning, absent a clear indication otherwise from the specification or prosecution history, as where the patentee acts as his own

lexicographer or clearly disavows claim scope." *Lucky Litter LLC v. ITC*, 403 F. App'x 490, 494 (Fed. Cir. 2010); *see also Thorner*, 669 F.3d at 1365. There is "a 'heavy presumption' that claim terms carry their full ordinary and customary meaning . . . unless the patentee unequivocally imparted a novel meaning to those terms or expressly relinquished claim scope during prosecution." *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003) (reversing the district court where the accused infringer "urges us to disregard that strong presumption and to condone the added negative limitation based on [patentee's] alleged disclaimer . . . during the patent prosecution.).

Here the intrinsic evidence offers no support for deviating from the ordinary and customary meaning of the broader phrases used in conjunction with the agreed construction of "browser toolbar."   Zoho's proposed construction deviates from the plainly understandable phrases "securely storing," "by the browser toolbar," and "[by/at] the browser toolbar" in favor of its negative limitation "only by" the browser toolbar.

Furthermore, the specification for the Asserted Patents does not support Zoho's construction. There is not a single instance in the specification, or otherwise, where storing of "account information" is so limited to mean that "account information is ***accessible only*** by the browser toolbar**."** The Court should not adopt a construction that replaces a readily understandable term with an unsupported construction, and moreover, imports a negative limitation into the claim.

### 2.      The "securely storing . . ." Terms Are Not Indefinite

While providing proposed definitions for both "securely storing . . ." terms, Zoho also argues that these terms are indefinite. Although Zoho has amended its invalidity contentions twice, it has yet to clearly articulate its indefinite position for these terms.  Nevertheless, Liberty Peak anticipates that Zoho will also argue that the usage of the terms "by" and "at" the browser toolbar fail to provide reasonable clarity of the claim scope.

Both of these terms are readily understandable in the context of the intrinsic evidence.  The Parties have agreed that a browser toolbar is "a software program . . . ."   If not obvious, the specification also describes where a "browser toolbar" resides.   The browser toolbar resides on a "customer's computer system." '122 Patent 4:44-63.  In several places, the specification explains that, among other things, "[i]n one embodiment a method and computer readable medium are provided for securely downloading customer data to a browser toolbar."  *Id.* at 2:18-23.

Further, the specification shows the plain language use of the "by" and "at" terms within that context. For example, the specification states "[t]he web interface unit is configured to receive, *via the browser* toolbar, a request for customer data from a customer" and "stored PII data may be updated as changes to customer card and account information datastore 120 occur *via browser toolbar* 102." *Id.* at 2:38-40, 6:7-9.  And "toolbar server application 112 determines all the cards associated with the customer that are eligible for use with the web service that initiated the PII data request *at the customer's system*" *Id.* at 5:19-23. This shows the plain usage of the "securely storing . . ." terms relate to account information being securely stored "at" the browser toolbar, and in some instances, "by" the browser toolbar. The claim scope for the terms is reasonably certain and readily ascertainable.

### E.    The Remaining Five Claims Terms Are Not Indefinite

Zoho alleges that five claim terms are indefinite under pre-AIA 35 U.S.C. 112 ¶ (2) ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.").   These terms are "generating, via the browser toolbar" ('122 Patent Claim 7); "generating, at a browser toolbar" ('901 Patent Claims 1, 11, and '088 Patent Claim 1); "determining, at a browser toolbar" ('122 Patent Claim 15, and '088 Patent Claim 15); "decrypting, at the browser toolbar" ('122 Patent

Claim 15); and "providing, via the browser toolbar, the stored account information to the web service" ('122 Patent Claim 6).

A claim is indefinite when viewed in light of the intrinsic evidence, it would not "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Inst.*, 572 U.S. 898, 910 (2014). As it is a challenge to the validity of a patent, the failure of any claim in suit to comply with § 112 must be shown by the challenger with clear and convincing evidence. *Id.* at 912 n.10.  Despite serving three sets of invalidity contentions, Zoho has not yet articulated its indefiniteness arguments with respect to these terms.  Liberty Peak is not yet in possession of Zoho's indefiniteness arguments and will respond when, presumably, Zoho articulates its arguments in its opening claim construction brief.

## V.    <u>CONCLUSION</u>

Liberty Peak endeavors to provide clear, helpful constructions for the terms at issue where a construction is warranted.  Zoho offers improper constructions that import limitations from preferred embodiments and otherwise fail to comport with accepted claim constructions principles. Accordingly, for all the reasons stated above, Liberty Peak requests the Court to adopt its proposed constructions for the claim terms at issue.

Dated: January 6, 2023                  Respectfully submitted,


                                        **PLATT CHEEMA RICHMOND PLLC**

                                        */s/ Matthew C. Acosta*
                                        Matthew C. Acosta
                                        Texas Bar No. 24062577
                                        macosta@pcrfirm.com
                                        Andrew Lin
                                        Texas Bar. No. 24092702
                                        alin@pcrfirm.com
                                        Nicholas C. Kliewer
                                        Texas Bar No. 24083315
                                        nkliewer@pcrfirm.com
                                        **PLATT CHEEMA RICHMOND PLLC**
                                        1201 N. Riverfront Blvd., Suite 150
                                        Dallas, Texas 75207
                                        214.559.2700 Main
                                        214.559.4390 Fax

                                        **COUNSEL FOR DEFENDANT AND
                                        COUNTERCLAIMANT
                                        LIBERTY PEAK VENTURES, LLC**


## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel for Defendant does hereby certify that on January 6, 2023, this pleading was served on counsel of record via the Court's electronic filing system.

                                        */s/ Matthew C. Acosta*
                                        Matthew C. Acosta