# Exhibit B

# Exhibit B



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/512,873 | 07/30/2009 | Blayn W. Bennau | 12655.1600 | 6515 |

66170          7590          09/24/2010
Snell & Wilmer L.L.P. (AMEX)
ONE ARIZONA CENTER
400 E. VAN BUREN STREET
PHOENIX, AZ 85004-2202

| EXAMINER |
|---|
| REAGAN, JAMES A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3621 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 09/24/2010 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

HSOBELMAN@SWLAW.COM
DMIER@SWLAW.COM
JESLICK@SWLAW.COM

|  | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 12/512,873 | BENNAU ET AL. |
|  | Examiner | Art Unit |
|  | JAMES A. REAGAN | 3621 |

-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☒ Responsive to communication(s) filed on <u>30 July 2009</u>.
2a) ☐ This action is **FINAL**.   2b) ☒ This action is non-final.
3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims

4) ☒ Claim(s) <u>1-20</u> is/are pending in the application.
   4a) Of the above claim(s) _____ is/are withdrawn from consideration.
5) ☐ Claim(s) _____ is/are allowed.
6) ☒ Claim(s) <u>1-20</u> is/are rejected.
7) ☐ Claim(s) _____ is/are objected to.
8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

## Application Papers

9) ☐ The specification is objected to by the Examiner.
10) ☒ The drawing(s) filed on <u>30 July 2009</u> is/are: a) ☒ accepted or b) ☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

## Priority under 35 U.S.C. § 119

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    a) ☐ All   b) ☐ Some * c) ☐ None of:
       1. ☐ Certified copies of the priority documents have been received.
       2. ☐ Certified copies of the priority documents have been received in Application No. _____.
       3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☐ Information Disclosure Statement(s) (PTO/SB/08)
   Paper No(s)/Mail Date _____.
4) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____.
5) ☐ Notice of Informal Patent Application
6) ☐ Other: _____.

Application/Control Number: 12/512,873  Page 2
Art Unit: 3621

## DETAILED ACTION

**Status of Claims**

1. This action is in reply to the application filed on **07/30/2009**.

2. Claims 1-20 are currently pending and have been examined.

Application/Control Number: 12/512,873                                                                                                Page 3

Art Unit: 3621

## Claim Rejections - 35 USC § 103

3.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

4.      The factual inquiries set forth in *Graham* **v.** *John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966), that are applied for establishing a background for determining obviousness under 35 U.S.C. 103(a) are summarized as follows:

1. Determining the scope and contents of the prior art.
2. Ascertaining the differences between the prior art and the claims at issue.
3. Resolving the level of ordinary skill in the pertinent art.
4. Considering objective evidence present in the application indicating obviousness or nonobviousness.

5.      This application currently names joint inventors. In considering patentability of the claims under 35 U.S.C. 103(a), the examiner presumes that the subject matter of the various claims was commonly owned at the time any inventions covered therein were made absent any evidence to the contrary. Applicant is advised of the obligation under 37 CFR 1.56 to point out the inventor and invention dates of each claim that was not commonly owned at the time a later invention was made in order for the examiner to consider the applicability of 35 U.S.C. 103(c) and potential 35 U.S.C. 102(e), (f) or (g) prior art under 35 U.S.C. 103(a).

Application/Control Number: 12/512,873　　　　　　　　　　　　　　　　　　　　　Page 4
Art Unit: 3621

**6.**　　Claims 1-6, and 8-19 are rejected under 35 U.S.C. 103(a) as being unpatentable over Reno et al. (USPGP 2005/0172229 A1), hereinafter **RENO**, in view of Weber (USPGP 2004/0061720 A1), hereinafter **WEBER**.

**Claim 1:**

　　**RENO** as shown below discloses the following limitations:

- *receiving, via the browser toolbar, a request for customer data from a customer;* (see at least paragraph 0012)

- *determining the request for customer data includes a request for personal identifiable information requiring encryption by a public encryption key generated by the browser toolbar;* (see at least paragraphs 0014, 0022, 0031)

- *authenticating the customer based on a set of a user credential and an account specific access credential,* (see at least paragraph 0013) *wherein:*

  - *the user credential and the account specific access credential are distinct,* (see at least paragraph 0013)

  - *the account specific access credential is associated with an account of the customer;* (see at least paragraph 0013)

- *encrypting the requested personal identifiable information using the public encryption key generated by the browser toolbar;* (see at least paragraph 0035)

