# Exhibit F



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

66170          7590          04/30/2014

Snell & Wilmer L.L.P. (AMEX)
ONE ARIZONA CENTER
400 E. VAN BUREN STREET
PHOENIX, AZ 85004-2202

| EXAMINER |
| --- |
| REAGAN, JAMES A |

| ART UNIT | PAPER NUMBER |
| --- | --- |
| 3621 | |

DATE MAILED: 04/30/2014

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 12/512,873 | 07/30/2009 | Blayn W. Beenau | 12655.1600 | 6515 |

TITLE OF INVENTION: METHODS, APPARATUS AND COMPUTER PROGRAM PRODUCTS FOR SECURELY ACCESSING ACCOUNT DATA

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| nonprovisional | UNDISCOUNTED | $960 | $0 | $0 | $960 | 07/30/2014 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.   THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT.  SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED.   <u>THIS STATUTORY PERIOD CANNOT BE EXTENDED.</u>   SEE 35 U.S.C. 151.  THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION.   IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** __Mail__   Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
**or __Fax__   (571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

66170      7590      04/30/2014
Snell & Wilmer L.L.P. (AMEX)
ONE ARIZONA CENTER
400 E. VAN BUREN STREET
PHOENIX, AZ 85004-2202

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/512,873 | 07/30/2009 | Blayn W. Beenau | 12655.1600 | 6515 |

TITLE OF INVENTION: METHODS, APPARATUS AND COMPUTER PROGRAM PRODUCTS FOR SECURELY ACCESSING ACCOUNT DATA

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $960 | $0 | $0 | $960 | 07/30/2014 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| REAGAN, JAMES A | 3621 | 705-071000 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**

(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :   ☐ Individual   ☐ Corporation or other private group entity   ☐ Government

**4a. The following fee(s) are submitted:**

☐ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

**4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)**

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

**5. Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____      Date _____

Typed or printed name _____      Registration No. _____

Page 2 of 3

PTOL-85 Part B (10-13) Approved for use through 10/31/2013.      OMB 0651-0033      U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 12/512,873 | 07/30/2009 | Blayn W. Beenau | 12655.1600 | 6515 |

66170        7590        04/30/2014

Snell & Wilmer L.L.P. (AMEX)
ONE ARIZONA CENTER
400 E. VAN BUREN STREET
PHOENIX, AZ 85004-2202

| EXAMINER |
|---|
| REAGAN, JAMES A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3621 | |

DATE MAILED: 04/30/2014

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No. 12/512,873 | Applicant(s) BEENAU ET AL. | |
|---|---|---|---|
| | Examiner JAMES A. REAGAN | Art Unit 3621 | AIA (First Inventor to File) Status No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *the RCE, amendment, and response filed on 04/25/2011.*

   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on ____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are *1-6 and 8-19*. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov .

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   **Certified copies:**

   a) ☐ All   b) ☐ Some   *c) ☐ None of the:

   1. ☐ Certified copies of the priority documents have been received.
   2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
   3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: _____ .

   Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☒ Notice of References Cited (PTO-892)
2. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date 10/15/2012
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

5. ☐ Examiner's Amendment/Comment
6. ☒ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____ .

/JAMES A REAGAN/
Primary Examiner, Art Unit 3621

Application/Control Number: 12/512,873                                                    Page 2

Art Unit: 3621

**DETAILED ACTION**

**Acknowledgments**

1.      The present application is being examined under the pre-AIA first to invent provisions.

2.      This action is in reply to the RCE, amendment, and response filed on **04/25/2011**.

3.      Claims 1, 8, 11, and 14 have been amended.

4.      Claims 7 and 20 have been canceled.

5.      Claims 1-6 and 8-19 are currently pending and have been examined.

Application/Control Number: 12/512,873                                    Page 3

Art Unit: 3621

**Information Disclosure Statement**

**6.**      The Information Disclosure Statement filed on **10/15/2012** has been considered. An initialed copy

of the Form 1449 is enclosed herewith.

