# Exhibit H

PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | | |
|---|---|---|---|---|
| Inventors: | Blayn W. Bennau, et al. | § | Atty.Dkt.No.: | 6857-23201 |
| Serial Number: | 12/512,873 | § | Examiner: | Reagan, James W. |
| Filing Date: | July 30, 2009 | § | Group/Art Unit: | 3621 |
| Title: | METHODS, APPARATUS, AND COMPUTER PROGRAM PRODUCTS FOR SECURELY ACCESSING ACCOUNT DATA | § | Conf. No. | 6515 |

****CERTIFICATE OF E-FILING TRANSMISSION****

I hereby certify that this correspondence is being transmitted via electronic filing to the United States Patent and Trademark Office on the date shown below:

On: November 11, 2014           /Paul T. Seegers/
         Date                   Paul T. Seegers, # 66,621

### RESPONSE TO OFFICE ACTION MAILED AUGUST 19, 2014

This paper is submitted in response to an Office Action of August 19, 2014, to further highlight why the application is in condition for allowance.

Please amend the case as listed below.

**IN THE CLAIMS**

The following is a current listing of claims and will replace all prior versions and listings of claims in the application. Please amend the claims as follows.

1. (Previously Presented) A method comprising:

receiving, by a computer-based system for securely downloading customer data to a browser toolbar and via the browser toolbar, a request for customer data from a customer;

determining, by the computer-based system, that the request for customer data includes a request for personal identifiable information requiring encryption by a public encryption key generated by the browser toolbar;

authenticating, by the computer-based system, the customer based on a user credential and an account specific access credential, wherein:

the user credential and the account specific access credential are distinct, and

the account specific access credential is associated with an account of the customer;

encrypting, by the computer-based system, the requested personal identifiable information using the public encryption key generated by the browser toolbar; and

transmitting, by the computer-based system, the encrypted personal identifiable information to the browser toolbar, wherein the encrypted personal identifiable information is decrypted by the browser toolbar and saved to a secure electronic wallet (e-wallet).

2. (Original) The method of claim 1, further comprising:

analyzing, by the browser toolbar, web services initiated on a computer system executing the browser toolbar;

detecting, based at least in part on the analyzing, when the request for customer data includes the request for personal identifiable information; and

creating a public/private key pair combination in response to the detecting.

3. (Original) The method of claim 1, wherein the account specific access credential includes a card security code associated with the customer.

4.  (Previously Presented) The method of claim 1, further comprising:

   determining, by the computer-based system, that the account of the customer is eligible for use with a web service initiating the request for customer data;

   retrieving, by the computer-based system, generic account data associated with the account of the customer, wherein the generic account data includes information for the customer to decipher the account from another; and

   transmitting, by the computer-based system, the generic account data to a computer system executing the browser toolbar.

5.  (Previously Presented) The method of claim 4, wherein the generic account data includes a portion of an account number associated with the account of the customer.

6.  (Previously Presented) The method of claim 4, further comprising:

   receiving, via a user interface, a selection request indicating the customer requests access to personal identifiable information associated with the account of the customer; and

   determining whether the customer has access to the personal identifiable information associated with the account of the customer based at least in part on the account specific access credential.

7.  (Canceled)

8.      (Previously Presented) A system comprising:

a tangible, non-transitory memory communicating with a processor for securely integrating personal identifiable information with a browser toolbar,

the tangible, non-transitory memory having instructions stored thereon that, in response to execution by the processor, cause the processor to perform operations comprising:

receiving, by the processor, via the browser toolbar, a request for customer data from a customer;

determining, by the processor, that the request for customer data includes a request for personal identifiable information requiring encryption with a public encryption key generated by the browser toolbar;

authenticating, by the processor, the customer based on a user credential and an account specific access credential, wherein:

the user credential and the account specific access credential are distinct, and

the account specific access credential is associated with an account of the customer;

encrypting, by the processor, the requested personal identifiable information using the public encryption key generated by the browser toolbar; and

transmitting, by the processor, the encrypted personal identifiable information to the browser toolbar, wherein the encrypted personal identifiable information is decrypted by the browser toolbar and saved to a secure electronic wallet (e-wallet).

9.      (Previously Presented) The system of claim 8, wherein the browser toolbar is further configured to:

analyze web services initiated on a computer system executing the browser toolbar;

detect when the request for customer data includes the request for personal identifiable information; and

create a public/private key pair combination.

10.     (Previously Presented) The system of claim 8, wherein the account specific access credential includes a card security code associated with the customer.

11.     (Previously Presented) The system of claim 8, further comprising:

determining, by the processor, that the account of the customer is eligible for use with a web service initiating the request for customer data;

retrieving, by the processor, generic account data associated with the account of the customer, wherein the generic account data includes information for the customer to decipher the account of the customer from another; and

transmitting, by the processor, via the transmission unit, the generic account data to a computer system executing the browser toolbar.

