# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISON

| | | |
|---|---|---|
| ZOHO CORPORATION, | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | Case No. 1:22-cv-00037-LY |
| | § | |
| LIBERTY PEAK VENTURES, LLC, | § | JURY DEMANDED |
| | § | |
| *Defendants.* | § | |

| | |
|---|---|
| LIBERTY PEAK VENTURES, LLC, | § |
| | § |
| *Counterclaimant,* | § |
| | § |
| | § |
| v. | § |
| | § |
| ZOHO CORPORATION | § |
| | § |
| *Counter-Defendant,* | § |
| | § |
| and | § |
| | § |
| ZOHO CORPORATION PVT. LTD | § |
| | § |
| *Third-Party Defendant.* | § |

---

## LIBERTY PEAK VENTURES, LLC'S
## RESPONSIVE CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................ 1

II.  ARGUMENT ................................................................................................... 2

A.  Zoho Mischaracterizes the Prosecution History of the Asserted Patents ........................... 2

   1.  The Claims of the Original Application Were Drafted to Focus on Both the Card Issuer Side of the System As Well As the Browser Side ................................................ 3

   2.  Zoho Mischaracterizes the Prosecution History Regarding the Term Electronic Wallet "(E-Wallet)" ................................................................................... 4

B.  Zoho Bears A High Burden For Each of Its Proposed Constructions And Indefiniteness Positions ................................................................................................. 6

C.  The Claim Term "account information" ('122 Patent Claims 1, 3, 6, 15; '901 Patent Claims 1, 4, 8-9, 11, 14, 16, 18-19; and '088 Patent Claims 1, 5, 15, 20) .......................... 7

D.  The Claim Terms "encryption key" ('122 Patent Claims 1, 7, 15) and "cryptographic key" ('901 Patent Claims 1, 4, 11, 14; '088 Patent Claims 1, 15) ...................................... 12

E.  The Claim Terms "securely storing the account information at the browser toolbar" ('122 Patent Claim 1) "securely storing, by the browser toolbar, the account information at the browser toolbar" ('901 Patent Claims 1, 11; '088 Patent Claim 1) ............................... 14

   1.  The Term "at the browser toolbar" Is Not Indefinite .......................................... 15

   2.  The "securely storing . . ." Terms Are Not Indefinite ......................................... 18

   3.  Zoho's Construction For the "securely storing . . ." Terms Imports an Improper Negative Limitation ................................................................................... 19

F.  The Remaining Five Claims Terms: "generating, via the browser toolbar" '122 Claim 7; "generating, at a browser toolbar" '109 Claims 1, 11, '088 Claim 1; "determining, at a browser toolbar" '122 Claim 15, '088 Claim 15; "decrypting, at the browser toolbar" '122 Claim 15; and "providing, via the browser toolbar, the stored account information to the web service" '122 Claim 6 Are Not Indefinite ............................................................... 20

III.  CONCLUSION ................................................................................................ 22

## TABLE OF AUTHORITIES

**Cases**

*Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 967 (Fed. Cir. 2022) .......................................... 9, 12, 14

*Broadcom Corp. v. Int'l Trade Comm'n,* 542 F.3d 894, 906–07 (Fed. Cir. 2008) ....................... 15

*Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1254 (Fed. Cir. 2004) ............................... 14, 17

*Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009) .................................... 7

*Elekta Instrument S.A. v. O.U.R. Sci. Int'l, Inc*., 214 F.3d 1302, 1307 (Fed. Cir. 2000) ............. 15

*Ethicon LLC.*, 847 Fed. App'x. 901, 907, 2021 WL 960766 (Fed. Cir. Mar. 15, 2021) ............. 21

*Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*, 423 F.3d 1343, 1351 (Fed. Cir. 2005) ................ 23

*GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) .................. 6

*Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) ..................... 6, 13

*Grace Instrument Indus., LLC v. Chandler Instruments Co.*, LLC, 57 F.4th 1001, 1008 (Fed. Cir. 2023) ...................................................................................................................... 7

*Liebel–Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) ............................... 23

*Merck & Co. v. Teva Pharms. USA, Inc.,* 395 F.3d 1364, 1372 (Fed. Cir. 2005) ....................... 15

*Multiform Dessicants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998) ............. 23, 24

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014) ........................................... 7

*Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1347-50 (Fed. Cir. 2022) ....... 20

*Novartis Pharm. Corp. v. Accord Healthcare, Inc.*, 38 F.4th 1013, 1023 (Fed. Cir. 2022) ......... 17

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) ................................................... 23

*Pisony v. Commando Constr., Inc.*, No. W-17-CV-00055-ADA, 2019 WL 928406, at *5 (W.D. Tex. Jan. 23, 2019) ........................................................................................................... 8

*Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1137 (Fed. Cir. 2016) ................................. 10

*Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998) ............... 6

*Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1534 (Fed. Cir. 1987) .................... 14, 17

*Superguide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004) ........ 8, 12, 13

*Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1063-64 (Fed. Cir. 2016) ...................................... 11

Defendant/Counterclaimant Liberty Peak Ventures, LLC ("LPV" or "Liberty Peak") files this Responsive Claim Construction brief and declaration of Dr. Jose Melendez ("Ex. A" or "Melendez Decl.") in support of the proper construction of the disputed terms of U.S. Patent Nos. 9,373,122 (the "'122 Patent") (Claims 1-3, 5-7, 15-17, and 20), 10,074,088 (the "'088 Patent") (Claims 1, 5, 6, 15, 19, and 20), and 10,956,901 (the "'901 Patent") (Claims 1, 4, 8, 9, 11, 14, and 16-19) (collectively the "Asserted Patents") asserted against Zoho Corporation and Zoho Corporation Pvt. Ltd.'s (collectively, "Zoho").

