

EXHIBIT D

FILED VIA EFS WEB

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

**PATENT**

| | | | |
|---|---|---|---|
| Applicants: | Bennau, Blayn W. | Docket No.: | 12655.1600 |
| Serial No.: | 12/512,873 | Examiner: | Reagan, James W. |
| Filed: | July 30, 2009 | Group Art Unit: | 3621 |
| Title: | METHODS, APPARATUS, AND COMPUTER PROGRAM PRODUCTS FOR SECURELY ACCESSING ACCOUNT DATA | Confirmation No.: | 6515 |

## AMENDMENT AND REPLY

Mail Stop AMENDMENT
Commissioner of Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Commissioner:

In reply to the Office Action dated September 24, 2010, of which this Reply is filed within three months, please amend the above-identified application as follows:

**Amendments to the Claims** begin on page 2 of this paper.

**Remarks/Arguments** begin on page 8 of this paper.

Serial No. 12/512,873
Docket No. 12655.1600

**Amendments to Claims:**

This listing of claims will replace all prior versions, and listings, of claims in the application:

**Listing of Claims:**

1. (Currently amended) A method ~~for securely downloading customer data to a browser toolbar~~ comprising:

    receiving, <u>by a computer-based system for securely downloading customer data to a browser toolbar and</u> via the browser toolbar, a request for customer data from a customer;

    <u>determining, by the computer-based system, that</u> the request for customer data includes a request for personal identifiable information requiring encryption by a public encryption key generated by the browser toolbar;

    <u>authenticating, by the computer-based system,</u> the customer based on ~~a set of~~ a user credential and an account specific access credential, wherein:

    the user credential and the account specific access credential are distinct, and

    the account specific access credential is associated with an account of the customer;

    <u>encrypting, by the computer-based system,</u> the requested personal identifiable information using the public encryption key generated by the browser toolbar; and

    <u>transmitting, by the computer-based system,</u> the encrypted personal identifiable information to the browser toolbar.

2. (Original) The method of claim 1, further comprising:

    analyzing, by the browser toolbar, web services initiated on a computer system executing the browser toolbar;

    detecting, based at least in part on the analyzing, when the request for customer data includes the request for personal identifiable information; and

    creating a public/private key pair combination in response to the detecting.

3. (Original) The method of claim 1, wherein the account specific access credential includes a card security code associated with the customer.

Serial No. 12/512,873
Docket No. 12655.1600

4. (Currently amended) The method of claim 1, further comprising:

determining, by the computer-based system, that the account of the customer is eligible for use with a web service initiating the request for customer data;

retrieving, by the computer-based system, generic account data associated with the account of the customer, wherein the generic account data includes information for the customer to decipher the account from another; and

transmitting, by the computer-based system, the generic account data to a computer system executing the browser toolbar.

5. (Currently amended) The method of claim 4, wherein the generic account data includes a portion of an account number associated with the account of the customer.

6. (Currently amended) The method of claim 4, further comprising:

receiving, via a user interface, a selection request indicating the customer requests access to personal identifiable information associated with the account of the customer; and

determining whether the customer has access to the personal identifiable information associated with the account of the customer based at least in part on the account specific access credential.

7. (Currently amended) The method of claim 1, wherein the encrypted personal identifiable information is decrypted by the browser toolbar and stored in an e-wallet.

8. (Currently amended) ~~A system for securely integrating personal identifiable information with a browser toolbar unit, comprising:~~ A system comprising:

a tangible, non-transitory memory communicating with a processor for securely integrating personal identifiable information with a browser toolbar,

the tangible, non-transitory memory having instructions stored thereon that, in response to execution by the processor, cause the processor to perform operations comprising:

~~a web interface unit configured to receive~~, receiving, by the processor, via the browser toolbar, a request for customer data from a customer;

3

Serial No. 12/512,873
Docket No. 12655.1600

~~a toolbar server application configured to:~~

~~determine~~ determining, by the processor, that the request for customer data includes a request for personal identifiable information requiring encryption [[by]] with a public encryption key generated by the browser toolbar;

~~authenticate~~ authenticating, by the processor, the customer based on ~~a set of~~ a user credential and an account specific access credential, wherein:

the user credential and the account specific access credential are distinct, and

the account specific access credential is associated with an account of the customer; ~~and~~

~~encrypt~~ encrypting, by the processor, the requested personal identifiable information using the public encryption key generated by the browser toolbar; and

~~a transmission unit configured to transmit~~ transmitting, by the processor, the encrypted personal identifiable information to the browser toolbar.

