# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| ZOHO CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:22-cv-37-LY |
| | § | |
| LIBERTY PEAK VENTURES, LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |
| LIBERTY PEAK VENTURES, LLC, | § | |
| | § | |
| Counterclaimant, | § | |
| | § | |
| v. | § | |
| | § | |
| ZOHO CORPORATION, | § | |
| | § | |
| Counter-Defendant, | § | |
| | § | |
| and | § | |
| | § | |
| ZOHO CORPORATION PVT. LTD. | § | |
| | § | |
| Third-Party Defendant. | § | |
| | § | |

## RESPONSIVE CLAIM CONSTRUCTION BRIEF OF
## ZOHO CORPORATION AND ZOHO CORPORATION PVT. LTD.

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT ...................................................................................................... 2

        A.      LPV misapprehends the meaning of "plain and ordinary meaning." ...................... 2

        B.      "account information" ........................................................................... 3

        C.      "encryption key" and "cryptographic key" ................................................ 8

        D.      "securely storing the account information . . ." terms ............................ 15

        E.      Steps Performed "via the browser toolbar" and "at the browser toolbar" ............. 18

III.    CONCLUSION ................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**

*Ajinomoto Co. v. ITC*, 932 F.3d 1342 (Fed. Cir. 2019)................................................6, 18

*Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361 (Fed. Cir. 2007) ...............................14

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573 (Fed. Cir. 1996) ...........................11

*Barkan Wireless Access Techs., L.P. v. Cellco P'ship*, 748 F. App'x 987 (Fed. Cir. 2018).........11

*Bayer CropScience AG v. Dow AgroSciences LLC*, 728 F.3d 1324 (Fed. Cir. 2013)...................11

*CAE Screenplates v. Heinrich Fiedler GmbH*, 224 F.3d 1308 (Fed. Cir. 2000)...........................19

*Choon's Design, LLC v. Idea Vill. Prod. Corp.*, 776 F. App'x 691 (Fed. Cir. 2019) ....................3

*Eon-Net LP v. Flagstar Bancorp.*, 653 F.3d 1314 (Fed. Cir. 2011)...............................................10

*Fenner Invs., Ltd. v. Cellco Pship*, 778 F.3d 1320 (Fed. Cir. 2015) .........................................4, 12

*GPNE Corp. v. Apple Inc.*, 830 F.3d 1365 (Fed. Cir. 2016) ...........................................................8

*Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312 (Fed. Cir. 2016)...........................12

*ICU Med., Inc. v. Alaris Med. Sys.*, 558 F.3d 1368 (Fed. Cir. 2009) ............................................11

*Indacon, Inc. v. Facebook, Inc.*, 824 F.3d 1352 (Fed. Cir. 2016) .................................................14

*Intell. Ventures I v. Motorola Mobility*, 870 F.3d 1320 (Fed. Cir. 2017)...............................11, 12

*Interval Licensing, LLC v. AOL, Inc.*, 766 F.3d 1364 (Fed. Cir. 2014) .......................................17

*Iridescent Networks, Inc. v. AT&T Mobility, LLC*, 933 F.3d. 1345 (Fed. Cir. 2019)....................4

*Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968 (Fed. Cir. 1999) ...........................12

*Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc.*, 554 F.3d 1010 (Fed. Cir. 2009) ..................10

*Lowe v. ShieldMark, Inc.*, No. 2021-2164, 2022 WL 636100 (Fed. Cir. Mar. 4, 2022) ..............18

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).......................................................1

*MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250 (Fed. Cir. 2012) ...............................................1

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014)...................................................19

*Nazomi Communications, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364 (Fed. Cir. 2005) ..............12

*Netword, LLC v. Centraal Corp.*, 242 F.3d 1347 (Fed. Cir. 2001) ................................................4

*Omega Engineering, Inc v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003) ...................................18

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ........................................................*passim*

*PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, 815 F.3d 747 (Fed. Cir. 2016)...19

*Regents of Univ. of Cal. v. Dakocytomation Cal., Inc.*, 517 F.3d 1364 (Fed. Cir. 2008).............12

*Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243 (Fed. Cir. 1998) ....................6, 10

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296 (Fed. Cir. 2011) ..........1, 3, 5

*Schriber-Schroth Co. v. Cleveland Tr. Co.*, 311 U.S. 211 (1940)..................................................18

*Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361 (Fed. Cir. 2005)..........................................12

*Symantec Corp. v. Comput. Assoc. Int'l, Inc.*, 522 F.3d 1279 (Fed. Cir. 2008)...........................19

*Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358 (Fed. Cir. 2021) ................................17

*Takeda Pharm. Co. v. Zydus Pharm. USA, Inc.*, 743 F.3d 1359 (Fed. Cir. 2014) .......................11

*Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295 (Fed. Cir. 1999) ......................................12

*Trustees of Columbia Univ. in City of New York v. Symantec Corp.*,
    811 F.3d 1359 (Fed. Cir. 2016) .................................................................................................17

*U.S. v. Adams*, 383 U.S. 39 (1966)..................................................................................................1

*VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308 (Fed. Cir. 2014) ............................................9, 10

*Wisconsin Alumni Rsch. Found. v. Apple Inc.*, 905 F.3d 1341 (Fed. Cir. 2018)............................2

## I.      INTRODUCTION

Liberty Peak Ventures, LLC ("LPV") argues that all terms be given their "plain and ordinary meaning," a transparent attempt to extend its asserted patents to cover something different from, if not antithetical to, the "invention" described in the written description of the patents-in-suit.  For example, it attempts to extend "account information" to cover any "information associated" with the "holder" of any type of "account"—even though "account" is narrowed by ***an express definition in the specification*** and in all instances in the specification the "information" aspect of "account information" is from the "account" —not any information "associated with an account holder."  Dkt. 29, p. 8.  Similarly, LPV argues "encryption key" and "cryptographic key" should not be construed in a manner that limits the patents to "a particular kind of encryption," even though the specification describes only one encryption approach (asymmetric encryption (public/private key encryption)), and this particular type of encryption is central to the allegedly inventive solution described in the specification.  *Id*., p. 13.

LPV should not be allowed to divorce the claims from the specification, and it should not be allowed to extend its patent claims to cover something well beyond the written description.  Claim terms must be read in light of the specification and must be construed in a manner "that comports with the instrument as a whole."  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 389 (1996).  Put another way, claim construction must be done with an eye towards what was actually "invented" as reflected in the specification.  *U.S. v. Adams*, 383 U.S. 39, 48-49 (1966) ("[I]t is fundamental that claims are to be construed in the light of the specifications and both ***are to be read with a view to ascertaining the invention***."); *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011) ("In reviewing the intrinsic record to construe the claims, ***we strive to capture the scope of the actual invention*** ...."); *see also MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1256 (Fed. Cir. 2012) ("An inventor is

1

entitled to claim in a patent what he has invented, but no more. ... Therefore, in construing a claim there are two limiting factors—what was invented, and what exactly was claimed.").

Zoho's constructions follow these principles.  LPV's approach does not.

## II.     ARGUMENT

### A.     LPV misapprehends the meaning of "plain and ordinary meaning."

LPV's attempt to distance the claims from the specification is reflected in its approach to "plain and ordinary meaning."  LPV asserts that the claim terms should be given their "plain and ordinary" because they "have readily understood meaning in common parlance" and "customary meaning that is well understood by a person of ordinary skill in the art."  Dkt. 29, pp. 9, 11.  But LPV ignores that "plain and ordinary meaning" must be what one of ordinary skill in the art would understand having read the written description of the patent.  "[T]he 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005) (en banc); *see also Wisconsin Alumni Rsch. Found. v. Apple Inc.*, 905 F.3d 1341, 1351 (Fed. Cir. 2018) ("the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent. (citations omitted)). Reading the patent as a whole, it is clear that the claimed prediction must be capable of receiving updates.").  The claim terms, when read in view of the specification, carry the meaning proposed by Zoho.

B.     **"account information"**

| Claims | Liberty Peak Construction | Zoho Construction |
|---|---|---|
| **"account information"** | Plain and ordinary meaning – no need for construction. | "Information from an account (*e.g.* an account number) wherein the account is associated with an open account or closed account system"<br><br>"An open account system is one that enables transactions with different merchants. Credit cards such as Visa and American Express are examples of open accounts. Closed accounts, by contrast, may be restricted to use with a particular store/merchant, a particular chain of stores/merchants or a collection of affiliated stores/merchants." |

Zoho's proposed construction closely tracks the inventors' *defined* terminology and aligns with what they described as the invention.  By contrast, LPV invites the Court to ignore the specification and look only to the claim language in isolation.  While LPV reasons that a layperson could understand what "account information" could mean "in common parlance" (Dkt. 29, p. 8.), whether a layperson could ascribe meaning to the term is irrelevant.  "[T]he specification, not dictionaries or colloquial use, dictates a term's 'plain and ordinary meaning.'" *Choon's Design, LLC v. Idea Vill. Prod. Corp.*, 776 F. App'x 691, 696 (Fed. Cir. 2019) (citing *Retractable Techs.,* 653 F.3d at  1305 ("It is axiomatic that the claim construction process entails more than viewing the claim language in isolation.  Claim language must always be read in view of the written description ...."))  LPV also asserts—without citation to any evidence—that "account information" standing alone has a plain and ordinary meaning to a person of ordinary skill in the art at the time the application was filed.  Dkt. 29, pp. 10-11.  But in claim construction the Court must look beyond the claim language alone to order to "capture the scope

of the actual invention that is disclosed, described, and patented." *Iridescent Networks, Inc. v. AT&T Mobility, LLC*, 933 F.3d. 1345, 1352-53 (Fed. Cir. 2019) (quoting *Fenner Invs., Ltd. v. Cellco Pship*, 778 F.3d 1320, 1323 (Fed. Cir. 2015); *see also Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001) ("The claims are directed to the invention that is described in the specification; they do not have meaning removed from the context from which they arose.").

