# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| ZOHO CORPORATION, § § § Plaintiff, § § v. § LIBERTY PEAK VENTURES, LLC, § § Defendant. § § § LIBERTY PEAK VENTURES, LLC, § § Counterclaimant, § § v. § § ZOHO CORPORATION, § § Counter-Defendant, § § and § § ZOHO CORPORATION PVT. LTD. § § Third-Party Defendant. § § | Civil Action No. 1:22-cv-37-LY |

## SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF OF
## ZOHO CORPORATION AND ZOHO CORPORATION PVT. LTD.

I.  **INTRODUCTION**

At his recent deposition, LPV's expert, Dr. Melendez, confirmed that "securely storing … at a browser toolbar" is a term of degree where an unspecified degree of efficacy (unspecified degree of security) against unspecified threats must be achieved to meet the claimed "securely storing" limitation.  Because the patents fail to provide "objective" bounds as to what is secure storage and what is not, this claim element is indefinite.

II. **ARGUMENT**

As explained in Zoho's opening and responsive claim construction briefing, "securely storing … at the browser toolbar" is a term of degree.  (Dkts. 30, 34.)  Just like securing a house, one may take different measures, each with differing levels of efficacy, to try to achieve secure storage of information.  In all instances (whether data stored on a computer or valuables in a house), something can be more or less secure.  And in all instances, to determine whether something is deemed "secure," one must know the threat being secured against and the degree of security required to protect against that threat.  As a term of degree in a patent claim, to apprise the public of what constitutes "securely storing" and what does not, the specification needs to provide "objective boundaries" for measuring the scope of the phrase such that the public knows what is "securely storing" and what is not. *Interval Licensing, LLC v. AOL, Inc.*, 766 F. 3d 1364, 1371 (Fed. Cir. 2014).  Here, neither the specification nor the prosecution history provides any objective boundaries for "securely storing" and thus the patents "fail[] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).

Dr. Melendez's testimony confirms that the asserted patents provide no guidance as to the bounds of the claimed secure storage.  Dr. Melendez could not provide any concrete testimony as to what the claimed act of "securely storing" must secure against.  When asked what the account

information is being secured against in the patent, Dr. Melendez first said "well, that – that would be laid out specifically in the claims." Marton Decl. Ex. A at 29:3-13. When later asked about the claims and whether or not the account information needs to be secure against something in particular to be deemed securely stored, he responded that he did not think the claims are "laying that out." *Id*. at 41:10-20. He also testified that it was possible that account information could be stored "at a browser toolbar" and be exposed to "viruses" or "hackers" but still be "securely stored" within the meaning of the claims. *Id*. at 65:4-9; 66:6-68:20. Moreover, after failing to provide any guidance on what the claimed "account information" needs to be secured against, Dr. Melendez acknowledged via an analogy that the nature of the threat is essential to understanding whether something is securely stored. *Id*. at 71:15-74:11. When asked about his assertion that deleting account information from the browser toolbar after it is no longer needed is an example of "securely storing," Dr. Melendez clarified that deletion after a short time might not constitute secure storage if the stored data was exposed to a threat during the time before deletion. *Id*. Using placement of a coin under a rock on the beach as an analogy, he testified that whether a person intending to steal the coin was standing next to the rock when the owner placed the coin under the rock was relevant to whether the coin was "securely stored." *Id*. Thus, according to Dr. Melendez, a measure taken to secure data may or may not be enough to constitute secure storage depending on the specific threat (or threats) existing on the computing device in question. Such a context-dependent infringement analysis renders a claim element indefinite. *See Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F. 3d 1244, 1251 (Fed. Cir. 2008) ("[w]hen a proposed construction requires that an artisan make a separate infringement determination for every set of circumstances in which the [accused article] may be used, and when such determinations are likely to result in differing outcomes (sometimes

infringing and sometimes not), that construction is likely to be indefinite"). Reinforcing the indefiniteness of the limitation, Dr. Melendez emphasized that to be deemed securely stored, the account information need not be "perfectly" secure. *Id*. at 104:20-105:22. Instead, it only needs to be "reasonably secure." *Id*. at 114:4-12; 86:10-87:4. And, Dr. Melendez did not know whether what is deemed reasonably secure changed over time. *Id*. at 116:19-117:1. To the extent it does change over time, the claim term is indefinite. *See Icon Health & Fitness, Inc. v. Polar Electro Oy*, 656 F. App'x 1008, 1016, 2016 WL 4174951, at *6 (Fed. Cir. 2016) (finding a term that is "a moving target that may change over time" inadequate to determine claim scope); *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1363 (Fed. Cir. 2005) ("[a] claim cannot have different meanings at different times").

