# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISON

| | | |
|---|---|---|
| ZOHO CORPORATION, | § § § | |
| *Plaintiff,* | § | |
| v. | § § | Case No. 1:22-cv-00037-LY |
| LIBERTY PEAK VENTURES, LLC, | § § | JURY DEMANDED |
| *Defendants*. | § § | |
| | | |
| LIBERTY PEAK VENTURES, LLC, | § § § | |
| *Counterclaimant,* | § § | |
| v. | § § | |
| ZOHO CORPORATION | § § § | |
| *Counter-Defendant,* | § § | |
| and | § § | |
| ZOHO CORPORATION PVT. LTD | § § § | |
| *Third-Party Defendant.* | § § | |

### LIBERTY PEAK VENTURES, LLC'S REPLY TO
### ZOHO CORPORATION AND ZOHO CORPORATION PVT. LTD.'S
### SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF

Defendant/Counterclaimant Liberty Peak Ventures, LLC ("LPV" or "Liberty Peak") files this Reply to Zoho Corporation and Zoho Corporation Pvt. Ltd.'s (collectively, "Zoho") Supplemental Claim Construction Brief [Dkt. 40] ("Supplemental Brief").

## I. ARGUMENTS IN RESPONSE

Zoho reiterates its argument that the phrase "securely storing . . . at the browser toolbar" is a term of degree with no objective boundaries. In support, Zoho heavily and incorrectly paraphrases the deposition testimony of LPV's expert, Dr. Jose Melendez. Zoho's arguments are fatally built on the inaccurate premise that "securely storing" must be impervious from any attack in perpetuity. *See* Supplemental Brief at 1-2. The fault of this argument is obvious. Under this logic, a home "security system" is only properly named if it is never, or could never, be circumvented. Likewise, a home with no security would be "secure" if somehow perpetually free from attack. On this basis, Zoho argues "securely storing . . . at the browser toolbar" is indefinite because, like Schroedinger's cat, Zoho views any "system" as simultaneously secure and unsecure.

The term is not indefinite when properly read and understood. As Dr. Melendez testifies, "security" is not based on the presence or effectiveness of hypothetical attacks. *See* Melendez Deposition Transcript ("Melendez Trans.") at 113:9-114:8 (explaining that a POSITA "would understand that there is no such thing as perfectly secure"); 105:13-106:15 (explaining that "perfectly securing the storage" is not a limitation). Indeed, adding a qualifier such as "perfectly" or "mostly" secure *would* introduce an indefinite term of degree. But that is not the case here.

By misrepresenting his testimony, Zoho first argues that Dr. Melendez effectively agrees that "securely storing . . . at the browser toolbar" is a term of degree. This is far from the truth. Zoho block cites four pages of testimony and concludes that "according to Dr. Melendez, a measure taken to secure data may or may not be enough to constitute secure storage depending on the specific threat (or threats) exist on the computing device in question." *See* Supplemental Brief

at 2. This is precisely the opposite of Dr. Melendez testimony. Dr. Melendez testified that the claim language itself does not require that data be secured against "something in particular". *See* Melendez Trans. 41:10-20. Rather, "securely storing" is directed to measures for restricting "unauthorized access" in the system. *Id.* at 42:7-15; 86:9-87:4; 88:7-23.

Zoho again misrepresents that Dr. Melendez testified that data "needs only to be 'reasonably secure'" to be "securely stored". *See* Supplemental Brief at p.3 (*citing* Melendez Trans. 86:10-87:4). In truth, Dr. Melendez testified that securing data would occur by "any effort that [] would be reasonably understood by a person of skill in the art", which in other words is "any measure to limit unauthorized access" to the account information. *See* Melendez Trans. 86:10-87:4. Certain efforts may be more secure than others, but the term is not indefinite in that a POSITA either introduced secure storage measures at the browser toolbar or not. *See RightQuestion, LLC v. Samsung Elecs. Co.*, No. 2:21-CV-00238-JRG, 2022 WL 1154611, at *5 (E.D. Tex. Apr. 18, 2022) (holding the term "secure storage" not indefinite and recognizing multiple methods of secure storage in the art). **Indeed, the patent claims at issue in *RightQuestion* were those of Zoho's expert, Dr. Jakobsson's**. *Id.* at *1, 5; *see also* Ex. A, U.S. Patent No. 10,929,512.