　　**RENO** does not disclose the limitation of …*requiring encryption by a public encryption key generated by the browser toolbar.* However, **RENO**, in at least paragraph 0014 discloses digital signatures and SSL. It would have been obvious to one of ordinary skill in the art at the time of the invention to combine/modify the method of **RENO** with the technique of utilizing PKI from a browser tool bar because, "Fraudulent activities on the Internet have increased drastically. Examples include password spoofing, password phishing, and man-in-the-middle attacks. "Spoofing" and "phishing" generally refer to the practice by nefarious parties of fooling a web user into providing sensitive information, such as passwords, personal information, financial

information, and the like, by imitating a web site the user trusts. "Man-in-the-middle attack" (MITM) generally refers to the practice of sniffing packets from a network, possibly modifying them, then returning them to the network. MITM typically requires comprising a sender's and/or a receiver's public key. In part, these fraudulent activities are successful because users are trained to enter sensitive information directly into web forms and popup windows. The content and appearance of these windows are easy to spoof since they are based on ordinary HTML. Any content delivered over the web, however, is easy to duplicate for the purposes of setting up a fake web site. In general there is risk whenever one wants to share sensitive information via a network. Thus, systems and methods are needed that assist users to not provide sensitive information to untrusted entities." (**RENO**: paragraph 0003)

**RENO** does not disclose the limitation of *transmitting the encrypted personal identifiable information to the browser toolbar*. However, **WEBER**, in at least paragraphs 0008, 0019, and 0023 discloses transmission of data from the browser toolbar. It would have been obvious to one of ordinary skill in the art at the time of the invention to combine/modify the method of **RENO** with the technique of **WEBER** because, "Fraudulent activities on the Internet have increased drastically. Examples include password spoofing, password phishing, and man-in-the-middle attacks. "Spoofing" and "phishing" generally refer to the practice by nefarious parties of fooling a web user into providing sensitive information, such as passwords, personal information, financial information, and the like, by imitating a web site the user trusts. "Man-in-the-middle attack" (MITM) generally refers to the practice of sniffing packets from a network, possibly modifying them, then returning them to the network. MITM typically requires comprising a sender's and/or a receiver's public key. In part, these fraudulent activities are successful because users are trained to enter sensitive information directly into web forms and popup windows. The content and appearance of these windows are easy to spoof since they are based on ordinary HTML. Any content delivered over the web, however, is easy to duplicate for the purposes of setting up a fake web site. In general there is risk whenever one wants to share sensitive information via a

Application/Control Number: 12/512,873 Page 6
Art Unit: 3621

network. Thus, systems and methods are needed that assist users to not provide sensitive information to untrusted entities." (**RENO**: paragraph 0003)

**Claim 2:**

The combination of **RENO/WEBER** discloses the limitations as shown in the rejections above. **RENO** further discloses *creating a public/private key pair combination in response to the detecting* (see at least paragraph 0035). **RENO** does not specifically disclose the following limitations, but **WEBER** as shown does:

- *analyzing, by the browser toolbar, web services initiated on a computer system executing the browser toolbar;* (see at least paragraph 0004)
- *detecting, based at least in part on the analyzing, when the request for customer data includes the request for personal identifiable information;* (see at least paragraph 0006)

It would have been obvious to one of ordinary skill in the art at the time of the invention to combine/modify the method of **RENO** with the technique of **WEBER** because, "Fraudulent activities on the Internet have increased drastically. Examples include password spoofing, password phishing, and man-in-the-middle attacks. "Spoofing" and "phishing" generally refer to the practice by nefarious parties of fooling a web user into providing sensitive information, such as passwords, personal information, financial information, and the like, by imitating a web site the user trusts. "Man-in-the-middle attack" (MITM) generally refers to the practice of sniffing packets from a network, possibly modifying them, then returning them to the network. MITM typically requires comprising a sender's and/or a receiver's public key. In part, these fraudulent activities are successful because users are trained to enter sensitive information directly into web forms and popup windows. The content and appearance of these windows are easy to spoof since they are based on ordinary HTML. Any content delivered over the web, however, is easy to duplicate for the purposes of setting up a fake web site. In general there is risk whenever one wants to

share sensitive information via a network. Thus, systems and methods are needed that assist users to not provide sensitive information to untrusted entities." (**RENO**: paragraph 0003)

**Claim 3:**

The combination of **RENO/WEBER** discloses the limitations as shown in the rejections above. **RENO** further discloses *the account specific access credential includes a card security code associated with the customer*. See at least paragraph 0034.