Application/Control Number: 12/512,873                                    Page 4

Art Unit: 3621

**Allowable Subject Matter**

**7.**      Claims 1-6 and 8-19 are allowed.  See Reasons for Allowance under separate heading.

**Reasons For Allowance**

8.      The following is an Examiner's statement of reasons for allowance:


        None of the art of record, taken individually or combination, disclose at least the method

step or system components of:


**Claim 1:**

        *A method comprising:*

-       *receiving, by a computer-based system for securely downloading customer data*
        *to a browser toolbar and via the browser toolbar, a request for customer data*
        *from a customer;*

-       *determining, by the computer-based system, that the request for customer data*
        *includes a request for personal identifiable information requiring encryption by a*
        *public encryption key generated by the browser toolbar;*

-       *authenticating, by the computer-based system, the customer based on a user*
        *credential and an account specific access credential, wherein:*

-       *the user credential and the account specific access credential are distinct, and*
        *the account specific access credential is associated with an account of the*
        *customer;*

-       *encrypting, by the computer-based system, the requested personal identifiable*
        *information using the public encryption key generated by the browser toolbar;*
        *and*

-       *transmitting, by the computer-based system, the encrypted personal identifiable*
        *information to the browser toolbar;*

Application/Control Number: 12/512,873                                                    Page 6

Art Unit: 3621

- *wherein the encrypted personal identifiable information is decrypted by the browser toolbar and saved to a secure electronic wallet (e-wallet).*

**Claim 8:**

*A system comprising:*

- *a tangible, non-transitory memory communicating with a processor for securely integrating personal identifiable information with a browser toolbar, the tangible, non-transitory memory having instructions stored thereon that, in response to execution by the processor, cause the processor to perform operations comprising:*

- *receiving, by the processor, via the browser toolbar, a request for customer data from a customer;*

- *determining, by the processor, that the request for customer data includes a request for personal identifiable information requiring encryption with a public encryption key generated by the browser toolbar;*

- *authenticating, by the processor, the customer based on a user credential and an account specific access credential, wherein:*

- *the user credential and the account specific access credential are distinct, and the account specific access credential is associated with an account of the customer;*

- *encrypting, by the processor the requested personal identifiable information using the public encryption key generated by the browser toolbar; and*

- *transmitting, by the processor, the encrypted personal identifiable information to the browser toolbar;*

- *wherein the encrypted personal identifiable information is decrypted by the browser toolbar and saved to a secure electronic wallet (e-wallet).*

**Claim 14:**

An article of manufacture including a non-transitory, tangible computer readable medium having instructions stored thereon that, in response to execution by a computer-based system for securely downloading customer data to a browser toolbar, cause the computer-based system to perform operations comprising:

- receiving, by the computer-based system and via the browser toolbar, a request for customer data from a customer;

- determining, by the computer-based system, that the request for customer data includes a request for personal identifiable information requiring encryption by a public encryption key generated by the browser toolbar;

- authenticating, by the computer-based system, the customer based on a user credential and an account specific access credential, wherein:

- the user credential and the account specific access credential are distinct, and the account specific access credential is associated with an account of the customer;

- encrypting, by the computer-based system, the requested personal identifiable information using the public encryption key generated by the browser toolbar; and

- transmitting, by the computer-based system, the encrypted personal identifiable information to the browser toolbar;

- wherein the encrypted personal identifiable information is decrypted by the browser toolbar and saved to a secure electronic wallet (e-wallet).

Application/Control Number: 12/512,873                                    Page 8
Art Unit: 3621

The Examiner has carefully reviewed the Applicants arguments and assertions filed on **03/21/2011**. Based upon the Applicants arguments and assertions the Examiner is persuaded by and agrees with the Applicant. Reno is directed to a browser user-interface security application that is configured to transmit sensitive information (e.g., an account number, a user name and password) to a bank system (para. [0034], lines 11-13). The purpose of the Reno system is to safeguard an account holder from entering his account number, user name, and password in a fraudulent or "spoofed" bank website (Figs. 3A and 3B, para. [0003]). Hence, Reno discloses using an encryption technique (i.e., SSL/TSL) to encrypt an account holder's sensitive information (i.e., account number, user name, and password) at a client machine. The sensitive information is decrypted at a bank server (para. [0031], para. [0036]), and a user is given access to his bank account. Applicants describe at paras. [0006]-[0009] an "e-wallet" or digital wallet which may facilitate payment for purchases made online. However, Applicants note that prior art e-wallets have the disadvantage that, "[e]ven if account data is ultimately stored in an encrypted form, the account data may be exposed during data entry and prior to encryption by the digital wallet software." Thus, there are prior art systems which permit users to view some of their financial account information - e.g., some systems permit users to log into their bank accounts to view account information (e.g., Reno). However, what has been lacking is ability to access "customer account data for transaction processing." In other words, what has been lacking is an e-wallet that is secure from attack after account data is downloaded, but before a user is given access to the data. The pending application solves this problem by generating an encryption key by the e-wallet (i.e., the browser toolbar), such that when a request is made by the browser toolbar for account information, the account information is encrypted at a transaction account issuer/bank system using the encryption key provided by the e-wallet. Further, on receipt of encrypted data, the browser toolbar may decrypt and save the data to a secure e-wallet prior to giving a user access to the data, thereby preventing attacks on the data by rogue programs running on the user's system. Therefore, Reno fails to disclose or contemplate, at least, "the encrypted personal