12.     (Previously Presented) The system of claim 11, wherein the generic account data includes a portion of an account number associated with the account of the customer.

13.     (Currently Amended) The ~~apparatus~~ <u>system</u> of claim 11, wherein the toolbar server application is further configured to:

receive, via a user interface, a selection request indicating the customer requests access to personal identifiable information associated with the account of the customer; and

determine whether the customer has access to the personal identifiable information associated with the account of the customer based at least in part on the account specific access credential.

14.     (Previously Presented) An article of manufacture including a non-transitory, tangible computer readable medium having instructions stored thereon that, in response to execution by a computer-based system for securely downloading customer data to a browser toolbar, cause the computer-based system to perform operations comprising:

   receiving, by the computer-based system and via the browser toolbar, a request for customer data from a customer;

   determining, by the computer-based system, that the request for customer data includes a request for personal identifiable information requiring encryption by a public encryption key generated by the browser toolbar;

   authenticating, by the computer-based system, the customer based on a user credential and an account specific access credential, wherein:

      the user credential and the account specific access credential are distinct, and

      the account specific access credential is associated with an account of the customer;

   encrypting, by the computer-based system, the requested personal identifiable information using the public encryption key generated by the browser toolbar; and

   transmitting, by the computer-based system, the encrypted personal identifiable information to the browser toolbar, wherein the encrypted personal identifiable information is decrypted by the browser toolbar and saved to a secure electronic wallet (e-wallet).

15.     (Currently Amended) The article of ~~Claim~~ claim 14, further comprising:
   analyzing, by the browser toolbar, web services initiated on a computer system executing the browser toolbar;

   detecting, by the browser toolbar, based at least in part on the analyzing, when the request for customer data includes the request for personal identifiable information; and

   creating, by the browser toolbar, a public/private key pair combination in response to the detecting.

16.     (Currently Amended) The article of ~~Claim~~ claim 14, wherein the account specific access credential includes a card security code associated with the customer.

17.    (Currently Amended) The article of ~~Claim~~ claim 14, further comprising:

determining, by the computer-based system, that the account of the customer is eligible for use with a web service initiating the request for customer data;

retrieving, by the computer-based system, generic account data associated with the account of the customer, wherein the generic account data includes information for the customer to decipher the account of the customer from another; and

transmitting, by the computer-based system, the generic account data to a computer system executing the browser toolbar.

18.    (Currently Amended) The article of ~~Claim~~ claim 17, wherein the generic account data includes a portion of an account number associated with the account of the customer.

19.    (Currently Amended) The article of ~~Claim~~ claim 14, further comprising:

receiving, by the computer-based system, via a user interface, a selection request indicating the customer requests access to personal identifiable information associated with the account of the customer; and

determining, by the computer-based system, whether the customer has access to the personal identifiable information associated with the account of the customer based at least in part on the account specific access credential.

20.    (Canceled)

**REMARKS**

Claims 1-6 and 8-19 were pending in this application. Claims 13 and 15-19 have been amended to correct typographical errors. Claims 1-6 and 8-19 therefore remain pending in this application.

Section 101 Rejections

The pending claims were all rejected under 35 U.S.C. § 101 as allegedly directed to abstract ideas, citing to the Office's Preliminary Examination Instructions in view of the Supreme Court Decision in *Alice Corporation Pty. Ltd. v. CLS Bank International, et al*. Office Action at 3-4. Significantly, the Office Action fails to provide any analysis for why the claims are directed to an abstract idea and, instead, summarily concludes that they are invalid.

This treatment of the Section 101 issue is facially insufficient. The lack of reasoning in the Office Action on the abstract idea determination runs contrary to the Administrative Procedure Act, which requires that the Patent Office, as a government agency, make specific findings of fact and provide an explanation of the rationale for its decision. *See In re Lee*, 277 F.3d 1338, 1342 (Fed. Cir. 2002) ("Judicial review of a Board decision denying an application for patent is thus founded on the obligation of the agency to make the necessary findings and to provide an administrative record *showing the evidence on which the findings are based, accompanied by the agency's reasoning in reaching its conclusions*.") (emphasis added). It is not enough to simply declare that the present claims are directed to an abstract idea. The Office's current Section 101 rejections thus cannot be sustained on the current record.

Although it does not purport to "delimit the precise contours of the 'abstract ideas' category," *Alice* does offer a rationale for its determination that the claims in that case were directed to an abstract idea. *Alice* explains that the "concern that drives this exclusionary principle [prohibiting the patenting of certain abstract ideas] [i]s one of pre-emption." *Alice Corporation Pty. Ltd. v. CLS Bank International, et al*., 573 U.S. __, slip op. at 5 (2014). At first blush, a prohibition on preemptive patent claims would seem to be all-encompassing, since *every* patent claim covers (and thus preempts) *some* range of subject matter. Indeed, the essence of the patent right is the ability to exclude others from practicing claimed subject matter. *See Crown Die & Tool Co. v. Nye Tool & Machine Works*, 261 U.S. 24, 35 (1923) ("[I]n its essence all that the Government conferred by the patent was the right to exclude others from making, using or

Page 8 of 11

vending his invention."). Accordingly, there must be some limiting principle on the Court's preemption doctrine. *Cf. Alice*, 573 U.S. __, slip op. at 6. (acknowledging the need to "tread carefully in construing this exclusionary principle lest it swallow all of patent law").