## I.    **INTRODUCTION**

As the Court is aware, Claim Construction should be firmly grounded in intrinsic evidence and considered in light of a patent's written description as a whole. Contrary to this foundational principle, Zoho supports its proposed constructions by selectively citing the intrinsic record while omitting the most relevant evidence and consistently committing the so-called "cardinal sin of claim construction"—importing limitations from the specification into the claims. Furthermore, Zoho wrongfully asks the court to narrow the meaning of claim terms based on prosecution history without meeting its high burden of showing a "clear and unmistakable intent" by the patentees to disclaim subject matter that is otherwise clearly within the scope of the claim language. Zoho's arguments to significantly narrow the scope and plain meaning of the asserted claims should be rejected.

Zoho also fails to meet its burden to show, by clear and convincing evidence, that the asserted claims are indefinite. In particular, contrary to Zoho's invalidity positions, the words "at," "via," "by," and "in" a "browser toolbar" are readily understandable by practitioners of ordinary skill, and indeed, laymen alike.  Likewise, Zoho's argument that one of ordinary skill in the art would be confounded by the phrase "securely storing" is spurious on its face.  These terms are

manifestly definite and do not render any claims invalid. The Court should adopt LPV's proposed constructions and uphold the presumed validity of the asserted claims.

## II.   ARGUMENT

### A. Zoho Mischaracterizes the Prosecution History of the Asserted Patents

The '122 Patent claims priority to Provisional Application No. 61/138,711, filed on December 18, 2008. The '088 Patent claims priority as a continuation of the '122 Patent, and the '901 Patent claims priority as a continuation of the '088 Patent. Thus, the Asserted Patents are each entitled to a priority date no later than December 18, 2008. As continuations of the parent '122 Patent, the Asserted Patents have largely identical specifications. For convenience, unless otherwise specified, this Responsive Brief will refer to the specification of the parent '122 Patent.

Zoho's overview of the prosecution history improperly omits material facts of the prosecution history and makes false inferences regarding the intent and effect of certain statements appearing throughout. Zoho incorrectly implies that claims of the original '122 Patent application were drafted solely from the perspective of a credit card issuer's system ("card issuer side"), rather than that of a individuals' browser application ("browser side"). *See* Zoho's Opening Claim Construction Brief, Dkt. No. 30 (hereinafter, "Zoho Br.").

Zoho also focuses on prosecution where applicants of the '122 Patent amended the claims of the '122 Patent to include the term "e-wallet" in response to the examiner's prior art rejections, and then later removed the term in response to another rejection. *Id*. at 7. This curated selection of prosecution history implies that the word "e-wallet" was crucial in curing the prior rejection and baselessly presupposes that the examiner simply ignored the later removal of this allegedly critical term upon final allowance of the claims. Zoho's interpretation of the prosecution history is incomplete and misleading.

1.  **The Claims of the Original Application Were Drafted to Focus on Both the Card Issuer Side of the System As Well As the Browser Side**

Zoho incorrectly asserts that claims of the original application were drafted with a primary focus on the card issuer side of the system, rather than from the browser side. Zoho Br. at 6.  In support of this conclusion, Zoho offers only claim 1 as originally drafted, and disregards all other draft claims of the '122 Patent.  *Id.*  But when reviewing all of the claims as originally drafted, it is apparent that the focus of the claims was both on the side of the card issuer and individuals' browser side of the system. *See* Ex. B (Originally filed U.S. Application No. 12/512,873, filed July 30, 2009) at 17-22.

For example, original Claim 2 of the '122 Patent was firmly focused on the application running on an individuals' browser. Claim 2, as originally drafted, recited, for example, "…. analyzing, ***by the browser toolbar***, web services initiated ***on a computer system executing the browser toolbar*** . . ." *Id.* at 17 (Claim 2) (emphasis added).  As another example, original Claim 7 was directed to the method of Claim 1 wherein the "encrypted personal identifiable information is ***decrypted by the browser toolbar***" and stored in an e-wallet.  *Id.* at 18 (Claim 7) (emphasis added). Additionally, original claim 8 is directed to ***"[a] system for securely integrating personal identifiable information with a browser toolbar unit*** …." *Id.* at 18-19 (Claim 8) (emphasis added). All of these subsequent claims are directed toward an individual user's system and not the "card issuer's system".

Accordingly, despite Zoho's incorrect assertion, the original claims of the '122 patent were focused on more than only the "card issuer side" of the application; rather, the original claims were drafted focusing on all sides including the browser, the card issuer, as well as the system as a whole.