9.  (Currently amended) The ~~apparatus~~ system of claim 8, wherein the browser toolbar ~~unit~~ is further configured to:

analyze web services initiated on a computer system executing the browser toolbar;

detect when the request for customer data includes the request for personal identifiable information; and

create a public/private key pair combination.

10. (Currently amended) The ~~apparatus~~ system of claim 8, wherein the account specific access credential includes a card security code associated with the customer.

11. (Currently amended) The ~~apparatus~~ system of claim 8, further comprising ~~wherein the toolbar server application is further configured to~~:

~~determine~~ determining, by the processor, that the account of the customer is eligible for use with a web service initiating the request for customer data;

~~retrieve~~ retrieving, by the processor, generic account data associated with the account of the customer, wherein the generic account data includes information for the customer to decipher the account of the customer from another; and

4

Serial No. 12/512,873
Docket No. 12655.1600

~~transmit~~ transmitting, by the processor, via the transmission unit, the generic account data to a computer system executing the browser toolbar.

12. (Currently amended) The ~~apparatus~~ system of claim 11, wherein the generic account data includes a portion of an account number associated with the account of the customer.

13. (Currently amended) The apparatus of claim 11, wherein the toolbar server application is further configured to:

receive, via a user interface, a selection request indicating the customer requests access to personal identifiable information associated with the account of the customer; and

determine whether the customer has access to the personal identifiable information associated with the account of the customer based at least in part on the account specific access credential.

14. (Currently amended) ~~A computer-readable medium having stored thereon sequences of instruction, the sequences of instruction including instruction which when executed by a computer system causes the computer system to perform:~~ An article of manufacture including a non-transitory, tangible computer readable medium having instructions stored thereon that, in response to execution by a computer-based system for securely downloading customer data to a browser toolbar, cause the computer-based system to perform operations comprising:

receiving, by the computer-based system and via the browser toolbar, a request for customer data from a customer;

determining, by the computer-based system, that the request for customer data includes a request for personal identifiable information requiring encryption by a public encryption key generated by the browser toolbar;

authenticating, by the computer-based system, the customer based on ~~a set of~~ a user credential and an account specific access credential, wherein:

the user credential and the account specific access credential are distinct, and

the account specific access credential is associated with an account of the customer;

5

Serial No. 12/512,873
Docket No. 12655.1600

encrypting, by the computer-based system, the requested personal identifiable information using the public encryption key generated by the browser toolbar; and

transmitting, by the computer-based system, the encrypted personal identifiable information to the browser toolbar.

15. (Currently amended) The ~~computer-readable medium~~ article of Claim 14, further comprising ~~including a sequence of instruction which when executed by a computer system causes the computer system to perform~~:

analyzing, by the browser toolbar, web services initiated on a computer system executing the browser toolbar;

detecting, by the browser toolbar, based at least in part on the analyzing, when the request for customer data includes the request for personal identifiable information; and

creating, by the browser toolbar, a public/private key pair combination in response to the detecting.

16. (Currently amended) The ~~computer-readable medium~~ article of Claim 14, wherein the account specific access credential includes a card security code associated with the customer.

17. (Currently amended) The ~~computer-readable medium~~ article of Claim 14, further comprising ~~including a sequence of instruction which when executed by a computer system causes the computer system to perform~~:

determining, by the computer-based system, that the account of the customer is eligible for use with a web service initiating the request for customer data;

retrieving, by the computer-based system, generic account data associated with the account of the customer, wherein the generic account data includes information for the customer to decipher the account of the customer from another; and

transmitting, by the computer-based system, the generic account data to a computer system executing the browser toolbar.