The invention described in the patents-in-suit is about the secure processing of information from particular types of "account[s]." The specification provides an express definition of "account": "An 'account' as used herein refers to an account associated with an open account or a closed account system." '122 patent at 3:48-49. The specification explains what "open" and "closed" account systems are in the context of "open" and "closed cards."[1] '122 patent at 3:37-47. An "open card" is a "financial transaction card" that is "generally accepted at different merchants." It identifies credit cards including "American Express" or "Visa," "which may be used at many different retailers and other businesses," as examples of "open cards." *Id.* at 3:38-42. It explains that "closed cards" are "financial transaction cards that may be restricted to use in a particular store, a particular chain of stores or a collection of affiliated stores." *Id.* at 3:42-47. Given this description, the specification makes clear that an "open account system" is one that enables financial transactions with different merchants while a "closed account system" is one that may be restricted to use with a particular store/merchant, a particular chain of stores/merchants or a collection of affiliated stores/merchants.

---

[1] The patent defines "cards" as "financial transaction cards" such as credit cards (*see* '122 patent at 3:37-47) and a "card issuer" as "an organization that issues a transaction account and an associated financial instrument (e.g. a payment device, transaction card and like) to a card member." *Id.* at 3:56-58.

Moreover, in **all instances** in the specification, the "account information" (i.e., the encrypted information sent to the browser toolbar for decryption, storage and use in a transaction) is information from an account. *See* Dkt. 30 § I.B; '122 patent at 5:23-61 (describing that, after a user selects one more accounts, account-specific sensitive information from the selected accounts is sent to the toolbar where it is decrypted and stored in an e-wallet for use in a transaction); 6:28-64 (same); 7:1-42 (same). Thus, Zoho's proposed construction of "account information" applies the specification's express definition of "account" and "tether[s] the claims to what the specifications indicate the inventor[s] actually invented." *Retractable Techs.*, 653 F.3d at 1305.

By contrast, LPV contends that "account information" refers to any "information associated with an account holder." *See* Dkt. 29, p. 8. But it cites nothing in the specification to support this, because there is no support for the notion that "account information" refers to any information about an "account holder." LPV also asserts that "account information" includes "different types of data such as various kinds of account numbers and sensitive personally identifiable information (e.g. a social security number)," but in support LPV cites to a definition in the specification for a different term, "personal identifying information" or "PII." *See id.*, *citing* '122 patent at 4:1-6. The definition of PII is not informative here because the claims do not claim the storage and transmission of PII. Rather, they claim the storage and transmission of "account information," a term referring to the different explicit definitions in the specification described above.

The distinction between "PII" and "account information" is reinforced by the prosecution history. As described in the opening brief, before the claims were rewritten during prosecution every independent claim included a limitation requiring PII: "the encrypted personal identifiable

information is decrypted by the browser toolbar and saved to a secure electronic wallet (e-wallet)." Dkt. 30, pp. 7-8. This limitation was removed and replaced with "securely storing the account information at the browser toolbar" and similar phrases. *Compare* Dkt. 30-10 (Ex. H, November 11, 2014 Office Action Response) at pp. 2-7 *with* Dkt. 30-11 (Ex. I, March 2, 2015 Office Action Response) at pp. 2-10. LPV should not be allowed to elide the difference between these terms. *Ajinomoto Co. v. ITC*, 932 F.3d 1342, 1351 (Fed. Cir. 2019) ("when a word is changed during prosecution, the change tends to suggest that the new word differs in meaning in some way from the original word.").

LPV's position also fatally disregards that "account" is a defined term in the specification. When the patentee acts as its own lexicographer, that definition governs. *Phillips*, 415 F.3d at 1316; *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998) ("[P]atent applicant has elected to be a lexicographer by providing an explicit definition in the specification for a claim term. In such a case, ***the definition selected by the patent applicant controls***.").