Similarly, Dr. Melendez confirmed that the patent specification does not disclose objective boundaries for the "securely storing" limitations. Dr. Melendez identified three examples of "securely storing … at the browser toolbar" in the specification. Not only do these provide no "boundaries" for the claim term, but they cannot be examples of "securely storing … at the browser toolbar." First, Dr. Melendez testified that removal of decrypted account information from the toolbar after use was an example of "securely storing." Marton Decl., Ex A, 44:4-46:10. Dr. Melendez's assertion is belied by the claim language and the file history. Looking at claim 1 of the '122 patent, for example, the claim requires both "securely storing the account information at the browser toolbar" and separately, "removing the stored account information from the browser toolbar after completion of the transaction." The "removing" step is separate from the "storing" step, and as such, removal of account information cannot constitute secure storage of the account information. *See Power Mosfet Techs., LLC v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004) ("[I]nterpretations that render some portion of the claim

3

language superfluous are disfavored."). The file history also precludes removal of the account information after use from being an example of "securely storing." In the March 21, 2011 response to an office action during the '122 patent prosecution (*see* Dkt. 37-1, p.9), the patentee described the "purpose of the [allegedly inventive] system" as being "to safeguard a user's data from theft/attack after the data is downloaded and decrypted by the user's computer, and before the user is permitted access to the data." Because the purpose is to secure data "before" it is accessed and used, removal or deletion of the data after use cannot be the allegedly inventive secure storage. Second, Dr. Melendez asserted that storing the account information in an "e-wallet" is an example of "securely storing … at the browser toolbar." Marton Decl. Ex A at 77:13-78:8. But storing in an e-wallet cannot be storing "at the browser toolbar." As explained by Zoho's (Dkt. 30 at p.22), the e-wallet (defined as "any data storage implementation …" (*see* '122 patent at 3:63-64)) and the browser toolbar (defined by the parties as "software …") are distinct. As such, storing at the browser toolbar is different than storing in an e-wallet. This difference was highlighted during prosecution of the '122 patent. The claims were first directed to systems and methods in which the received information was "decrypted by the browser toolbar and [then] saved to a [separate] secure electronic wallet (e-wallet)." Dkt. 30-7, p.3. The claims were amended to replace saving the received information to a "secure electronic wallet" with securely storing account information "at the browser toolbar." *See* Dkt. 30-11, p. 3. Had the patentee meant for the claims to cover an embodiment where the toolbar stores the account information in an e-wallet, they would not have amended the claims to require storing at a toolbar instead of in an e-wallet. *Ajinomoto Co. v. ITC*, 932 F.3d 1342, 1351 (Fed. Cir. 2019) ("when a word is changed during prosecution, the change tends to suggest that the new word differs in meaning in some way from the original word."). Thus, storing data in an "e-wallet"

cannot be an example of "securely storing … at the browser toolbar."  Third, Dr. Melendez asserts that the patent discloses "securely storing …. at the toolbar" where no e-wallet is used but the account information is somehow 'securely stored' at the toolbar.  Marton Decl. Ex. A, 56:17-62:8.  But Dr. Melendez does not and LPV cannot identify any portion of the specification that describes such an embodiment.  In short, neither Dr. Melendez nor LPV has identified any example of "securely storing … at the browser toolbar," let alone "objective boundaries" for the claim term.  Further, even if LPV had identified an example of "securely storing … at the browser toolbar," examples alone would not render the claim term definite because they do not make clear what falls inside and outside the bounds of the claim.  *See Prolifiq Software Inc. v. Veeva Sys. Inc.*, 2014 WL 3870016, at *8 (N.D. Cal. Aug. 6, 2014) (holding the specification's "examples are insufficient to show with reasonable certainty the scope of the claims because they provide no information as to what falls outside the boundaries of the claims.").

Throughout his deposition, Dr. Melendez's common refrain was that one skilled in the art would know what "securely storing … at the browser toolbar" meant.  But when asked to explain how one skilled in the art would determine whether account information were securely stored, Dr. Melendez refused to provide any concrete answers, vaguely asserting one would need to look at the "implementation" and determine whether it was secure or not.  Marton Decl., Ex. A at 39:2-24.  And, when asked whether specific storage methods constituted secure storage, he consistently refused to provide any definitive answers.  *See, e.g., id*. at 54:3-56:15; 89:3-13; 110:13-111:23; 118:14-119:20.  Dr. Melendez also could not identify whether there were steps that could be taken to limit access to account information that would not constitute "securely storing" (other than to say if that if one limits access to authorized persons but not unauthorized persons that would not be "securely storing").  *Id.* at 88:7-89:2.  In short, Dr. Melendez provided

5

no guidance as to what "securely storing … at the browser toolbar" means.  He did not because the claim term is indefinite.

Dated: March 6, 2023                    Respectfully submitted,

                                                          By:     /s/ *Ryan Marton*
                                                                 Ryan Marton

Darryl Adams
Texas State Bar No. 00796101
dadams@sgbfirm.com
SLAYDEN GRUBERT BEARD PLLC
401 Congress Ave., Ste. 1650
Austin, Texas 78701
Telephone: (512) 402-3550
Facsimile: (512) 402-6865

Ryan Marton (admitted *pro hac vice*)
Phillip Haack (admitted *pro hac vice*)
MARTON RIBERA SCHUMANN & CHANG LLP
548 Market Street, Suite 36117
San Francisco, CA 94104
Telephone:  (415) 360-2515
Email:     ryan@martonribera.com
           phil@martonribera.com

*Attorneys for Zoho Corporation and*
*Zoho Corporation Pvt. Ltd.*

6

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing is being served on the counsel of record via the CM/ECF system on March 6, 2023.

By:   */s/ Ryan J. Marton*