Zoho wrongly analogizes this case with a series of precedent including *Haliburton Energy Servs. v. M-1 LLC*[1]. *Haliburton* involved the phrase "fragile gel", which was "defined" by the specification and did not have a common meaning in the art. 514 F.3d at 1246-47. The Federal Circuit found that the **Plaintiff's proposed construction** indefinitely defined the substance "by what it does rather than what it is", which would render a substance "fragile" under some external conditions and not in others. *Id.* at 1255-56. LPV has proposed no such construction, but rather,

---

[1] 514 F.3d 1244 (Fed. Cir. 2008); *see also Icon Health & Fitness, Inc. v. Polar Electro Oy*, 656 F. App'x 1008, 1016 (Fed. Cir. 2016); *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1363 (Fed. Cir. 2005).

Zoho assumes a functional construction as a foundation of its indefiniteness argument.[2]

In this case, the "security" involved in storing account information is provided through the browser toolbar, which pursuant to the claims and specification, restricts access to the data from the user and other computer programs. As Dr. Melendez testified, numerous security measures are known in the art that could be incorporated in the browser toolbar and several are disclosed in the Asserted Patents. *See* Melendez Trans. 100:20-103:19. Dr. Melendez explains the objective bounds of the limitation, describing that "if you were looking whether or not the limitation is met . . . you have to look at the system to see if really there's a cryptographic methodology being used, or some other method of securing the data in [the toolbar] that a person of ordinary skill in the art would understand." *Id.* at 102:17-21. Dr. Melendez also describes the basic methods of data security as limiting unauthorized knowledge, access, and capability. *Id.* at 103:3-19.

Dr. Melendez testifies to at least three examples of security measures at the browser toolbar described within the specification: (a) encryption (b) limiting the time that data is stored; and (c) storing in an e-wallet. *Id.* at 44:9-18, 47:23-48:10, 71:6-10. 90:16-91:4. Zoho argues that two of these security measures, storage in an e-wallet and ephemeral storage, are not actually examples of security included within the claims. Initially, these arguments are irrelevant to the indefiniteness question because the phrase has a clear, binary, and objective boundary without need for specific examples. Nevertheless, Zoho's arguments are misguided.

One security measure at the browser toolbar described by the Asserted Patents is limiting the amount of time data is stored (i.e., ephemeral storage). *See* Melendez Trans. 46:12-19 (discussing '088 Patent dependent claim 3 limiting "securely storing" to include removing data in response to providing the account information to the webservice). Zoho argues this cannot be the

---

[2] No party has proposed a means-plus-function analysis, which would be critical to determining indefiniteness in the case that the term "securely storing . . . at the browser toolbar" was, in fact, functionally defined (which it is not).

security measure described in the claims because Claim 1 of the '122 Patent has the step of "removing the stored account information from the browser toolbar after completion of the transaction" separate from the "securely storing . . . at the browser toolbar" step.  This argument is based on Zoho's partial reading of the claim language.  Claim 1 requires (a) storing account information at the browser toolbar, which includes security measures, one example of which is ephemeral storage; and (b) *limiting the time at which* data is removed to "after the completion of the transaction."  This is opposed to Claim 3 of the '088 Patent, *where the time data is removed* is "in response to providing the account information to the web service."  The steps indicate the location of the security measure (the browser toolbar) and, when the data is stored ephemerally, the removal step limits the position in time of that ephemeral period.

Zoho also argues that the prosecution history precludes ephemeral storage as a measure incorporated within the browser toolbar.  *See* Supplemental Brief at p. 4 (citing the March 21, 2011 office action response).  But Zoho omits the full quotation, which supports Dr. Melendez's testimony:

> Applicants discussed with the Examiner the purpose of the system, which is to safeguard a user's data from theft/attack after the data is downloaded and decrypted by the user's computer, and before the user is permitted access to the data. To this end, Applicants clarified that the system *saves the decrypted data to a secure e-wallet prior to giving a user access to the data, thereby preventing the data from being accessed by rogue programs running on the user's device* (as per paragraph [0007] of the originally-filed specification).