**Claims 4-6:**

The combination of **RENO/WEBER** discloses the limitations as shown in the rejections above. **RENO** further discloses:

- *determining the account is eligible for use with a web service initiating the request for customer data;* (see at least paragraph 0029)

- *retrieving generic account data associated with the account, wherein the generic account data includes information for the customer to decipher the account from another;* (see at least paragraph 0034)

- *transmitting the generic account data to a computer system executing the browser toolbar.* (see at least paragraph 0012)

- *the generic account data includes a portion of an account number associated with the account.* (see at least paragraph 0034)

- *receiving, via a user interface, a selection request indicating the customer requests access to personal identifiable information associated with the account;* (see at least paragraphs 0012-0015)

- *determining whether the customer has access to the personal identifiable information associated with the account based at least in part on the account specific access credential.* (see at least paragraphs 0012-0015)

Application/Control Number: 12/512,873 Page 8
Art Unit: 3621

**Claims 8-19:**

The combination of **RENO/WEBER** discloses the limitations as shown in the rejections of the claims above.  The Examiner finds that remaining claims 8-19 are not patentably distinct from claims 1-6, nor do they produce any new, meaningful, synergetic result that would render the claims novel and therefore, for the sake of clarity, has grouped the rejections of claims 1-6 and 8-19 accordingly using the same references and citations as above.

Application/Control Number: 12/512,873     Page 9
Art Unit: 3621

7.  Claims 7 and 20 rejected under 35 U.S.C. 103(a) as being unpatentable over **RENO/WEBER** and further in view of Examiner's **OFFICIAL NOTICE**.

**Claims 7 and 20:**

The combination of **RENO/WEBER** discloses the browser toolbar application as shown in the rejections above. **RENO/WEBER** does not specifically state *the encrypted personal identifiable information is decrypted by the browser toolbar and stored in an e-wallet*. However, the Examiner takes **OFFICIAL NOTICE** that it is old and well known in the online transaction and e-commerce arts to utilize electronic purses and wallets. It would have been obvious to one of ordinary skill in the art at the time of the invention to combine/modify the method of **RENO/WEBER** with the technique of an e-wallet because "Fraudulent activities on the Internet have increased drastically. Examples include password spoofing, password phishing, and man-in-the-middle attacks. "Spoofing" and "phishing" generally refer to the practice by nefarious parties of fooling a web user into providing sensitive information, such as passwords, personal information, financial information, and the like, by imitating a web site the user trusts. "Man-in-the-middle attack" (MITM) generally refers to the practice of sniffing packets from a network, possibly modifying them, then returning them to the network. MITM typically requires comprising a sender's and/or a receiver's public key. In part, these fraudulent activities are successful because users are trained to enter sensitive information directly into web forms and popup windows. The content and appearance of these windows are easy to spoof since they are based on ordinary HTML. Any content delivered over the web, however, is easy to duplicate for the purposes of setting up a fake web site. In general there is risk whenever one wants to share sensitive information via a network. Thus, systems and methods are needed that assist users to not provide sensitive information to untrusted entities." (**RENO**: paragraph 0003).

Application/Control Number: 12/512,873 Page 10
Art Unit: 3621

## CONCLUSION

8. Any inquiry of a general nature or relating to the status of this application or concerning this communication or earlier communications from the Examiner should be directed to **James A. Reagan** (james.reagan@uspto.gov) whose telephone number is **571.272.6710**. The Examiner can normally be reached on Monday-Friday, 9:30am-5:00pm. If attempts to reach the examiner by telephone are unsuccessful, the Examiner's supervisor, **ANDREW J. FISCHER** can be reached at **571.272.6779**.

9. Should Applicant desire in the future to receive formal or informal email communications from the Examiner (e.g. acknowledgments, references, courtesy copies of documents, etc.), the electronic file must contain written authorization to conduct email communications. See MPEP §502.03 III. For Applicant's benefit, exemplary language for written authorization is in MPEP §502.03 III. ¶4. The exemplary language is:

> *Recognizing that Internet communications are not secure, I hereby authorize the USPTO to communicate with me concerning any subject matter of this application by electronic mail. I understand that a copy of these communications will be made of record in the application file.*

10. In the situation where Applicant desires to receive email communications from the Examiner, the Examiner suggests placing the above exemplary language in Applicant's next correspondence.

Application/Control Number: 12/512,873 Page 11
Art Unit: 3621

11.  Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished applications is available through Private PAIR only.  For more information about the PAIR system, see  http://portal.uspto.gov/external/portal/pair . Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at **866.217.9197** (toll-free).

12.  Any response to this action should be mailed to:

**Commissioner of Patents and Trademarks**

**Washington, D.C.  20231**

or faxed to **571-273-8300**.

13.  Hand delivered responses should be brought to the **United States Patent and Trademark Office Customer Service Window**:

Randolph Building

401 Dulany Street

Alexandria, VA 22314.

/James A. Reagan/
Primary Examiner, Art Unit 3621
james.reagan@uspto.gov
571.272.6710 (Office)
571.273.6710 (Desktop Fax)