identifiable information is decrypted by the browser toolbar and saved to a secure electronic wallet (e-wallet)," as similarly recited by independent claims 1, 8, and 14 (emphasis added).

Weber discloses a multi-function browser toolbar that allows a user to "toggle groups of online search engines specializing in a specific field" (Abstract). For instance, with reference to Figures 1A-1D, Weber discloses a toolbar that permits toggling between one or more search engines (Fig. 1A), one or more subject (Fig. 1C), and/or one or more websites (Fig. 1D). Weber fails to remedy the deficiencies described above.    Although e-wallets may have been known in the art at the time of invention, it would not have been obvious to combine an e-wallet with Reno or Reno-Weber, because Reno is not directed to securing personal identifiable information (e.g., data that a user may use to make a purchase online) after a secure download from a server and before use/access by a user. Rather, Reno focuses on reducing the likelihood that a user will provide sensitive information to a spoofed website (para. [0019]). That is, although Reno may disclose secure (e.g., SSL/TSL) transmission of sensitive information to a browser, in fact the Reno system suffers from a vulnerability remedied by Applicants and not contemplated by Reno (i.e., vulnerability of decrypted information to attack by rogue programs on the user's computer) (see originally-filed specification at para. [0007]). Moreover, Reno is concerned with logging a user into his bank account (see Figs. 3A-3B), as opposed to enabling a user to make purchases via a secure file (i.e., an e-wallet) saved on the user's computer. Thus, it would not have been obvious to a person of ordinary skill to add an e-wallet to Reno or Reno-Weber, for the additional reason that Reno does not actually contemplate enabling a user to make a purchase using downloaded account information. That is, Reno merely gives access to a bank account (e.g., a Bank of America account, as illustrated by Figs. 3A-3B).

Application/Control Number: 12/512,873                                                      Page 10

Art Unit: 3621

**Conclusion**

9.      The prior art made of record and not relied upon is considered pertinent to applicant's disclosure.

- **MATSUMOTO**, ET AL. (JP 2007/156806 A) DISCLOSES, "A service provider server stores a wallet for centrally managing as a bookmark merchandise information found at virtual shops on the Internet and digital merchandise information obtained at real shops, in association with user identification information; and at the user's request, displays the stored wallet as merchandise information on an Internet browser together with a toolbar having a menu of predetermined functions and, when the user selects any function on the toolbar, executes the predetermined function."

10.     Any inquiry of a general nature or relating to the status of this application or concerning this communication or earlier communications from the Examiner should be directed to **James A. Reagan** (james.reagan@uspto.gov) whose telephone number is **571.272.6710.**  The Examiner can normally be reached on Monday-Friday, 9:30am-5:00pm.  If attempts to reach the examiner by telephone are unsuccessful, the Examiner's supervisor, **RUTAO WU** can be reached at **571.272.3136**.

11.     Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished applications is available through Private PAIR only.  For more information about the PAIR system, see  http://portal.uspto.gov/external/portal/pair .  Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at **866.217.9197** (toll-free).

Application/Control Number: 12/512,873                                                Page 11

Art Unit: 3621

12.     Any response to this action should be mailed to:

**Commissioner of Patents and Trademarks**

**Washington, D.C.  20231**

or faxed to **571-273-8300**.

13.     Hand delivered responses should be brought to the **United States Patent and Trademark Office Customer Service Window**:

Randolph Building

401 Dulany Street

Alexandria, VA 22314.

/James A. Reagan/
Primary Examiner, Art Unit 3621
james.reagan@uspto.gov
571.272.6710 (Office)
571.273.6710 (Desktop Fax)