Regarding the issue of preemption, *Alice* explains that Section 101 serves the purpose of preventing a patent from undesirably tying up the future use of "'building blocks' of human ingenuity." *Alice*, 573 U.S. ___, slip op. at 6. The analysis of whether the specific claims at issue in *Alice* are such "building blocks" is addressed in Section III-A of the opinion. After noting that the claims were "drawn to the concept of intermediated settlement," the Court relied on two statements to support its finding that these claims were directed to an abstract idea "beyond the scope of §101":

> Like the risk hedging in *Bilski*, the concept of intermediated settlement is "'a fundamental economic practice long prevalent in our system of commerce.'" *Ibid.*; see, *e.g.*, Emery, Speculation on the Stock and Produce Exchanges of the United States, in 7 Studies in History, Economics and Public Law 283, 346–356 (1896) (discussing the use of a "clearing-house" as an intermediary to reduce settlement risk). The use of a third-party intermediary (or "clearing house") is also a building block of the modern economy. See, *e.g.*, Yadav, The Problematic Case of Clearinghouses in Complex Markets, 101 Geo. L. J. 387, 406–412 (2013); J. Hull, Risk Management and Financial Institutions 103–104 (3d ed. 2012). Thus, intermediated settlement, like hedging, is an "abstract idea" beyond the scope of §101.

*Alice*, 573 U.S. at ___, slip op. at 9. From the assertions that the claims recited a "fundamental economic practice long prevalent in our system of commerce" and a "building block of the modern economy," the Court concluded that they were directed to an abstract idea.

The determination in *Alice* that the claims were directed to an abstract idea was thus based on a comparison to specifically cited prior art.[1] The same rationale was used in *Bilski*. *Alice*, 573 U.S. at ___, slip op. at 9. The holding in *Alice* is thus a narrow one. *See Eclipse IP LLC v. McKinley Equipment Corp.*, C.D. Cal. case 2:14-cv-00154-GW, Ruling on Motion to Dismiss for Lack of Patentable Subject Matter (35 U.S.C. § 101), at 5 (September 4, 2014). *Alice* therefore stands for the proposition that computerizing a well-known, basic economic practice is insufficient to impart patent eligibility. The case also held there was nothing else in

---

[1] Note that the Court did not characterize the claim as an abstract idea because it was an "economic practice," but rather because it was a "*fundamental* economic practice."

the claims sufficient to transform the abstract idea into a patent-eligible invention. *Alice*, 573 U.S. __, slip op. at 10-17.

In the present rejection, there is no evidence supporting the Section 101 determination, much less evidence that the claimed method is a "building block of human ingenuity" or a "fundamental economic practice." Applicant's claims are of modest scope, and thus do not threaten to create problems relating to preemption. Applicant is also not attempting to patent the computerization of some known method. On the contrary, the Office has withdrawn all rejections save the Section 101 rejections, thus conceding that there is no prior-art based reason for finding the claims unpatentable.

Given the lack of reasoning supporting the abstract idea determination in the present rejections, and the lack of evidence such as that cited in *Alice* and *Bilski*, Applicant respectfully requests withdrawal of the Section 101 rejections of all claims.

**CONCLUSION:**

Applicant respectfully submits the application is in condition for allowance, and an early notice to that effect is requested.

It should also be noted that although arguments have been presented with respect to certain claims herein, the recited subject matter as well as various other subject matter and/or combinations of subject matter may be patentable for other reasons. Further, the failure to address any statement by the Examiner herein should not be interpreted as acquiescence or agreement with such statement. Applicant expressly reserves the right to set forth additional and/or alternative reasons for patentability and/or allowance with the present Application or in any other future proceeding, and to rebut any statement presented by the Examiner in this or other papers during prosecution of the present Application.

If any extension of time (under 37 C.F.R. § 1.136) is necessary to prevent the above-referenced application from becoming abandoned, Applicant hereby petitions for such extension.

The Commissioner is authorized to charge any fees that may be required, or credit any overpayment, to Meyertons, Hood, Kivlin, Kowert & Goetzel, P.C. Deposit Account No. 501505/6857-23201/PTS.

Respectfully submitted,

Date: November 11, 2014    By: /Paul T. Seegers/
Paul T. Seegers
Reg. No. 66,621

Meyertons, Hood, Kivlin, Kowert & Goetzel, P.C.
P. O. Box 398
Austin, Texas 78767
(512) 853-8878