## 2. Zoho Mischaracterizes the Prosecution History Regarding the Term Electronic Wallet "(E-Wallet)"

As Zoho states, following the examiner's rejections of the applicant's original claims over prior art references Reno and Weber, the applicants amended the claims to include "the <u>encrypted personal identifiable information is decrypted by the browser toolbar</u> **and** <u>saved to a secure electronic wallet (e-wallet)</u>."  Ex. F, March 21, 2011, Response to Office Action at 2 (Amended Claim 1) (emphasis added). Based on this history, Zoho ignores the requirement that the "<u>information is decrypted by the browser toolbar</u>" and implies that the term "e-wallet" was the sole key to overcoming the examiner's rejection. Zoho Br. at 7-8 (focusing on amendments adding and removing the term e-wallet).  Zoho then emphasizes that the term "e-wallet" was removed as part of amendments in response to a later Section 101 rejection.  Zoho Br. at 7-8.  This emphasis appears to suggest that the concept of e-wallet was critical to overcome the prior art and then it was removed entirely from the claims. Not so.

First, Zoho neglects to mention that the applicant repeatedly described the concept of secure storage including storage at an e-wallet is a component of the claimed "browser toolbar." Ex. D, November 16, 2010, Response to Office Action at 9; Ex. F, March 21, 2011, Response to Office Action at 9 (Applicant Remarks) ("The pending application solves this problem by generating an encryption key by ***the e-wallet (i.e. the browser toolbar)*** . . ."); *see also* '122 Patent at 4:11-16 ("In one embodiment, a browser toolbar 102 includes a secure e-wallet 104 to securely access and store PII data.").  Ultimately, the examiner allowed the amended claims over the prior art objections explicitly adopting the applicant's reasoning by stating, among other things, that "what has been lacking is an e-wallet that is secure from attack after account data is downloaded, but before a user is given access to the data.  The pending application solves this problem by

generating an encryption key by the ***e-wallet (i.e., the browser toolbar)*** . . . ."  Ex. G, April 30, 2014, Notice of Allowance at 8

After these claims were then rejected under Section 101 and amended a second time excluding use of the term "e-wallet" in favor of the broader term "browser toolbar", the examiner, (a) conducted a new and thorough prior-art search, (b) once again acknowledged the amended claims' patentability over Reno and Weber, and (c) once again describes a browser toolbar as including the concept of an e-wallet.  Ex. I, February 8, 2016, Notice of Allowance at 7-9 ("The Examiner has carefully reviewed the Applicants arguments and assertions filed on **03/21/2011** and **01/15/2016**. Based upon the Applicants arguments and assertions the Examiner is persuaded by and agrees with the Applicant.").  Thus, contrary to the limited history described by Zoho, the concept of storage at an "e-wallet" by the toolbar was never removed from the claims.

Second, the concept of "e-wallet" was not the only reason that the claims were allowed over the prior art.  As noted above, the examiner explained, among other things, that the "Reno reference fail[s] to disclose or contemplate, at least, that ***the encrypted personal identifiable information is decrypted by the browser toolbar…*** ." *Id.* at 8. Furthermore, in the prosecution of the '088 Patent, the examiner confirmed this shortcoming of the same prior art references stating that "Reno does not teach or suggest generating, at a browser toolbar, a cryptographic key" and that "Reno does not teach or suggest decrypting encrypted data received . . .". Ex. K, May 3, 2018, '088 Patent Notice of Allowance at 3; *see also* Ex. J, July 26, 2017, '088 Patent Office Action Response at 9-10.

Accordingly, the concept embodied by the term "e-wallet" was never disavowed from the claims, and was never a sole basis for allowing the claims over prior art.

**B.      Zoho Bears A High Burden For Each of Its Proposed Constructions And Indefiniteness Positions**

For each disputed claim term where Zoho proposes a construction, Zoho does not argue that its proposed construction is the ordinary one.  Rather, each of Zoho's arguments are intended to narrow the plain language of each term based upon alleged disavowals and exemplary embodiments in the specification.  In each instance, Zoho bears a high burden to prove that the plain meaning of claim terms should be narrowed.

There are "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution." *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (citation omitted). The standards for finding lexicography or disavowal are "exacting." *GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014). To act as his own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *Id.* The patentee's lexicography must appear "with reasonable clarity, deliberateness, and precision." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998). To disavow or disclaim the scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender. *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009).

A claim term is indefinite only if, when read in light of the specification and prosecution history, it "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). The Supreme Court acknowledges that the "inherent limitations of language" make some "modicum of

uncertainty [the] price of ensuring the appropriate incentives for innovation." *Id.* at 909. Moreover, any fact critical to a holding on indefiniteness must be proven by the challenger by clear and convincing evidence. *Grace Instrument Indus., LLC v. Chandler Instruments Co.*, LLC, 57 F.4th 1001, 1008 (Fed. Cir. 2023).

C. **The Claim Term "account information" ('122 Patent Claims 1, 3, 6, 15; '901 Patent Claims 1, 4, 8-9, 11, 14, 16, 18-19; and '088 Patent Claims 1, 5, 15, 20)**

| LPV Construction | Zoho Construction |
|---|---|
| Plain and ordinary meaning – no need for construction. | "Information from an account (e.g. an account number) wherein the account is associated with an open account or closed account system.<br><br>An open account system is one that enables transactions with different merchants. Credit cards such as Visa and American Express are examples of open accounts. Closed accounts, by contrast, may be restricted to use with a particular store/merchant, a particular chain of stores/merchants or a collection of affiliated stores/merchants." |

Zoho asks the Court to replace the simple two-word term "account information" with a more than 70-word definition. Zoho's proposed construction is convoluted and unsupported by the intrinsic evidence. The term "account information" should be afforded its plain, ordinary, and readily understood meaning.