18. (Currently amended) The ~~computer-readable medium~~ article of Claim 17, wherein the generic account data includes a portion of an account number associated with the account of the customer.

6

Serial No. 12/512,873
Docket No. 12655.1600

19. (Currently amended) The ~~computer-readable medium~~ article of Claim 14, further comprising~~including a sequence of instruction which when executed by a computer system causes the computer system to perform~~:

receiving, by the computer-based system, via a user interface, a selection request indicating the customer requests access to personal identifiable information associated with the account of the customer; and

determining, by the computer-based system, whether the customer has access to the personal identifiable information associated with the account of the customer based at least in part on the account specific access credential.

20. (Currently amended) The ~~computer-readable medium~~ article of Claim 14, wherein the encrypted personal identifiable information is decrypted by the browser toolbar and stored in an e-wallet.

7

Serial No. 12/512,873
Docket No. 12655.1600

**Remarks**

Applicants reply to the Office Action dated September 24, 2010, within three months. The Examiner rejects claims 1-20. Support for the amendments may be found in the originally-filed specification, claims, and figures. No new matter has been introduced by these amendments. Applicants assert that the application is in condition for allowance and reconsideration is requested.

**Rejections Under 35 U.S.C. §103(a)**

The Examiner rejects claims 1-6 and 8-19 under 35 U.S.C. §103(a) as being unpatentable over Reno et al., U.S. Published Application No. 2005/0172229 ("Reno") in view of Weber, U.S. Published Application No. 2004/0061720 ("Weber"). The Examiner further rejects claims 7 and 20 under 35 U.S.C. §103(a) in view of Reno further in view of Weber and further in view of Official Notice. Applicants respectfully disagree with the Examiner's rejections; however Applicants amend certain pending claims, without prejudice or disclaimer, to clarify the patentable aspects and to expedite prosecution.

Reno is directed to a browser user-interface security application that is configured to **transmit** sensitive information (e.g., an account number, a user name and password) to a bank system (para. [0034], lines 11-13). The purpose of the Reno system is to safeguard an account holder from entering his account number, user name, and password in a fraudulent or "spoofed" bank website (Figs. 3A and 3B, para. [0003]). Hence, Reno discloses using an encryption technique (i.e., SSL) to encrypt an account holder's sensitive information (i.e., account number, user name, and password) at a client machine. The sensitive information is decrypted at a bank server (para. [0031], para. [0036]), and a user is given access to his bank account.

The Examiner asserts that Reno teaches, *inter alia*, "determining… the request for customer data includes a request **for personal identifiable information** requiring encryption by a public encryption key **generated by the browser toolbar**...[and] encrypting...the requested personal identifiable information using the public encryption key generated by the browser toolbar," as similarly recited by independent claims 1, 8, and 14 (emphasis added). The Examiner contradicts this assertion in the next paragraph, however, where **the Examiner concedes, "RENO does not disclose the limitation of**…*requiring encryption by a public encryption key generated by the browser toolbar*" (emphasis added). On the heels of this concession, the Examiner indicates that it would have been obvious over Reno to encrypt by the

8

Serial No. 12/512,873
Docket No. 12655.1600

browser toolbar, because "'systems and methods are needed that assist users to not provide sensitive information to untrusted entities,'" (citing Reno). However, Reno purports to solve the problem the Examiner quotes (safeguarding sensitive information). Thus, it would **not** have been obvious to modify Reno in view of Reno to include a toolbar that generates an encryption key, because **Reno solves the problem it describes in another way—i.e., using an encryption key that is part of a digital certificate**.

   Here, Applicants believe that it may be helpful to draw a distinction between Reno and the pending claims. Referring to Applicants' specification, Applicants describe at paras. [0006], [0008] and [0009] an "e-wallet" or digital wallet which may facilitate payment for purchases made online. However, Applicants note, prior art e-wallets have the disadvantage that, "[e]ven if account data is ultimately stored in an encrypted form, the account data may be exposed during data entry and prior to encryption by the digital wallet software." Thus, Applicants explain that there are prior art systems which permit users to view some of their financial account information—e.g., some systems permit users to log into their bank accounts to view account information (e.g., Reno). However, what has been lacking is an ability to access "customer account data for transaction processing." In other words, what has been lacking is an e-wallet that is secure from attack during transmission of the e-wallet contents to the e-wallet. The pending application solves this problem by generating an encryption key by the e-wallet (i.e., the browser toolbar), such that when a request is made by the browser toolbar for account information, the account information is encrypted at a transaction account issuer/bank system using the encryption key provided by the e-wallet. In this way, a user's account information may be securely transmitted to his e-wallet. Contrariwise, Reno discloses a system that encrypts a user's login information so that the user may view his account information safe from spoofed or fake login websites.