LPV's argument that the "specification describes 'account information' … as being inclusive of 'generic account data' provided to customer" also ignores what generic data is and how it is used. The "generic account data" referred to in the specification is not the claimed encrypted "account information" and thus use of that phrase should not be understood to broaden the meaning of "account information." As the specification explains, "generic account data" is the limited information about each eligible card, which is provided to a user to enable the user to select which card he or she wants to use. Dkt. 30, p. 5; '122 patent at 5:12-28. The specification explains the before providing account information useable to conduct a transaction, the card issuer servers send "generic card data associated with each eligible card" to the customer's

computing device for display. '122 patent at 5:12-24; *see also id.* at 7:23-25; Fig. 3.  This does *not include the sensitive account information to be encrypted and used to conduct a transaction.* Rather, the generic card data includes only "enough information for the customer to decipher one card from another," such as "a picture associated with the card and the last 5 digits of the card." *Id.* at 5:24-38.  The customer can use this generic data to "select one or more cards presented for PII data download." *Id.* at 5:29-30; 7:26-28; Fig. 3.  Then, for each selected card, the customer provides "card specific access credentials." *Id.* at 5:30-44; 6:50-53; 7:29031; Fig. 3.  Only after the customer's access to the specific selected cards is verified by the card issuer is the sensitive account information for each selected card retrieved and "encrypted using the public key previously received from the browser tollbar and transmitted to [the] browser toolbar." *Id.* at 5:45-52; 6:53-62; 7:35-43; Fig. 3.  This encrypted data—the account information, not generic account data—is what is ultimately decrypted using the private key maintained by the toolbar, stored in a "secure e-wallet," and made available for use by the customer in completing online transactions. *Id.* at 5:52-64; *see also* 6:60-64; Fig. 2 (block 209); 7:41-43; Fig. 3 (block 304).

That is, "generic account data" is the first set of data sent from the card issuer servers to the browser toolbar.  It contains non-sensitive information used to select which card a customer might want to use for a transaction.  Only after that selection is the sensitive information—the claimed account information—encrypted, sent to the browser toolbar, and decrypted for use in a transaction.  "Generic account data" is entirely distinct from the claimed "account information" that is decrypted at the browser toolbar, and LPV's argument that "generic account data" should broaden the meaning of "account information" should be disregarded.

In sum, the Court should adopt Zoho's construction, which applies the definition from the specification, is true to the consistent teachings of the specification and true to the positions the applicants took during prosecution.

C.     **"encryption key" and "cryptographic key"**

| Term | Liberty Peak Construction | Zoho Construction |
|---|---|---|
| **"encryption key"** | Plain and ordinary meaning – no need for construction. | "a private key that corresponds to a public key" |
| **"cryptographic key"** | Plain and ordinary meaning – no need for construction. | "a private key that corresponds to a public key" |

Zoho's proposed construction is consistent with the written description, including every embodiment in the patent, all of which require the use of asymmetric (private/public-key) encryption.  There is absolutely no disclosure or description of symmetric keys in the written description.  As Zoho described in its opening brief, in all instances the key maintained by the browser is a private key from public/private key pair.  *See* Dkt. 30, p. 15; '122 patent at 4:60-63, 5:53-59, 5:62-64, 8:7-9.  These disclosures describe what the patentees invented and are controlling.

LPV makes two arguments against Zoho's construction—that it reads limitations in from the specification and that it violates the doctrine of claim differentiation.  Neither argument is availing.

First, Zoho's proposed construction does not read limitations into the claims.  Rather, Zoho's construction applies the meaning of encryption and decryption key that is "consistently and repeatedly" applied to those terms in the specification and claims.  *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1370 (Fed. Cir. 2016) ("[W]hen a patent 'repeatedly and consistently' characterizes a claim term in a particular way, it is proper to construe the claim term in

accordance with that characterization.") (citing *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1318 (Fed. Cir. 2014).

The context of the claims shows that the encryption/cryptographic key is in all instances a private key from an asymmetric pair.  In every claim, the encryption/cryptographic key is the key that is generated or maintained by the browser toolbar and used to decrypt the received account information.  Dkt. 30, p. 15 n. 5 (reciting relevant claim limitations).  And as made clear by the specification, the key used for decryption at the browser toolbar is a private key from a public/private key pair.  In ***every instance*** in the specification the key used by the browser toolbar is a private key from a public/private key pair.  *See* '122 patent at 4:60-63 ("Preferably, the private key is not shared outside the browser toolbar unit 102. In this case, browser toolbar unit 102 is the sole unit which can decrypt the PII data received from web interface 106"); 5:53-59 ("Because browser toolbar 102 maintains the private key required for decrypting the PII data"); 5:62-64 ("the public/private key pair created by browser toolbar 102 is used to encrypt/decrypt multiple PII data requests"); 8:7-9 ("The stored private key 406 and private key ring 408 are accessible to the browser toolbar 402 for key retrieval and decryption as needed").  There is no description in the specification of any key used for decryption at the browser toolbar that is not a private key from a public/private key pair.