Dkt. No. 33-6, p.1.  Indeed, each claim including a temporal security measure employs the measure *at the browser toolbar* for a brief time period without the intervention by either user or other software, therefore insulating it from "rogue programs" on a user's device.

Zoho also argues that storage in an "e-wallet" cannot be an example of a security measure embodied by the claim language.  Dr. Melendez testified that a e-wallet is another security measure

that could be incorporated into the browser toolbar in some embodiments. *See* Melendez Trans. 48:6-10, 99:16-100:18, 106:17-107:23.  In response, Zoho repeats its argument that a browser toolbar, because it is "software", cannot include a secure e-wallet.[3]  But Dr. Melendez testified that the whole purpose of an e-wallet is known by a POSITA as an instrument of secure storage. *Id.* at 48:18-24.  Zoho's expert, Dr. Jakobsson, agrees.  In his own patent applications, he explains that "***media wallet* [(also referred to as 'digital wallets')] applications [] *enable users to securely store*** NFTs and/or other tokens on their devices." *See* Ex. B, Jakobsson U.S. Patent Publication 2023/0006976 at 0130 (emphasis added).[4]  As has been exhaustively briefed, the intrinsic evidence confirms that "browser toolbar" is broader than the term "secure electronic wallet" in that the e-wallet can be included as part of the browser toolbar's modules.[5]

Finally, Zoho argues that Dr. Melendez would not answer questions "when asked to explain how one skilled in the art would determine whether account information were securely stored". Supplemental Brief at p. 5.  This again mischaracterizes Dr. Melendez's testimony.  Rather, Zoho repeatedly asked that Dr. Melendez render infringement opinions on hypothetical systems.  Dr. Melendez has not opined on infringement and properly testified that he analyze an accused system as a whole before rendering such opinions.  *See* Melendez Trans. 96:14-97:10. Furthermore, Dr. Melendez testified that numerous security measures were known in the art, are disclosed in the patent and all utilize the three basic methods of limiting unauthorized access.  *Id.* at 100:20-103:19.

For these reasons, and those previously briefed, the expert testimony in this case confirms that the term "securely stored . . . at the browser toolbar" is not indefinite.

---

[3] LPV never "agreed" that a "browser toolbar" cannot store data, nor that it does not include an e-wallet component. Neither issue was addressed during the parties' conferences, and were first presented in Zoho's opening brief.
[4] *See also* Ex. C, Jackobsson U.S. Patent Publication 20230011621A1 at 0194 ("In several embodiments, ***the digital wallet may securely store rich media*** NFTs and/or other tokens") (emphasis added)
[5] *See* Dkt. 33-1, Melendez Decl. at pp. 12-13 (citing '122 Patent Co. 4:14-16 (disclosing embodiment of "browser toolbar" containing e-wallet); '122 Prosecution History, February 8, 2016, Notice of Allowance at 8 (in reasons for allowance, examiner explicitly stating that the e-wallet was part of the browser toolbar)).

Dated: March 20, 2023          Respectfully submitted,

**PLATT CHEEMA RICHMOND PLLC**

*/s/ Matthew C. Acosta*
Matthew C. Acosta
Texas Bar No. 24062577
macosta@pcrfirm.com
Andrew Lin
Texas Bar. No. 24092702
alin@pcrfirm.com
Nicholas C. Kliewer
Texas Bar No. 24083315
nkliewer@pcrfirm.com
**PLATT CHEEMA RICHMOND PLLC**
1201 N. Riverfront Blvd., Suite 150
Dallas, Texas 75207
214.559.2700 Main
214.559.4390 Fax

**COUNSEL FOR DEFENDANT
AND COUNTERCLAIMANT
LIBERTY PEAK VENTURES, LLC**

## CERTIFICATE OF SERVICE

The undersigned counsel for Liberty Peak Ventures, LLC does hereby certify that on March 20, 2023, this pleading was served on counsel of record via the Court's electronic filing system.

*/s/ Matthew C. Acosta*
Matthew C. Acosta