The Court construes claim terms in accordance with their plain and ordinary meaning when proposed constructions do no more than inject unwarranted complexity to readily understandable phrases. *See Pisony v. Commando Constr., Inc.*, No. W-17-CV-00055-ADA, 2019 WL 928406, at *5 (W.D. Tex. Jan. 23, 2019) ("[T]he Court is simply rejecting Defendants' proposed construction (which substitutes twenty-nine words in an effort to better explain a claim term that is eleven words) rather than refusing to decide between two competing proposed constructions.").

"[I]t is important not to import into claim limitations that are not a part of the claim." *Superguide*

*Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004).

Zoho argues that the phrase "account information" in each claim should be limited to

particular types of accounts relating to "stores" and "merchants", and furthermore, offers

gratuitous examples relating to "account numbers" and credit card issuers.  This proposed

construction is unsupported both factually and legally.

Initially, Zoho concedes that "account" and "information" are readily understandable and

do not need further construction because it uses both of those terms in its own construction.  To

support its argument for narrowing the plain meaning of these two words, Zoho both selectively

quotes, and misquotes, the specification. For instance, Zoho cites only part of the patentee's

description of "account" as "[a]n 'account' as used herein refers to an account associated with an

open account or a closed account system."  Zoho Br. at 11. But this omits the full description,

which further states that:

> An "account" as used herein refers to an account associated with an open account
> or a closed account system. The account <u>may exist in a physical or non-physical</u>
> <u>embodiment</u>. For example, an account may be distributed in non-physical
> embodiments such as an <u>account number</u>, <u>frequent-flyer account</u>, <u>telephone calling</u>
> <u>account</u> or the like. Furthermore, a physical embodiment of a transaction account
> may be distributed as a financial instrument.

'122 Patent at 3:48-55 (emphasis added).  Accordingly, this description encompasses at least

frequent-flyer accounts and telephone calling accounts that "may exist in a physical or non-

physical embodiment."  *Id.*  These examples are all contrary to the various limiting examples Zoho

offers relating to "account numbers", "merchants" and "credit cards", among others.  Clearly the

inventor did not intend to limit "accounts" to merely financial accounts, credit card accounts, or

any particular examples.

Additionally, this section of the specification is not a lexicographical definition of an "account" because it was meant to ***prevent*** a narrowing interpretation of the term, rather than to articulate any definition beyond its plain and ordinary meaning.  "To act as its own lexicographer, a patentee must clearly set forth a definition of the disputed claim term **other than its plain and ordinary meaning** and must clearly express an intent to redefine the term." *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 967 (Fed. Cir. 2022) (emphasis added) (citations and quotations omitted).

Here, the explanation of the word "account" is not limiting, but rather, meant to demonstrate the breadth of different "accounts" that are encompassed by the phrase.  By describing an "account" as one "associated with **an open account or a closed account system**" and one that that "may exist in a physical or non-physical embodiment," it is apparent that the patentee is attempting to show the broadness of the term "account" as is consistent with its plain and ordinary meaning. In other words, the patentee is guarding against a later interpretation of "account" that may restrict it to particular types of accounts or embodiments, as Zoho proposes here.

Moreover, the disputed phrase is not "account", but "account information."  Zoho proposes that the "information" encompassed by this phrase is "from" an account.  This proposal, among other things, is meant to exclude information that is arguably "about" an account such as an account number.  Yet the specification identifies "account number" as an example of "personal identifiable information", which is itself a subset of "account information."  *See* '122 Patent at 4:1-6.  Thus, the patentee draws no distinction between information that is "from" or "about" an account so long as a "customer . . . wishes to keep [it] confidential."  *Id.* at 4:2-3; 5:14 & Fig. 1 (describing an "account information datastore"); 5:46-52 (describing the retrieval of encrypted data, including PII, from the "account information datastore").

Zoho relies on *Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1137 (Fed. Cir. 2016) for the proposition that claim construction's "cardinal rule" against importing limitations from the specification may be broken when every demonstrative embodiment in the specification has a common configuration. This argument fails for the foundational reason that the *Poly-Am* court relied on statements of "clear and unmistakable disavowal" of claim scope to adopt a narrowing construction of a disputed term. *Id*. Demonstrative embodiments in the specification were found to be supporting evidence of the disavowal. *Id.* at 1136-37.

With respect to the claim term "account information", not only is there no disavowal of claim scope, but the patentee specifically reinforced the full breadth of the term. Even if Zoho's selective citations to the specification constituted some evidence of the patentee's intention to disclaim subject matter, a prosecution disclaimer does not apply "where the alleged disavowal is ambiguous". *See Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1063-64 (Fed. Cir. 2016) (citing *Elbex Video, Ltd. V. Sensormatic Elecs. Corp.*, 508 F.3d 1366, 1371 (Fed. Cir. 2007)). Having cited no evidence of a disavowal of claim scope Zoho has not met its "burden of proving the existence of a 'clear and unmistakable' disclaimer" such to narrow the meaning of an otherwise clear and understandable claim term.