   *Thus, Reno is deficient in at least three ways: (i) Reno is not directed to a browser toolbar (i.e., an e-wallet) that receives personal identifying information. (ii) The toolbar in Reno does not provide an encryption key to a bank server; rather, Reno encrypts a user's login information using a key provided in a digital certificate and before transmitting the information to a bank server. (iii) Reno does not encrypt "personal identifiable information," because a username and password are not information with which a person may be uniquely identified (i.e., they are not akin to a transaction account number and the like).* Therefore,

9

Serial No. 12/512,873
Docket No. 12655.1600

Applicants respectfully submit that Reno fails to disclose or contemplate, at least, "determining… the request for customer data includes a request **for personal identifiable information** requiring encryption by a public encryption key **generated by the browser toolbar**…**encrypting, by the computer-based system**, the requested personal identifiable information **using the public encryption key generated by the browser toolbar**," as similarly recited by independent claims 1, 8, and 14 (emphasis added).

Weber discloses a multi-function browser toolbar that allows a user to "toggle groups of online search engines specializing in a specific field" (Abstract). For instance, with reference to Figures 1A-1D, Weber discloses a toolbar that permits toggling between one or more search engines (Fig. 1A), one or more subject (Fig. 1C), and/or one or more websites (Fig. 1D). Applicants therefore respectfully submit that Weber fails to remedy the deficiencies described above.

The Examiner asserts that "electronic purses and wallets" were old and well known at the time of invention. Accordingly, the Examiner asserts that it would have been obvious to "combine/modify the method of **RENO/WEBER** with the technique of an e-wallet, because 'Fraudulent activities on the Internet have increased drastically'" (citing Reno). As discussed above, the combination would not have been obvious for the purpose expressed by the Examiner, because Reno purports to solve the problem it observes. **A person of ordinary skill would not have been motivated to modify Reno in order to solve a problem that Reno purports to solve**. Further, **Applicants respectfully traverse** the rejection as to this assertion, and request documentary evidence in support thereof as required by MPEP 2144.03C.

Claims 2-7, 9-13, and 15-20 variously depend from independent claims 1, 8, and 14. As such, Applicants assert that claims 2-7, 9-13, and 15-20 are differentiated from the cited references for the same reasons as set forth above, in addition to their own novel features. Applicants therefore respectfully request allowance of all of the pending claims.

When a phrase similar to "at least one of A, B, or C" or "at least one of A, B, and C" is used in the claims or specification, Applicants intend the phrase to mean any of the following: (1) at least one of A; (2) at least one of B; (3) at least one of C; (4) at least one of A and at least one of B; (5) at least one of B and at least one of C; (6) at least one of A and at least one of C; or (7) at least one of A, at least one of B, and at least one of C.

Serial No. 12/512,873
Docket No. 12655.1600

Applicants respectfully submit that the pending claims are in condition for allowance. The Commissioner is hereby authorized to charge any fees which may be required, or credit any overpayment, to Deposit Account No. **19-2814**. **This statement does NOT authorize charge of the issue fee.** If an extension of time is necessary, please accept this as a petition therefore. Applicants invite the Office to telephone the undersigned if the Examiner has any questions regarding this Reply or the present application in general.

Respectfully submitted,

Dated: 11/16/2010

By: *(signature)*
James Henson
Reg. No. 65,118

**SNELL & WILMER L.L.P.**
400 E. Van Buren
One Arizona Center
Phoenix, Arizona 85004
Phone:  602-382-6396
Fax:  602-382-6070
Email:  jhenson@swlaw.com