Moreover, the use of asymmetric key pairs in which the browser toolbar uses the private key from the pair for decryption is central to solution set out in the specification.  The background explains that  "[e]ven if the account data is ultimately stored in an encrypted form, the account data may also be exposed during data entry and prior to encryption by the digital wallet software."  '122 patent at 1:54-57.  Thus, the inventors propose a solution using a public/private key pair—by transmitting a public key to the server for encryption, only the

private key, which never leaves the browser toolbar, is used to decrypt the sensitive account information.  '122 patent at 5:53-57 ("Because browser toolbar 102 maintains the private key required for decrypting the PII data, the customer's PII data is protected if it is intercepted by another unit external or internal to the customer's computer system during transmission to browser toolbar 102"); *see also id.* at 4:57-64 ("Preferably, the private key is not shared outside the browser toolbar unit 102. In this case, browser toolbar unit 102 is the sole unit which can decrypt the PII data received from web interface 106.").  No embodiment teaches any other approach.

"[T]he interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim." *Phillips,* 415 F.3d at 1316 (quoting *Renishaw,* 158 F.3d at 1250).  The repeated and unambiguous teachings in the specification provide a guide to the proper claim construction, even if the claims alone could in isolation be read more broadly.  *VirnetX*, 767 F.3d at 1318 (Fed. Cir. 2014) (where the background and summary of the invention identify "a key part of the novel solution to the specific problem identified in the prior art" that is "'repeatedly and consistently' used to characterize the invention," the specification "strongly suggests that it should be read as part of the claim," even where the specification "mechanically prefaces most passages with the phrase 'according to one aspect of the present invention'") (citing *Eon-Net LP v. Flagstar Bancorp.*, 653 F.3d 1314, 1321-23 (Fed. Cir. 2011)); *Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc.*, 554 F.3d 1010, 1018-19 (Fed. Cir. 2009) (where "[a]ll of the examples described in the specification involve skin wounds," to construe "wound" to include other wound types "would thus expand the scope of the claims far beyond anything described in the specification").  Thus, "the court should focus on how [a person of ordinary skill in the art] would understand the

10

claim term 'after reading the entire patent.'" *ICU Med., Inc. v. Alaris Med. Sys.*, 558 F.3d 1368,

1375 (Fed. Cir. 2009) (quoting *Phillips*, 415 F.3d at 1321); *see also Barkan Wireless Access*

*Techs., L.P. v. Cellco P'ship*, 748 F. App'x 987, 992 (Fed. Cir. 2018) (affirming claim

construction requiring Wi-Fi access points even though specification did not define it as such

where the patent disclosure was limited to Wi-Fi (not cellular) technology).  Zoho's construction

is thus true to the claimed invention as described in view of the specification; LPV's

interpretation of the claims as not being limited to asymmetric encryption disregards the

purported invention.

   Moreover, if the claims were interpreted more broadly—to cover symmetric keys as LPV

contends they should be—then the claims are invalid for lack of written description.  *See Bayer*

*CropScience AG v. Dow AgroSciences LLC*, 728 F.3d 1324, 1330-31 (Fed. Cir. 2013) (rejecting

attempt to construe term more broadly than its well-accepted scientific meaning, in part because

the broader construction would raise "grave doubts" of invalidity under section 112(a)'s written

description requirement.); *see also Intell. Ventures I v. Motorola Mobility*, 870 F.3d 1320, 1325-

26 (Fed. Cir. 2017) (affirming denial of written description invalidity JMOL given

specification's distinctions over prior art, reasoning that "the proper result is not that claim 41

fails for lack of written description but that it should be construed 'in view of the specification'

to be limited"); *Takeda Pharm. Co. v. Zydus Pharm. USA, Inc.*, 743 F.3d 1359, 1365 (Fed. Cir.

2014) ("[w]here there is an equal choice between a broader and a narrower meaning of a claim,

and there is an enabling disclosure that indicates that the applicant is at least entitled to a claim

having the narrower meaning, we consider the notice function of the claim to be best served by

adopting the narrower meaning") (quoting *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d

1573, 1581 (Fed. Cir. 1996)); *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312,

1321-22 (Fed. Cir. 2016) (citing possible indefiniteness concern if claim-recited outcome not limited to particular technique described in written description).

LPV's second argument, that doctrine of claim differentiation forecloses Zoho's proposed construction, also fails. The doctrine of claim differentiation refers to the presumption[2] that an independent claim should not be construed as requiring a limitation added by a dependent claim. *See Nazomi Communications, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1370 (Fed. Cir. 2005) ("[C]laim differentiation 'normally means that limitations stated in dependent claims are not to be read into the independent claim from which they depend.'" (quoting *Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971-72 (Fed. Cir. 1999))); *see also Phillips*, 415 F.3d at 1314-15 (explaining the presumption without invoking the "claim differentiation" label). Thus, where the dependent claim, despite the construction, still adds something new to the independent claim, it is not superfluous and claim differentiation does not apply.