Moreover, the term "account information" is used in the specification much more broadly than Zoho's proposed construction. For example, the specification describes "account information" simply as being inclusive of "generic account data," provided to a customer. *See* '122 Patent at 5:12-16. In one embodiment, the specification explains that a "…toolbar server application … will query customer card and '*account information*' datastore unit … *for 'generic account data'* associated with the customer." *Id.* (emphasis added). Thus, the term "account information" requires no construction because Asserted Patents repeatedly use the term "account

information" to refer to information associated with an account, which is the term's plain and ordinary meaning. And indeed, the plain meaning of "account information" includes open and closed accounts with no limitation as to physical or non-physical embodiments. *See* '122 Patent at 3:48-55.

Even if the Asserted Patents' specification only disclosed embodiments where "account information" was limited to some subset of accounts such as "credit card" accounts (which it is not), it is well established that "a particular embodiment appearing in the written description may not be read into a claim when the claim language is broader than the embodiment." *Superguide*, 358 F.3d at 875**Error! Bookmark not defined.**.  "[E]mbodiments in the specification—**even if there is only one embodiment**—cannot limit the scope of the claims absent the patentee's words or expressions of manifest exclusion or restriction." *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th at 967 (emphasis added) (citations and quotations omitted).  Broad claim terms may not be transformed into narrower ones simply because the specification uses the same examples to describe an invention.

Anyone, including one of ordinary skill in the art, would understand that a wide variety of "information" could be secured by the methods and systems described in the specification.  Zoho's proposed construction dramatically alters the plain meaning of the term "account information," and imposes substantial limitations to the term's otherwise clear scope, *i.e.*, limiting the term to various examples including "account numbers" from "merchant" and "credit card" accounts.  As described above, the specification repeatedly contradicts such narrowing definitions.  Therefore, Zoho's construction of the term "account information" should be rejected and the phrase should be afforded its plain, ordinary, and widely understood meaning.

### D. The Claim Terms "encryption key" ('122 Patent Claims 1, 7, 15) and "cryptographic key" ('901 Patent Claims 1, 4, 11, 14; '088 Patent Claims 1, 15)

| LPV Construction | Zoho Construction |
|---|---|
| Plain and ordinary meaning – no need for construction. | "a private key that corresponds to a public key" |

Although slightly more technical than "account information", the term "encryption key" does not require further definition or explanation to either one skilled in the art or a layman. Melendez Decl., ¶¶ 39-40. Zoho's construction urges the court to limit the term "encryption" to only one type of "encryption"—asymmetric encryption, in other words, encryption with both a private and public key. Again, Zoho does not argue that the natural definition of "encryption key" includes only asymmetric encryption, but rather, that the term should be judicially limited in this case. There is no basis in the intrinsic evidence for artificially limiting the term, and thus, the term should be afforded its plain meaning. *Id.*

As stated above, there are only two exceptions to the general rule that claim terms should be given their plain meaning: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution. *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014). Curiously, Zoho does not allege either lexicography or disavowal. Instead, Zoho again invites the Court to add limitations to claim terms simply because "the only form of encryption described by the inventors is public/private key" *i.e.* "asymmetric-key" encryption. Zoho Br. at 14. This request is directly contrary to Federal Circuit precedent holding that particular embodiments may not be read into claim limitations. *See e.g., Superguide*, 358 F.3d at 875 ("a particular embodiment appearing in the written description may not be read into a claim when the claim language is broader than the embodiment."). "[E]mbodiments in the specification—even if

there is **only one** embodiment—**cannot limit the scope** of the claims absent the patentee's words or expressions of manifest exclusion or restriction." *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th at 967 (emphasis added) (citations and quotations omitted).

Furthermore, Zoho has not shown that one of ordinary skill in the art would require a further definition of the terms "encryption" and "cryptographic" key, nor has Zoho argued that a POSITA would need further explanation of either asymmetric or symmetric encryption in the specification. Indeed, Zoho's expert admits that a person having ordinary skill in the art was well-aware of both symmetric-key and asymmetric-key encryption since at least 1996. *See* Dkt. 30-1, Jakobsson Decl. at ¶ 27; *see also* Melendez Decl., ¶¶ 39-41 (explaining that both encryption types are well-known in the art and nothing in the intrinsic evidence would modify that understanding).

A patentee need not include description of techniques already known to a person having ordinary skill in the art. *See Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1534 (Fed. Cir. 1987) ("A patent need not teach, and preferably omits, what is well known in the art." (citing *Hybritech inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1384 (Fed. Cir. 1986)); *see also Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1254 (Fed. Cir. 2004) ("[A] patent disclosure need not enable information within the knowledge of an ordinarily skilled artisan."). The patentee has no need under the law to include descriptions of methods well understood in the art for the sole purpose of ensuring that a court later defines "encryption key" to mean "encryption key" and not some particular type of encryption key. Thus, the Court should afford this term its plain and ordinary meaning.

Furthermore, as discussed in LPV's Opening Brief, Zoho's proposed construction is incorrect on its face because it (1) violates the doctrine of claim differentiation and (2) requires the encryption key to ***correspond*** to a public key and thus renders other portions of the claims

redundant[1].  In the Asserted Patents, the patentee plainly uses the term "cryptographic key" in a way that consistently demonstrates an intention that the term be recognized to have its ordinary and customary meaning as understood by a person of ordinary skill in the art. *See* Melendez Decl., ¶¶ 20, 43-44 (explaining instances where a POSITA might use symmetric encryption when performing the claimed invention). Furthermore, by requiring the cryptographic key to correspond to a public key, Zoho's construction improperly limits the term to particular embodiments. *See* '122 Patent at 8:5-11. There is nothing within the Asserted Patents that indicate that the "cryptographic key" must be limited only to a "private key corresponding to a public key" as proposed by Zoho.  Zoho's proposed construction should be rejected.