Here, LPV's contention that several dependent claims would be rendered superfluous by Zoho's proposed construction is factually incorrect. As shown in the table below, the dependent claims cited by LPV add significant limitations to the independent claims beyond the requirement that the claimed "encryption key" or "cryptographic key" be part of an asymmetric key pair. The dependent claims add the requirement that the browser toolbar generate or create

---

[2] The doctrine of claim differentiation "is 'not a hard and fast rule.'" *Regents of Univ. of Cal. v. Dakocytomation Cal., Inc.*, 517 F.3d 1364, 1375 (Fed. Cir. 2008) (quoting *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005)). "Although claim differentiation is a useful analytic tool, it cannot enlarge the meaning of a claim beyond that which is supported by the patent documents, or relieve any claim of limitations imposed by the prosecution history." *Fenner Invs.*, 778 F.3d at 1327. And the doctrine "does not serve to broaden claims beyond their meaning in light of the specification." *Intell. Ventures I*, 870 F.3d  at 1326 (Fed. Cir. 2017) (quoting *Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1302 (Fed. Cir. 1999)).

both keys of the public/private key pair – whereas none of the independent claims require such generation/creation.

| Independent claim | Dependent claim | Additional Requirements |
|---|---|---|
| '122 patent claim 1:<br><br>"wherein the decrypting is performed using an encryption key maintained by the browser toolbar and inaccessible outside of the browser toolbar" | '122 patent claim 7:<br><br>"generating, via the browser toolbar, an encryption key pair, wherein the encryption key pair includes a public encryption key that corresponds to the encryption key" | 1. Generating both keys of the key pair. |
| '122 patent claim 8:<br><br>"decrypting the encrypted version of the account information using an encryption key maintained by the browser toolbar" | '122 patent claim 9:<br><br>"creating a public/private key pair, wherein the encryption key is a private key of the pair that is inaccessible outside of the browser toolbar; and<br><br>sending a public key of the pair to the remote database for encryption of the account information." | 1. Creating both keys of the key pair.<br><br>2. Encryption key is inaccessible outside of the browser toolbar.<br><br>3. Public key is sent to the remote database and used for encryption. |
| | '122 patent claim 14:<br><br>"generating an encryption key pair that includes the encryption key" | 1. Generating both keys of the key pair. |
| '088 patent claim 1:<br><br>"generating, at a browser toolbar, a cryptographic key usable to decrypt encrypted account information…<br><br>using, by the browser toolbar, the cryptographic key to decrypt encrypted data" | '088 patent claim 2:<br><br>"generating a public key pair having a public key and a private key, wherein the private key is the cryptographic key; and<br><br>transmitting the public key to the secure database for encrypting the account information." | 1. Generating both keys of the key pair.<br><br>2. Public key is transmitted to the secure database and used for encryption. |

13

| Independent claim | Dependent claim | Additional Requirements |
|---|---|---|
| '088 patent claim 15:<br><br>"wherein the decryption uses a cryptographic key generated by the browser toolbar" | '088 patent claim 16:<br><br>"generating, by the browser toolbar, a public key pair having a public key and a private key, wherein the cryptographic key is the private key; and<br><br>transmitting, by the browser toolbar, the public key to the secure remote database for encrypting the account information." | 1. Generating both keys of the key pair.<br><br>2. Public key is sent to the secure remote database and used for encryption. |

Thus, because there are "meaningful difference[s] between an independent and dependent claim," LPV's claim differentiation argument fails.  Dkt. 29, p. 13 (citing *SunRace Roots Enter. Co. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed. Cir. 2003)); *see Indacon, Inc. v. Facebook, Inc.*, 824 F.3d 1352, 1358 (Fed. Cir. 2016) ("we have declined to apply the doctrine of claim differentiation where, as here, the claims are not otherwise identical in scope"); *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1370 (Fed. Cir. 2007) (claim differentiation not applied when other differences in the claims existed).

In sum, Zoho's proposed construction is true to the written description and the applicants' description of their invention.  The claimed "encryption key" and "cryptographic key" should be construed as "a private key that corresponds to a public key."