**E. The Claim Terms "securely storing the account information at the browser toolbar" ('122 Patent Claim 1) "securely storing, by the browser toolbar, the account information at the browser toolbar" ('901 Patent Claims 1, 11; '088 Patent Claim 1)**

| "securely storing the account information at the browser toolbar" | |
| --- | --- |
| **LPV Construction** | **Zoho Construction** |
| Plain and ordinary meaning – no need for construction, or in the alternative: "storing the account information in a data storage implementation wherein the stored account information is securely accessible by the browser toolbar" | Indefinite, or in the alternative: "storing the account information in a data storage implementation wherein the stored account information is accessible only by the browser toolbar" |

---

[1] For Claim 9 to have different scope than Claim 8 of the '122 patent, "encryption key" cannot be limited to the specific functionality recited in Claim 9. *See Merck & Co. v. Teva Pharms. USA, Inc.,* 395 F.3d 1364, 1372 (Fed. Cir. 2005) (a claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so); *Elekta Instrument S.A. v. O.U.R. Sci. Int'l, Inc.*, 214 F.3d 1302, 1307 (Fed. Cir. 2000) (construing claim to avoid rendering another claim limitation superfluous); *See also, Broadcom Corp. v. Int'l Trade Comm'n,* 542 F.3d 894, 906–07 (Fed. Cir. 2008).

| "securely storing, by the browser toolbar, the account information at the browser toolbar" | |
|---|---|
| **LPV Construction** | **Zoho Construction** |
| Plain and ordinary meaning – no need for construction, or in the alternative: "storing, by the browser toolbar, the account information in a data storage implementation wherein the stored account information is securely accessible by the browser toolbar" | Indefinite, or in the alternative: "storing, by the browser toolbar, the account information in a data storage implementation wherein the stored account information is accessible only by the browser toolbar" |

For each of these phrases, Zoho proffers separate arguments for the terms "at the browser toolbar" and "securely storing."  LPV addresses each in turn.

**1.  The Term "at the browser toolbar" Is Not Indefinite**

Zoho argues that a person having ordinary skill in the art would not understand the term "storing . . . at the browser toolbar", except in the case of a construction that renders the claims "nonsensical."  Zoho Br. at 19 ("Data is not stored 'at' software and a claim that requires such an action is nonsensical.").  This argument ignores intrinsic evidence found in the claims themselves, the specification, and prosecution history, and wrongfully assumes that a person having ordinary skill in the art is an automaton without common sense.

To support its argument Zoho engages in a series of mental gymnastics including making the extraordinary claim that because the specification does not include the phrase "storing . . . at the browser tool bar," *in hac verba*, that a person having ordinary skill in the art would be confounded by the term's meaning. *See* Zoho Br. at 18 ("[t]here is no guidance in the specification for what it means to store "at" the toolbar, rather than at an e-wallet, which (unlike the toolbar) is for data storage."). Thus, Zoho argues that any claimed "storage" of account information must be in an "e-wallet."

However, just because the specification does not use words that are identical to the claims does not render the term indefinite. *See Novartis Pharm. Corp. v. Accord Healthcare, Inc.*, 38 F.4th 1013, 1023 (Fed. Cir. 2022). Nor is a person having ordinary skill in the art so limited in knowledge. Melendez Decl., ¶¶ 24-27, 35.  As discussed above regarding encryption techniques, "[a] patent need not teach, and preferably omits, what is well known in the art." *Spectra-Physics*, 827 F.2d at 1534 (citing *Hybritech inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1384 (Fed. Cir. 1986)); *see also Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1254 (Fed. Cir. 2004) ("[A] patent disclosure need not enable information within the knowledge of an ordinarily skilled artisan."). Here, Zoho's expert admits that a person having ordinary skill in the art was well-aware of how an application "may store data in various storage implementations". *See* Dkt. 30-1, Jakobsson Decl. at ¶ 51*; see also* Melendez Decl., ¶¶ 24-27.

The main premise to Zoho's indefiniteness argument is also based on a strawman. In order to explain why Zoho's expert would find "storing . . . at the browser tool bar" to be an impossibility, the expert makes an unrealistic assumption that a "browser toolbar" must **only** include executable code and must not include a place to store any data. *See* Dkt. 30-1, Jakobsson Decl. at ¶ 50.  This interpretation is based on its hyper-technical and false interpretation of the Parties' agreed upon construction of "browser toolbar" ("a software program that adds functionality to a browser and includes a graphical user interface component within the browser") and ignores the well-understood function of "software".

Zoho's argument is built upon a false belief that LPV agreed that "software" consists solely of executable code and completely without the ability to store (i.e., receive and manipulate) data. LPV did not agree that a "browser toolbar" is merely executable code in the abstract.  Indeed, the parties' agreed definition assures that it cannot be simply code in the abstract.  The agreed

definition of "browser toolbar" specifically includes "a graphical user interface component," which by definition must receive input from, and interact with, a user. Applying the same blind hyper technicality as Zoho, it is evident that a "browser toolbar" consisting merely of executable code, could not execute (for lack of a processor and memory), much less receive and respond to user input. For those functions, the "toolbar" requires a processor, memory, means for user input, and means for graphical output. *See also* Melendez Decl., ¶¶ 24-26. Only with those features could a "browser toolbar" meet the definition that the parties agreed.