14

D.     **"securely storing the account information . . ." terms**

| Term | Liberty Peak Construction | Zoho Construction |
|---|---|---|
| **"securely storing the account information at the browser toolbar"** | Plain and ordinary meaning – no need for construction. | Indefinite, or in the alternative: "storing the account information in a data storage implementation wherein the stored account information is accessible only by the browser toolbar" |
| **"securely storing, by the browser toolbar, the account information at the browser toolbar"** | Plain and ordinary meaning – no need for construction. | Indefinite, or in the alternative: "storing, by the browser toolbar, the account information in a data storage implementation wherein the stored account information is accessible only by the browser toolbar" |

LPV asserts that these terms have a "plain and ordinary meaning," that they "are readily understandable in the context of the intrinsic evidence," and thus require no construction. Dkt. 29, pp. 16, 18. But LPV cites no evidence to support the notion that there is a plain and ordinary meaning for these terms or that these terms would be readily understandable to one skilled in the art.[3] It does not because it cannot.

The specification never mentions, let alone describes, what it means to store information "at a browser toolbar." As Zoho explained in the opening brief, the specification consistently

---

[3] LPV contends that it had no notice of Zoho's indefiniteness position for these terms. Dkt. 29 at 17. But Zoho's amended invalidity contentions described the very issues Zoho briefed for claim construction, disclosing: "The phrase 'securely storing account information at the browser toolbar' ('122 Patent, claim 1) is indefinite and/or lacks written description; the written description fails to disclose what it means to 'securely store' information and what it means for information to be stored 'at' a piece of software." Zoho recited the same reasons for the similar limitations in the '088 and '901 patents. LPV has no basis for refusing to engage with the substance of the dispute until its reply brief.

describes storing the data in an "e-wallet," not at the browser toolbar itself.  '122 patent at 5:57-61 ("browser toolbar 102 decrypts the PII data and stores it in secure e-wallet … customer can retrieve the stored PII data from secure e-wallet"); 6:1-3 ("the PII data stored in secure e-wallet 104 is deleted upon the customer closing the current web browser session"); 6:11-12 ("using PII data stored in secure e-wallet"); 6:13-16 ("browser toolbar 102 can check to see if the PII data currently stored in the secure e-wallet 102 needs to be updated"); 6:19-20 ("the PII data stored in the secure e-wallet 102 is updated"); 6:62-64 ("decrypted PII data is stored in an e-wallet").  This is logical since the e-wallet is explicitly defined as a place for data storage.  *Id*. at 3:62-66 ("An 'e-wallet' as used herein refers to any data storage implementation which allows data associated with a customer to be stored and used to make electronic commerce transactions.").

During prosecution, the claims were rewritten to remove the requirement that "the encrypted personal identifiable information is decrypted by the browser toolbar and saved to a secure electronic wallet (e-wallet)" and replace it with the "securely storing … at the toolbar" limitations.  *Compare* Ex. H (November 11, 2014 Office Action Response) at 2-7 *with* Ex. I (March 2, 2015 Office Action Response) at 2-10.  But there is no explanation for how data would be stored in a browser toolbar.

Without guidance from the specification, the requirement of "storing … at the browser toolbar" is nonsensical to a person of skill in the art.  Dkt. 30-1 ¶ 51.  The parties agree that the browser toolbar is "a software program that adds functionality to a browser and includes a graphical user interface component within the browser" and like all software, is made up of executable instructions.  It is not a storage location, and it would be impossible to store anything "at" it.  Dkt. 30-1 ¶ 50.  Instead, in practice (and as described in the common specification) data is stored in a storage implementation like computer memory, attached disk or database.  Data is

not stored "at" software and a claim that requires such an action is nonsensical and directed to an

impossibility. *Id.* ¶ 51. When claims are directed to an impossibility, they are indefinite.

*Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1362 (Fed. Cir. 2021); *Trustees of*

*Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1365  (Fed. Cir. 2016).

LPV cannot contest this.

 In addition, theses phrases are indefinite because there is no objective measure by which

one of ordinary skill in the art could know whether data is stored "securely" or not. The

specification never explains what it means to store information "securely," and there is no clear

division between secure and insecure storage to one of skill in the art. Dkt. 30-1 ¶¶ 52-55.

Without "objective boundaries" recited in the specification, such terms of degree are indefinite.

*Interval Licensing, LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014).

 In sum, the "securely storing" limitations are indefinite for the reasons explained in

Zoho's opening brief:  nothing in the common specification explains what it means to store

account information "at a browser toolbar" and, without guidance from specification, a person of

ordinary skill in the art would not know what this claim requirement means, and even if one

skilled in the art could understand what it means to store information "a the browser toolbar," the

patents do not explain what it means to store information "securely."[4]