Moreover, ample intrinsic evidence supports the reality that a "browser toolbar" contains a storage mechanism. Indeed, the "e-wallet", to the extent the term is relevant, is *explicitly* described as the storage extension of the toolbar software program. '122 Patent at 4:14 ("[i]n one embodiment, a browser toolbar **102** includes a secure e-wallet **104** to securely access and store PII data"). This, alone, decisively contravenes Zoho's argument. The specification explains that, among other things, "[i]n one embodiment a method and computer readable medium are provided for securely downloading customer data to a browser toolbar." *Id.* at 2:18-23.

Additionally, the claim language itself confirms that a browser toolbar is more than abstract executable code by describing one step as "removing the stored account information from the browser toolbar after completion of the transaction." *Id.* at 10:32-33 (Claim 1). Obviously, the data must be stored "at the browser toolbar" to be removed. A person having ordinary skill in the art would understand that this means that the browser toolbar software includes the ability to store data and then remove that data. Indeed, a POSITA would understand that any software, in order to provide its intended functionality, must do so "while residing within and making use of storage / retrieval memory such as RAM for both its instructions as well as at least the data it receives, stores, acts upon, and provides." Melendez Decl., ¶ 27.

Furthermore, the specification shows the ordinary use of the "by" similar to "via" and "at" terms within that context.  For example, the specification states that the "toolbar server application 112 determines all the cards associated with the customer that are eligible for use with the web service that initiated the PII data request *at the customer's system*." *Id.* at 5:19-23. This shows the plain usage of the "securely storing  . . ." terms relate to account information being securely stored "at" the browser toolbar, and in some instances, "by" or "via" the browser toolbar. The claim scope for the terms is reasonably certain and readily ascertainable. Melendez Decl., ¶¶ 30-33, 35-36. This provides further reasons why the Court should find the claim terms should receive their plain and ordinary meaning.

### 2.  The "securely storing . . ." Terms Are Not Indefinite

Zoho also argues that the words "securely storing" in the disputed claim terms is an indefinite term of degree. Zoho Br. at 22.  Not so. The term is nothing like the purely subjective terms of degree that the Federal Circuit has found invalid. *E.g., Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1347-50 (Fed. Cir. 2022) (collecting indefinite terms-of-degree like "aesthetically pleasing" and "unobtrusive manner"). Rather, the term provides boundaries—albeit broad ones.  The "security" that renders data stored "securely" may include a variety of security measures.  Melendez Decl., ¶¶ 31-33.  If there are no security measures taken, then the data is not secure.  There is no reason the term should, or is required for definiteness to, be limited to a particular subset of measures.  For example, a person having ordinary skill in the art would understand the plain and ordinary meaning of "securely storing" in light of the intrinsic evidence includes limiting access to the stored data. *Id.*, ¶ 34.  Again, "a claim is not indefinite just because it is broad." *Niazi Licensing,* 30 F.4th 1339 at 1347**Error! Bookmark not defined.**.

The "securely storing" terms are readily understandable in the context of the intrinsic evidence.  For example, the Parties have agreed that a browser toolbar is "a software program,"

and the specification describes that a "browser toolbar" both resides on a "customer's computer system," that temporally limits access to personal identifiable information. *See, e.g.,* '122 Patent 4:44-63; Ex. G, April 30, 2014, Notice of Allowance at 7-9 ("securing personal identifiable … after a secure download from a server and before use/access by a user."). Furthermore, in one embodiment, the "data stored in secure e-wallet 104 is deleted upon the customer closing the current web browser session upon which the PII data was downloaded." '122 Patent 6:1-6. "Alternatively, the PII data may be deleted during or after the customer initiates a merchant based transaction that requires entry of the PII data." '122 Patent at 2:18-23; 6:1-6. A variety of other measures are known to those skilled in the art. Defining each one is unnecessary because the bounds of implementing "security" measures, as opposed to none, are easily understandable by POSITA and laymen. Melendez Decl., ¶¶ 23-27, 36. The term is not indefinite.

### 3. Zoho's Construction For the "securely storing . . ." Terms Imports an Improper Negative Limitation

As discussed in LPV's Opening Brief, to the extent that the Court finds that these "securely storing" terms are definite (which they are) and need further construction (which they do not), the parties' alternative constructions generally agree that the terms refer to "storing . . . the account information in a data storage implementation wherein the stored account information is securely accessible by the browser toolbar". The disagreement is Zoho's insistence that the terms be further limited such that "stored account information is accessible *only* by the browser toolbar". This imported negative limitation is plainly improper. The Federal Circuit "has expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment. . . This is especially true here, where [the] proposed construction includes a negative limitation." *Ethicon LLC.*, 847 Fed. App'x. 901, 907, 2021 WL 960766 (Fed. Cir. Mar. 15, 2021) (quoting *Liebel-Flarsheim*, 358 F.3d at 906).

Here the intrinsic evidence offers no support for including the negative limitation "only by" the browser toolbar.  Indeed, the claim phrase is directed to "storing" and not "retrieving". Thus, it is curious why Zoho believes that this limitation has any bearing as to what implementations may or may not retrieve securely stored data. Nevertheless, the specification for the Asserted Patents does not support Zoho's construction. There is not a single instance in the specification, or otherwise, where storing of "account information" is so limited to mean that "account information is *accessible only* by the browser toolbar."  The Court should not adopt a construction that replaces a readily understandable term with an unsupported construction, and moreover, imports a negative limitation into the claim. Melendez Decl., ¶¶ 35-36.