---

[4] While Zoho has proposed an alternative construction and now LPV also asserts a proposed
alternative construction, neither should be adopted.  Both alternative constructions require
"storing … the account information in a data storage implementation."  The "data storage
implementation" language in these constructions is drawn from the specification's definition of
"e-wallet."  '122 patent at 3:62-66 ("An 'e-wallet' as used herein refers to any data storage
implementation which allows data associated with a customer to be stored and used to make
electronic commerce transactions.").  But the claims require storage "at" the "browser toolbar,"
not at an "e-wallet."  These proposed constructions essentially add "e-wallet" into the claims;
which is not proper. As noted above, during prosecution the claims were rewritten to remove the
requirement that "the encrypted personal identifiable information is decrypted by the browser
toolbar and saved to a secure electronic wallet (e-wallet)" and replace it with the "securely

### E.  Steps Performed "via the browser toolbar" and "at the browser toolbar"

| Term | Liberty Peak Construction | Zoho Construction |
|---|---|---|
| **"generating, via the browser toolbar"** | Plain and ordinary meaning – no need for construction. | Indefinite |
| **"generating, at a browser toolbar"** | Plain and ordinary meaning – no need for construction. | Indefinite |
| **"determining, at a browser toolbar"** | Plain and ordinary meaning – no need for construction. | Indefinite |
| **"decrypting, at the browser toolbar"** | Plain and ordinary meaning – no need for construction. | Indefinite |
| **"providing, via the browser toolbar, the stored account information to the web service"** | Plain and ordinary meaning – no need for construction. | Indefinite |

As explained in Zoho's opening brief, it is unclear what it means for an action to be performed "via" or "at" software (the browser toolbar), rather than "by" the browser toolbar, as recited elsewhere in the claims.  *See* Dkt. 30, pp. 24-25; Dkt. 30-1 ¶¶ 60-63.  These terms have

---

storing … at the toolbar" limitations.  It is a long-standing rule that such amendments preclude adding the e-wallet back into the claims in claim construction.  *See Omega Engineering, Inc v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003) (patentees are precluded from "recapturing through claim interpretation specific meanings disclaimed during prosecution") (citing *Schriber-Schroth Co. v. Cleveland Tr. Co.*, 311 U.S. 211, 220-21 (1940) ("It is a rule of patent construction consistently observed that a claim in a patent as allowed must be read and interpreted with reference to claims that have been cancelled or rejected, and the claims allowed cannot by construction be read to cover what was thus eliminated from the patent.")); *see also Ajinomoto*, 932 F.3d at 1351 ("when a word is changed during prosecution, the change tends to suggest that the new word differs in meaning in some way from the original word.").  And the fact that the patentees at one point included "e-wallet" in the claims, but ultimately did not, indicates that the e-wallet is properly excluded.  *See Lowe v. ShieldMark, Inc.*, No. 2021-2164, 2022 WL 636100, at *5 (Fed. Cir. Mar. 4, 2022) (reversing narrow claim construction and noting that parent patent's claims recite limitation that asserted patent's claims lack, indicating "the patentee knew how to claim tape with shoulders and a recess when specifically intended").  The Court should not rewrite its claims.

presumptively different meanings. *PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, 815 F.3d 747, 752–53, (Fed. Cir. 2016) ("There is a canon of construction: 'the general assumption is that different terms have different meanings.'… This canon is certainly employed in both statutory interpretation and claim construction. In fact, many of the canons of statutory construction apply equally when interpreting patent claims.") (quoting *Symantec Corp. v. Comput. Assoc. Int'l, Inc.*, 522 F.3d 1279, 1289 (Fed. Cir. 2008)); *CAE Screenplates v. Heinrich Fiedler GmbH*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings.").

Without any other information, an accused infringer cannot know how to avoid infringing the claims.  That is, the "claims, read in light of the specification, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention," and the claims are indefinite.  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

## III.    CONCLUSION

For the reasons stated above, Zoho asks that the Court adopt its proposed claim constructions.

Dated: February 7, 2023                    Respectfully submitted,

                              By:    /s/ *Ryan Marton*
                                     Ryan Marton

                                     Darryl Adams
                                     Texas State Bar No. 00796101
                                     dadams@sgbfirm.com
                                     SLAYDEN GRUBERT BEARD PLLC
                                     401 Congress Ave., Ste. 1650
                                     Austin, Texas 78701
                                     Telephone: (512) 402-3550
                                     Facsimile: (512) 402-6865

                                     Ryan Marton (admitted *pro hac vice*)
                                     Phillip Haack (admitted *pro hac vice*)
                                     MARTON RIBERA SCHUMANN & CHANG LLP
                                     548 Market Street, Suite 36117
                                     San Francisco, CA 94104
                                     Telephone:  (415) 360-2515
                                     Email:      ryan@martonribera.com
                                                 phil@martonribera.com

                                     *Attorneys for Zoho Corporation and*
                                     *Zoho Corporation Pvt. Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing is being served on the

counsel of record via the CM/ECF system on February 7, 2023.


By:    */s/ Ryan J. Marton*                          
             Ryan J. Marton