**F.  The Remaining Five Claims Terms: "generating, via the browser toolbar" '122 Claim 7; "generating, at a browser toolbar" '109 Claims 1, 11, '088 Claim 1; "determining, at a browser toolbar" '122 Claim 15, '088 Claim 15; "decrypting, at the browser toolbar" '122 Claim 15; and "providing, via the browser toolbar, the stored account information to the web service" '122 Claim 6 Are Not Indefinite**

| "generating, via the browser toolbar"; "generating, at a browser toolbar"; "determining, at a browser toolbar"; "decrypting, at the browser toolbar"; and "providing, via the browser toolbar, the stored account information to the web service" | |
| --- | --- |
| **LPV Construction** | **Zoho Construction** |
| Plain and ordinary meaning – no need for construction | Indefinite |

Zoho argues that five claim terms are indefinite essentially because, as Zoho claims, a person of ordinary skill in the art would be confused by the use of the words "at" and "via".  Zoho's argument here is identical to its arguments for the word "at" in the term "securely storing the account information at the browser toolbar." Zoho also asserts (without support or argument) that use of the word "via" in the terms renders the terms indefinite because the term "via the browser

toolbar" is as difficult for a person having ordinary skill in the art to determine as the phrase "at a browser toolbar."  For the same reasons as above, these terms are also not indefinite.

Zoho's argument relies on a strained theory of claim differentiation where Zoho admits that the meaning of the phrase "decrypting **by** the browser toolbar" is "straightforward," but the term "decrypting, **at** the browser toolbar" used in a different claim is "ambiguous" because it allegedly "has a presumptively different meaning."  Zoho Br. At 25.  Zoho confuses the law regarding claim differentiation. "The difference in meaning and scope between claims is presumed to be significant '[t]o the extent that the absence of such difference in meaning and scope would make a claim superfluous.'" *Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*, 423 F.3d 1343, 1351 (Fed. Cir. 2005) (citation omitted); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005); *see also Liebel–Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) (holding that the doctrine is strongest "where the limitation sought to be 'read into' an independent claim already appears in a dependent claim."). But that is not the case here. Zoho does not identify any superfluous limitations or claims, either dependent or independent.  In fact, each claim term is obviously different in that they are directed to "generating", "determining", "decrypting", and "providing".  Each serves a different function.  Melendez Decl., ¶¶ 36-39.

Zoho in effect argues that all words used in a claim must mean substantially different things in order to differentiate claim language.  This argument is contrary to law.  *Multiform Dessicants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998) ("[C]laims that are written in different words may ultimately cover substantially the same subject matter.") (citing *Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987)); Melendez Decl., ¶¶ 37-39.

Zoho also treats the doctrine of claim differentiation as an absolute rather than a presumption.  It is not. "[T]he doctrine of claim differentiation can not [sic] broaden claims beyond

their correct scope, determined in light of the specification and the prosecution history and any relevant extrinsic evidence...." *Multiform Dessicants*, 133 F.3d at 1480. If the specification provides only one plausible interpretation, a person having ordinary skill in the art would not have difficulty deciding between an interpretation that is supported in the specification and one that would allegedly render the claim "nonsensical."  A person of ordinary skill in the art would readily understand that the "generating", "decrypting", "providing" etc., are performed "at" and "via" the "browser toolbar" as opposed to other applications or parts of a user's system.  Melendez Decl., ¶ 38.  These terms are readily understandable, clear in scope, and not indefinite.

## III.   <u>CONCLUSION</u>

Zoho offers unsupported constructions that unjustifiably narrow the plain meaning of well understood terms and import limitations from the specification in violation of accepted principles of claim constructions.   Moreover, Zoho's invalidity arguments are baselessly built on false premises, senseless hypertechnicality and a misunderstanding of the law of indefiniteness. Accordingly, for all the reasons stated above, LPV requests the Court to adopt its proposed constructions for the claim terms at issue and dismiss Zoho's invalidity arguments.

Dated: February 7, 2023                    Respectfully submitted,


                                           **PLATT CHEEMA RICHMOND PLLC**

                                           */s/ Matthew C. Acosta*
                                           Matthew C. Acosta
                                           Texas Bar No. 24062577
                                           macosta@pcrfirm.com
                                           Andrew Lin
                                           Texas Bar. No. 24092702
                                           alin@pcrfirm.com
                                           Nicholas C. Kliewer
                                           Texas Bar No. 24083315
                                           nkliewer@pcrfirm.com
                                           **PLATT CHEEMA RICHMOND PLLC**
                                           1201 N. Riverfront Blvd., Suite 150
                                           Dallas, Texas 75207
                                           214.559.2700 Main
                                           214.559.4390 Fax

                                           **COUNSEL FOR DEFENDANT AND
                                           COUNTERCLAIMANT
                                           LIBERTY PEAK VENTURES, LLC**


## CERTIFICATE OF SERVICE

The undersigned counsel for Defendant does hereby certify that on February 7, 2023, this pleading was served on counsel of record via the Court's electronic filing system.

                                           */s/ Matthew C. Acosta*
                                           Matthew C. Acosta